UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:22-cv-01640-MEMF-KES                                    Date: October 6, 2022

Title: XINGFEI LUO v. THE PEOPLE OF CALIFORNIA

PRESENT:

THE HONORABLE KAREN E. SCOTT, U.S. MAGISTRATE JUDGE

| Jazmin Dorado | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PETITIONER: | ATTORNEYS PRESENT FOR RESPONDENT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**           **Order Screening Mixed Petition (Dkt. 1)**

**I.      BACKGROUND**

On September 6, 2022, Xingfei Luo ("Petitioner"), a probationer, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. ("Petition" at Dkt. 1.) The petition challenges Petitioner's state-court misdemeanor convictions for vandalism, violating a protective order, and disorderly conduct. It raises thirty-four claims in a 95-page Appendix, per Petitioner's own numbering.[1]  (Dkt. 2.)

Petitioner summarizes the prosecution's theory of the case as follows:

At trial, the state's theory was that (1) [Tomas] Czodor and Petitioner had a dating relationship; (2) After a fallout in the relationship Petitioner threatened to publish Czodor's nude photos and did so after making those threats between Sept. 5 and Sept. 7, 2018, and the following week Czodor reported the said incidents to police; (3) Petitioner scratched Czodor's front door on Sept.18, 2018, for 20 minutes, but Czodor discovered the damages on Sept. 19, 2018 because it was

---

[1] In accepting Petitioner's numbering, the Court is not accepting that each numbered claim is a cognizable claim for federal habeas relief as opposed to, for example, a claim based on state law or an argument that is not an independent claim. This screening order focuses only on exhaustion.

>dark at night.  Czodor took photos of the damaged door on Sept. 25, 2018 in order to make a police report the next day; (4) Petitioner did not remove websites as the family court ordered and created new websites.

(Dkt. 2 at 2.)  Plaintiff disputes that she ever had a dating relationship with Czodor, although he falsely told her that he was single and sent her unsolicited nude photographs of himself.  (Id. at 2-3.)  She contends that without metadata, there is insufficient evidence to prove that she wrote the emails threatening to publish the nude photographs.  (Id.)  She contends Czodor is lying about the door to frame her, because after hearing scratching for 20 minutes, it is "impossible" that he did not see the damage until the next day.  (Id. at 3.)  Her noncompliance with the protective orders issued by the family court is excused because those orders were "unlawful and invalid."  (Id.)

On September 14, 2022, this Court ordered Petitioner to show cause why her Petition should not be dismissed as mixed.  (Dkt. 10.)  The Court suspected that claims seven, eight, nine, nineteen, twenty-five, twenty-six, twenty-eight, twenty-nine, thirty-three, and thirty-four are unexhausted.  Petitioner responded.  ("Response" at Dkt. 11.)  She argued that she exhausted all of those claims.  (Id. at 2-3.)  She also argued that the normal exhaustion requirements do not apply.  (Id. at 3-7.)  Having considered Petitioner's arguments, this Court still finds claims seven, eight, nineteen, twenty-eight, twenty-nine, and thirty-four unexhausted.

## II.     LEGAL STANDARD

Pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

>An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that
>>(A) the application has exhausted the remedies available in the courts of the State; or
>>(B)
>>>(i) there is an absence of available State corrective process; or
>>>(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b).

The United States Supreme Court follows a rule of "total exhaustion," requiring that all claims in a habeas petition be exhausted before a federal court may grant the petition.  See Rose v. Lundy, 455 U.S. 509, 522 (1982).  If all or some of the claims have not been exhausted, then the petition is subject to dismissal.  Id.

To satisfy the exhaustion requirement, a habeas petitioner must fairly present his federal claims in the state courts in order to give the State the opportunity to pass upon and correct alleged violations of the petitioner's federal rights.  Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam).  Exhaustion requires that a petitioner's claims be fairly presented to the highest court in a state court system even if that court's review is discretionary.  O'Sullivan v. Boerckel, 526 U.S. 838, 845-47 (1999); James v. Giles, 221 F.3d 1074, 1077, n.3 (9th Cir. 2000).  For a

petitioner in California state custody, this generally means the petitioner must have fairly presented his claims to the California Supreme Court. See O'Sullivan, 526 U.S. at 845 (interpreting 28 U.S.C. § 2254(c)); Gatlin v. Madding, 189 F.3d 882, 888 (9th Cir. 1999) (applying O'Sullivan to California).

Under Rhines v. Weber, 544 U.S. 269 (2005), a district court has discretion to stay a petition to allow a petitioner to exhaust his claims in state court without running afoul of AEDPA's one-year statute of limitations period. Id. at 273-75. A district court may stay a petition if: (1) the petitioner has good cause for his failure to exhaust his claims; (2) the unexhausted claims are potentially meritorious; and (3) there is no indication that the petitioner intentionally engaged in dilatory tactics. Id. at 278. If a Rhines stay is granted, the AEDPA statute of limitations is stayed while the petitioner returns to state court to exhaust his claims.

Alternatively, the district court may grant a stay under Kelly v. Small, 315 F.3d 1143 (9th Cir. 2003), which considers the same factors as Rhines except that there is no "good cause" requirement. See King v. Ryan, 564 F.3d 1133, 1135 (9th Cir. 2009). A Kelly stay and abeyance requires compliance with the following three-step procedure: (1) petitioner files an amended petition deleting his unexhausted claims; (2) the district court "stays and holds in abeyance the amended, fully exhausted petition, allowing petitioner the opportunity to proceed to state court to exhaust the deleted claims"; and (3) petitioner must subsequently seek to amend the federal habeas petition to reattach "the newly-exhausted claims to the original petition." Id. at 1135. Under Kelly, however, the petitioner is only allowed to amend newly-exhausted claims back into his federal petition if the claims are timely under the AEDPA or "relate back" to the exhausted claims in the pending petition. Id. at 1140-41; see also Mayle v. Felix, 545 U.S. 644, 662-64 (2005); Stein v. Director of Corrections, No. 05-1592, 2009 U.S. Dist. LEXIS 114016, 2009 WL 4755727 (E.D. Cal. Dec. 8, 2009). In other words, a Kelly stay does not stop the federal AEDPA statute of limitations from running.

### III. DISCUSSION

#### A. Claims Seven and Eight.

##### 1. The Claims.

Petitioner argues that this Court should grant her relief because the State knowingly presented perjured testimony by Czodor in violation of the Due Process Clause. In Claim Seven, Petitioner contends that statements Czodor made to the police (as reflected in a 9/7/18 police report) "clearly refute" his trial testimony about when Petitioner threatened to publish his nude photos. (Dkt. 2 at 30.[2]) Plaintiff cites three federal cases in support. (Id.) In Claim Eight, Petitioner argues that photographs and videos Czodor took of the door (and which prosecutors had) showed Czodor was lying when he claimed the area was dark. (Id. at 30-31.)

##### 2. Petitioner's Exhaustion Argument.

Petitioner points to her habeas petition to the California Supreme Court (Dkt. 6) as the filing that exhausted both claim. (Dkt. 11 at 2.) For Claim Seven, she points to pages 46-47 and

---

[2] The Court's page citations are to the pagination imposed by the Court's e-filing system.

75. For Claim Eight, she points to pages 49, 71, and 75.

### 3. Analysis.

On these pages, Petitioner does discuss the 9/10/18 police report and argue that it was relevant, exculpatory evidence because it shows Czodor was being dishonest about the darkness and other matters. (Dkt. 6 at 46-47.) This discussion, however, is in support of a Brady claim (id. at 43 [section heading]), and an ineffective assistance of counsel ("IAC") claim (id. at 74-75), not a Due Process claim based on the prosecution knowingly offering false testimony. None of the federal cases cited in the Appendix under Claim 7 are cited in Petitioner's California Supreme Court petition. Even Petitioner only argues that she previously brought Brady claims and IAC claims. (Dkt. 11 at 2.)

### 4. Conclusion.

Petitioner has not demonstrated that she exhausted Claims Seven and Eight.

## B. Claim Nine.

### 1. The Claim.

Petitioner argues that this Court should grant her relief because, at her trial, the State introduced Petitioner's compelled testimony while at the same time misrepresenting Petitioner's prior testimony. (Dkt. 2 at 31.) This, she argues, violated her Fifth Amendment right against self-incrimination. (Id.)

### 2. Petitioner's Exhaustion Argument.

Petitioner points to Dkt. 6 at 53-55 and argues this shows exhaustion. (Dkt. 11 at 2.)

### 3. Analysis.

These pages do indeed show Petitioner having made an argument along these lines to the California Supreme Court.

### 4. Conclusion.

This Court will allow this claim to proceed past screening.[3]

---

[3] Even after screening, Respondent remains free to undertake a more detailed exhaustion analysis and raise lack-of-exhaustion arguments.

### C. Claim Nineteen.

#### 1. The Claim.

Petitioner argues that this Court should grant her relief under AEDPA 28 U.S.C. § 2254(d)(2) because of an unreasonable determination of the facts. (Dkt. 2 at 49.) Specifically, she argues that it was an unreasonably factual determination that Czodor had an expectation of privacy in his nude photos, despite his sending them to Petitioner and visiting a nudist ranch. (Id.)

#### 2. Petitioner's Exhaustion Argument.

Petitioner admits that she never presented this claim to a state court because it is based on AEDPA. (Dkt. 11 at 2.)

#### 3. Analysis.

Plaintiff did argue to the California Supreme Court that her convictions violated the First and Fourteenth Amendment, because California has no legitimate interest in prosecuting Petitioner for publishing non-private photographs, and Czodor did not have a reasonable expectation of privacy in the photographs. (Dkt. 6 at 43.) She appears to raise a similar claim in the instant Petition. (Dkt. 2 at 49 [Claim Twenty-One].)

#### 4. Conclusion.

The Court doubts Claim Nineteen is properly considered an independent "claim" rather than an argument as to why Claim Twenty-One merits habeas relief under AEDPA. The Court will allow Claim Nineteen to survive exhaustion screening and treat it as an argument in support of Claim Twenty-One.

### D. Claim Twenty-Five.

#### 1. The Claim.

Petitioner seeks habeas relief because the trial court violated her Confrontation Clause rights by admitting text messages from Czodor's friend. (Dkt. 2 at 55.)

#### 2. Petitioner's Exhaustion Argument.

Petitioner points to Dkt. 6 at 30 and argues this shows exhaustion. (Dkt. 11 at 2.)

#### 3. Analysis.

Petitioner points to one sentence in her habeas petition to the California Supreme Court wherein she wrote "Petitioner's restraint, judgment of conviction, and sentence were unlawfully and unconstitutionally in violation of her [right] to … confrontation and compulsory process." (Dkt. 6 at 30.) This is the only mention of the Confrontation Clause in that petition. The Court sees nothing in the California Supreme Court Petition alleging Petitioner's inability to cross-

examine the author of any text messages.

The passing mention of a legal theory without providing any supporting facts is insufficient to accomplish exhaustion. It did not fairly present the legal and factual basis of the claim to the California Supreme Court. See Koerner v. Grigas, 328 F.3d 1039, 1046 (9th Cir. 2003) (exhaustion requires presentation of the "operative facts" and "legal theory").

### 4. Conclusion.

Claim Twenty-Five is not exhausted.

### E. Claim Twenty-Six.

### 1. The Claim.

Petitioner argues that this Court should grant her relief because the trial court allowed the State to amend its criminal complaint against her later in the proceedings, which violated her Sixth and Fourteenth Amendment rights. (Dkt. 2 at 55.)

### 2. Petitioner's Exhaustion Argument.

Petitioner points to Dkt. 6 at 42 and argues that this shows exhaustion. (Dkt. 11 at 2.)

### 3. Analysis.

Petitioner has pointed this Court to the following paragraph in her petition to the California Supreme Court:

> Further, not only the trial court erred in denying Petitioner's motion to dismiss, 720 days after the complaint was filed, despite no finding of good cause to justify any belated amendment, the trial court erred in permitting the people to amend the complaint from allegation of coming with in 100 yards of the protected person to failure to deactivate website and created new websites.

(Dkt. 6 at 42-43.)

While this claims that the trial court erred in allowing the prosecution to amend the complaint, it is part of a sub-section titled, "Both the TRO and DVRO fail strict scrutiny." (Dkt. 6 at 37.) This was part of a section titled "BOTH THE TRO AND DVRO ARE UNLAWFUL BECAUSE PETITIONER AND THE ACCUSER WERE NEVER ENGAGED IN DATING RELATIONSHIP AND THEY FAIL STRICT SCRUTINY BECAUSE THEY IMPOSE CONTENT-AND SPEAKER-BASED RESTRICTIONS." (Id.) Nothing in any of these pages suggests that Plaintiff was alleging the late amendment of the complaint violated her Sixth Amendment rights. Plaintiff has not identified any presentation to the California Supreme Court of Claim Twenty-Six.

### 4. Conclusion.

Claim Twenty-Six is unexhausted.

### F. Claim Twenty-Eight.

#### 1. The Claim.

Petitioner argues that the trial court violated her Sixth and Fourteenth Amendment rights by denying her motion to dismiss based on the alleged violation of her right to a speedy trial. (Dkt. 2 at 74.)  Petitioner explains:

> [d]espite a pretrial hearing on a motion to dismiss for denial of a speedy trial may exclude prosecution, *Shleffar v. Superior Court* (1986) 178 Cal.App.3d 937, the court improperly informed Petitioner that the motion to dismiss was not being accepted or considered because it was untimely and the People were not present.

(Id.)  Plaintiff has a separate speedy trial claim.  (Id. at 55 (Claim Twenty-Seven).)

#### 2. Petitioner's Exhaustion Argument.

Petitioner points to Dkt. 6 at 42 and argues this shows exhaustion.  (Dkt. 11 at 3.)

#### 3. Analysis.

The only potentially relevant paragraph on that page says the following:

> Further, not only the trial court erred in denying Petitioner's motion to dismiss, 720 days after the complaint was filed, despite no finding of good cause to justify any belated amendment, the trial court erred in permitting the people to amend the complaint from allegation of coming within 100 yards of the protected person to failure to deactivate website and created new websites.

(Dkt. 6 at 42-43.)

This paragraph alleges that the denial of Petitioner's motion to dismiss was erroneous, but it does not provide the legal or factual basis for that allegation.  Thus, it does not present the California Supreme Court with a claim of constitutional error.

#### 4. Conclusion.

Petitioner has not demonstrated that she exhausted this claim.

### G. Claim Twenty-Nine.

#### 1. The Claim.

Petitioner claims that the trial court erred in denying her Marsden motion, which violated her Sixth and Fourteenth Amendment rights.  (Dkt. 2 at 74-75.)

### 2. Petitioner's Exhaustion Argument.

Petitioner points this Court to Dkt. 6 at 18 and 114 and argues this shows exhaustion. (Dkt. 11 at 3.)

### 3. Analysis.

Page eighteen of Dkt. 6 (using the e-filing pagination) comes from the Orange County Superior Court's order denying a habeas petition. (Dkt. 6 at 17-18.) The order discusses Plaintiff's Marsden motion as part of her case's procedural history. (Id. at 18.) It does not analyze any claim of error in connection with the denial of that motion. (Id., listing claims considered.) This does not show exhaustion, because it does not show presentation of a Marsden claim to the California Supreme Court.

Page 114 of Dkt. 6 comes from Petitioner's habeas petition to the California Supreme Court. But, it mentions nothing about a Marsden motion. (See id. at 114.)

Petitioner's petition to the California Supreme Court does mention her Marsden motion, but again only in discussions of procedural history. (Dkt. 6 at 28.) This does not raise a claim of constitutional error based on the denial of Petitioner's Marsden motion.

### 4. Conclusion.

Petitioner has not demonstrated that she exhausted this claim.

## H.   Claim Thirty-Three.

### 1. The Claim.

Petitioner argues actual innocence. (Dkt. 2 at 85.)

### 2. Petitioner's Exhaustion Argument.

Petitioner points this Court to Dkt. 6 at 117. (Dkt. 11 at 3.) She argues this shows exhaustion. (Id.)

### 3. Analysis.

Petitioner points this Court to the last half of the concluding paragraph of the "Conclusion" section of her habeas petition to the California Supreme Court. On that page, she wrote: "[Petitioner's] innocence is a matter of reality. This Court must act to find Petitioner actually innocent. This Court must grant this petition and issue a finding of factual innocence." (Dkt. 6 at 117.)

### 4. Conclusion.

Without concluding that Petitioner exhausted this claim, or whether it is even a cognizable claim, this Court will allow it to proceed past the screening stage.

### I. Claim Thirty-Four.

#### 1. The Claim.

This claims reads as follows:

> In its Oct 19, 2021 ruling the state superior court denied relief on Petitioner's <u>Strickland</u> claim, concluding that Petitioner has not demonstrated that counsel's performance was substandard or that she was prejudiced by counsel's alleged failures. Exhibit 2 at 6. Knowing that Petitioner was not represented by counsel in habeas corpus, the state superior court faulted Petitioner for her failure to provide transcript and rushed to deny Petitioner's relief without giving her any opportunity to supplement the transcript. The state court's finding without reading the transcript is the very definition of an unreasonable determination of fact. The state habeas court's rejection of this claim is not entitled to deference under § 2254(d) because the state court ignored the key facts relevant to this claim.
>
> Where a state court resolving a federal constitutional claim refuses to consider facts it should consider in deciding a constitutional claim, that decision is unreasonable and § 2254(d) will not bar relief. *Williams v. Taylor*, 529 U.S. 362, 397-398 (2000). Accord Id. at 416 (O'Connor, J. concurring).

(Dkt. 2 at 85.)

#### 2. Petitioner's Exhaustion Argument.

Petitioner states "[t]his claim is under federal procedural law therefore Petitioner did not present it before state courts." (Dkt. 11 at 3.)

#### 3. Analysis.

The above-cited language is not an independent claim. It is an argument as to why the state court's denial of her IAC claim is not entitled to deference under AEDPA. This Court will consider it as such.

#### 4. Conclusion.

This argument is not subject to exhaustion analysis.

### J. Petitioner's Arguments on Why the Normal Exhaustion Requirements Do Not Apply.

Petitioner's Response also makes several arguments for why the normal exhaustion rules do not apply. Below, the Court addresses these arguments.

1. **Argument One: Petitioner Could Not Exhaust Via a Direct Appeal to the California Supreme Court Because the California Court of Appeal Declined to Review Her Case.**

Petitioner argues that California appellate procedure rules (referring to the rules for misdemeanor convictions) allowed California's intermediate appellate court to decline to hear her direct appeal, barring her from taking a direct appeal to the California Supreme Court. (Dkt. 11 at 3-4.)

AEDPA excuses the exhaustion requirement in two situations: "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). While Petitioner may not have been able to reach the California Supreme Court on direct appeal, Petitioner filed a habeas petition with the California Supreme Court. (Dkt. 6 at 4-136.) This shows an "available State corrective process" exists. Petitioner presents no evidence that tends to prove this process "ineffective." This Court declines to invoke 28 U.S.C. § 2254(b)(1)(B) and excuse Petitioner from the exhaustion requirement

2. **Argument Two: Exhaustion was Excused Because Petitioner was Self-Represented.**

Petitioner argues that she did not have counsel to assist her in pursuing post-conviction habeas relief. (Dkt. 11 at 5.) She says, "For each state court habeas petition Petitioner moved the state court to appoint counsel but each of Petitioner's requests for appointment of counsel was denied." (Id.) She suggests this excused exhaustion. (Id. at 5-6.)

There is no right to counsel to pursue habeas claims. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further.") Most federal petitioners do not have counsel assist them in filing state habeas petitions. This does not excuse compliance with AEDPA exhaustion requirements. See Rose v. Lundy, 455 U.S. 509, 520 (1982) ("strict enforcement of the exhaustion requirement will encourage habeas petitioners to exhaust all of their claims in state court and to present the federal court with a single habeas petition.")

3. **Argument Three: 28 U.S.C. § 2254(e)(2).**

Petitioner argues that 28 U.S.C. § 2254(e)(2) excuses her from the exhaustion requirement. (Dkt. 11 at ___.) Petitioner misreads 28 U.S.C. § 2254. Sub-section (e)(2) of that statute deals with when a federal court, adjudicating a habeas claim, must hold an evidentiary hearing. It does not govern exhaustion. Sub-section (b) of that statute governs exhaustion.

4. **Argument Four: Petitioner Is Actually Innocent.**

Petitioner argues that (1) lack of exhaustion is a form of procedural default; (2) there is a "fundamental miscarriage of justice" exception to the application of procedural defaults; and (3) she can establish a fundamental miscarriage of justice, because she is actually innocent. She cites Schlup v. Delo, 513 U.S. 298 (1995), and Carriger v. Stewart, 132 F.3d 463 (9th Cir. 1997), in support of this argument. (Dkt. 11 at 5-6.)

As explained in Schlup, a habeas petitioner's actual innocence may provide a gateway allowing a federal court to consider a petitioner's *procedurally defaulted* habeas claims. See Smith v. Baldwin, 510 F.3d 1127, 1139 (9th Cir. 2007). A procedurally defaulted claim is one that no longer may be raised in state court and therefore is "technically" exhausted. Id. However, Petitioner has not presented any authority—and this Court is aware of none—holding that a petitioner's allegation of actual innocence excuses failure to exhaust a claim that still may be presented in state court. Schlup did not deal with unexhausted claims; indeed, the Schlup petitioner had exhausted his state collateral remedies. Schlup, 513 U.S. at 306. As discussed above, Section 2254(b) (which post-dates the Schlup decision) recognizes only two circumstances in which a federal court may grant habeas relief on an unexhausted claim.

Carriger (dealing with a 1978, pre-AEDPA conviction) is not on point. Carriger held that the petitioner could "have his otherwise-barred claims considered on the merits, however, if his claim of actual innocence is sufficient to bring him within the 'narrow class of cases … implicating a fundamental miscarriage of justice.'" 132 F.3d at 477, citing Schlup. But the "bar" at issue was not lack of exhaustion.

IV. **OVERALL CONCLUSION**

IT IS HEREBY ORDERED that claims seven, eight, twenty-five, twenty-six, twenty-eight, and twenty-nine, in the Petition, are DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND.[4] **On or before October 28, 2022**, Petitioner shall elect one, and only one, of the following options:

1. File a Notice of Voluntary Dismissal of claims that claims seven, eight, twenty-five, twenty-six, twenty-eight, and twenty-nine, and proceed with her remaining claims. If Petitioner does this, she likely will not be able to raise these claims in any future federal habeas actions. See 28 U.S.C. § 2244(b).

2. File a motion for a stay under Rhines or Kelly based on the factors described above. The purpose of the stay would be to return to state court to try to exhaust the unexhausted claims. ***Failure to ask for a stay before the deadline established in this order may be seen as dilatory and may prevent Petitioner from asking for a stay later in the case.***[5]

3. File a Notice of Intent to Proceed with the Petition. If Petitioner chooses to file such a notice, then the Magistrate Judge may recommend that the District Judge dismiss claims seven, eight, twenty-five, twenty-six, twenty-eight, and twenty-nine.

***Failure to do one of these three things before the deadline established by this order may result in dismissal of this Petition.***

Initials of Deputy Clerk JD

---

[4] Nothing in this order should be read to imply that this Court finds merit in Petitioner's other claims. This Court simply allows them to proceed past the screening stage.

[5] Nothing in this order prohibits Petitioner from immediately filing a habeas petition in the state courts, either before or after responding to this order.