1  ROB BONTA
   Attorney General of California
2  CHRISTOPHER P. BEESLEY
   Supervising Deputy Attorney General
3  MICHAEL D. BUTERA
   Deputy Attorney General
4  State Bar No. 295601
    600 West Broadway, Suite 1800
5   San Diego, CA 92101
    P.O. Box 85266
6   San Diego, CA 92186-5266
    Telephone: (619) 738-9054
7   Fax: (619) 645-2044
    E-mail: Michael.Butera@doj.ca.gov
8  *Attorneys for Respondent*

9                IN THE UNITED STATES DISTRICT COURT

10            FOR THE CENTRAL DISTRICT OF CALIFORNIA

11                     SOUTHERN DIVISION

12

13

14  **XINGFEI LUO,**                    8:22-cv-01640-MEMF-KES

15                       Petitioner,    **MEMORANDUM OF POINTS**
                                        **AND AUTHORITIES IN SUPPORT**
16           v.                         **OF ANSWER TO PETITION FOR**
                                        **WRIT OF HABEAS CORPUS**
17  **THE PEOPLE OF THE STATE OF**
    **CALIFORNIA,**
18                                      Judge:      The Honorable Karen E.
                         Respondent.                Scott
19
                                        Action Filed: 9/06/2022
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction................................................................................................. 1

Statement of the Case ................................................................................. 2

Statement of Facts....................................................................................... 4

Argument .................................................................................................... 6

I.     Luo Must Show That the State Court's Resolution of Her
Claims Was Contrary to or Based on an Unreasonable
Application of Clearly Established United States Supreme Court
Precedent ......................................................................................... 6

II.    A Number of Luo's Claims, Including All Previously
Unexhausted Claims Raised in Her Second State Habeas
Petition, Are Defaulted Under California's Independent and
Adequate Procedural Bars................................................................ 8

III.   Luo's First Amendment Challenge to Her Prosecution for
Disseminating the Victim's Nude Photos (Claim 1) Cannot
Succeed Because the State Court's Denial Did Not Contravene
or Unreasonably Apply Clearly Established Federal Law As
Articulated by the United States Supreme Court............................. 13

IV.   Luo's Challenge to the State Court's Jurisdiction to Issue a
Temporary Restraining Order and Domestic Violence
Restraining Order Based on the Lack of a Dating Relationship
(Claim 2) Failed to State a Federal Claim, Is Procedurally
Defaulted Under Dixon, and Is Meritless ...................................... 17

V.    Luo's Overbreadth and Prior Restraints Challenges to Her
Restraining Orders (Claim 3) Are Not Cognizable Through
Federal Habeas; Moreover, the State Court Reasonably Applied
Federal Law As Articulated by Supreme Court Precedent, in
Denying This Claim on the Merits.................................................. 20

VI.   The State Court Reasonably Applied Clearly Established
Federal Law in Denying Luo's Brady Claim With Regard to the
September 10, 2018 Field Activity Report (Claim 4)....................... 24

VII.   The State Court Reasonably Applied Clearly Established
Federal Law in Denying Luo's Brady Claim with Regard to the
September 18, 2018 Field Activity Report (Claim 5)....................... 26

VIII. The State Court Did Not Contravene or Misapply   Established
Supreme Court Authority in Denying Luo's Claim of Willful
Suppression of Inadmissible Prior-Acts Evidence (Claim 6)............ 27

IX.    Luo's Claim That the Prosecution Used Perjured Testimony to
Obtain a Conviction (Claim 7) Is Procedurally Barred Under
Clark and Is Meritless Because the Testimony at Issue Was Not
Demonstrably False or Material...................................................... 29

i

**TABLE OF CONTENTS**
(continued)

Page

X.     Luo's Challenge to the Remark That It Was the "Dark of the Night" When She Damaged the Victim's Door (Claim 8) Is Procedurally Barred Under Clark and/or Dixon, Inaccurately Attributes Trial Testimony to the Victim, and Incorrectly Claims That Non-Evidentiary Attorney Argument Was Perjury ................... 32

XI.    Luo's Claim the Prosecutor Unlawfully Used Compelled Testimony and Misrepresented Her Statements (Claim 9) Is Procedurally Barred by the Contemporaneous Objection Rule and Is Meritless; Luo Was Not Prevented From Asserting Her Privilege Against Self Incrimination and the Prosecutor's Argument Amounted to Fair Comment on the Evidence .................. 34

XII.   The State Court Reasonably Applied Federal Law As Articulated by United States Supreme Court Precedent, in Denying Luo's Ineffective Assistance of Counsel Claim for Alleged Failure to Investigate and Present Victim Impeachment Evidence (Claim 10) ................................................ 38

XIII.  The State Court Reasonably Applied United States Supreme Court Authority in Rejecting Luo's Claim That Counsel Provided Ineffective Assistance by Not Presenting Evidence That the Victim Was a Nudist and Needed to Pay to Remove His Private Photos From the Internet (Claim 11) .............................. 42

XIV.   The State Court's Denial of Luo's Claim That Counsel Rendered Ineffective Assistance by Not Requesting a Jury Instruction on The Concept of a Dating Relationship (Claim 12) Was Not Contrary to or an Unreasonable Application of Established Federal Law ................................................ 44

XV.    The State Court's Determination That Luo Failed to Show That Counsel's Stipulation Regarding the Protective Orders Had No Tactical Purpose (Claim 13) Reasonably Applied Clearly Established Federal Law ................................................ 45

XVI.   The State Court's Denial of Luo's Argument That Counsel Was Ineffective for Allegedly Not Objecting to the Use of Her Prior "Compelled" Testimony (Claim 14) Did Not Contravene or Misapply Federal Law Articulated by the Supreme Court............ 47

XVII.  The State Court Reasonably Applied Established Federal Law in Rejecting Luo's Argument That Counsel Rendered Ineffective Assistance By Failing to Counter the Prosecution's Comment That it Was Dark Outside (Claim 15)................................... 48

XVIII. The State Court's Rejection of Luo's Ineffective Assistance Claim Regarding Alleged Failure to Investigate and Call Defense Witnesses (Claim 16) Constituted a Reasonable Application of Federal Law As Articulated by United States Supreme Court Authority.................................................. 49

XIX.   The State Court's Denial of Luo's Claims of Ineffective Assistance for Failure to Object (Claim 17) Was Consistent With Clearly Established Federal Law ................................. 51

**TABLE OF CONTENTS**
(continued)

Page

XX.    Luo Cannot Show That the State Courts' Resolution of Her
       Claim That Defense Counsel Was Ineffective in Failing to
       Timely Bring Her Case to Trial (Claim 18) Contravened or
       Unreasonably Applied Federal Authority ................................. 56

XXI.   Luo's Argument that her Convictions were Based on an
       Unreasonable Determination of Facts (Claim 19) is Not an
       Independent Claim for Federal Habeas Relief ......................... 59

XXII.  Luo's Claim That Insufficient Evidence Proved the Victim Had
       a Dating Relationship That Engendered an Expectation of
       Privacy (Claim 20) Is Procedurally Barred Under Lindley and Is
       Meritless; a Dating Relationship Is Not Required for Conviction
       of Unlawful Distribution of Private Photographs, and
       Substantial Evidence Showed Luo's Connection to the Victim
       Met the Statutory Definition of a Dating Relationship for
       Purposes of the Protective Orders .......................................... 60

XXIII. Luo's Claim That Insufficient Evidence Supported Her
       Conviction for Unlawful Distribution of Private Photographs
       (Claim 21) Is Procedurally Barred Under Lindley and Is
       Meritless; Substantial Evidence Showed That the Victim Had a
       Reasonable Expectation of Privacy in His Nude Photos, and
       Provided Them with the Understanding That Luo Would Not
       Distribute Them to Others ..................................................... 61

XXIV.  Luo's Sufficiency Challenge Regarding the Emotional
       Damage Element of Her Conviction (Claim 22) Is Defaulted
       Under Lindley and Meritless; Substantial Evidence Showed
       That the Victim Suffered Serious Emotional Damage As a
       Result of Her Distributing His Private Nude Images .............. 63

XXV.   Luo's Challenge to the Sufficiency of Evidence Regarding Her
       Restitution Amount Based on the Victim's Lost Income (Claim
       23) Is Defaulted Under Lindley And Does Not Raise a Valid
       Claim for Relief Under Federal Habeas Corpus ..................... 65

XXVI.  Luo's Claim Regarding Law Enforcement's Failure to Conduct
       an Adequate Independent Investigation of the Victim's Account
       (Claim 24) Fails to Identify a Cognizable Violation of Any
       Federal Right, and Is Substantively Meritless ....................... 66

XXVII. Luo's Claim That the Trial Court Violated the Confrontation
       Clause by Allowing Use of Out-of-Court Statements From the
       Victim's Friends (Claim 25) Is Procedurally Barred Under Clark
       And Dixon and Is Meritless; No Testimonial Hearsay Was
       Admitted, and Any Complained-of Comments Were Not Made
       to Law Enforcement In Preparation for Trial or Offered for the
       Truth of the Matter Asserted ................................................ 68

XXVIII. Luo's Claim That the Prosecutor Committed Constitutional
       Error by Amending the Complaint (Claim 26) Is Procedurally
       Barred Under Clark and the State Court Did Not Contradict or
       Unreasonably Apply Supreme Court Precedent in Rejecting It. ........ 70

iii

# TABLE OF CONTENTS
## (continued)

Page

XXIX. The State Court Reasonably Applied Federal Law in Denying
Luo's Claim of a Speedy Trial Violation (Claim 27); Luo
Voluntarily Waived Her Right, Delay Was Largely Attributable
to Reasonable Defense Continuances and the Covid-19
Pandemic, and Luo Cannot Show Prejudice........................................ 73

XXX.  Luo's Claim That The Trial Court Erred in Refusing to
Consider an Ex Parte Motion to Dismiss That Had Not Been
Provided to the Prosecutor (Claim 28) Is Procedurally Barred
Under Clark, Does Not Concern an Alleged Violation of Federal
Law, Is Based on an Inaccurate Understanding of the Facts, and
Has No Legal Merit.............................................................................. 78

XXXI. Luo's Argument That the Trial Court Erred in Denying Her
Substitution of Counsel Motion Based Solely on the
Competence of Her Attorney (Claim 29) Is Procedurally Barred
Under Clark and Dixon, Misrepresents the Ruling of the Trial
Court, and Is Unavailing .................................................................... 79

XXXII. Luo's Various Claims of Prosecutorial Error (Claim 30) Are
All Procedurally Defaulted Under Dixon and the
Contemporaneous Objection Rule; These Claims Are Also
Meritless Because Luo Cannot Show That Any Alleged Error
Was so Egregious as to Affect the Fundamental Fairness of the
Entire Trial Proceeding ...................................................................... 81

XXXIII. Luo's Claim of Cumulative Error (Claim 31) Fails   Because
She Cannot Demonstrate Prejudice Under the Federal Standards
Articulated in AEDPA and Brecht...................................................... 84

XXXIV. The State Court Decision Rejecting Luo's Claim of
Ineffective Assistance of Appellate Counsel (Claim 32)
Reasonably Applied Federal Law; Counsel Complied with the
State Law Procedures Articulated in Wende, and Independent
Review of the Trial Record by the Court on Direct Appeal
Showed No Meritorious Issues .......................................................... 87

XXXV. The State Court Reasonably Concluded That Luo's
Conclusory Assertion of Actual Innocence (Claim 33) Was
Unsupported by Any Evidence or Legal Authority ............................ 91

XXXVI. Luo's Argument That the State Court That Denied Her First
State Habeas Petition Unreasonably Determined the Facts of
Her Ineffective Assistance Claims (Claim 34) Does Not Raise
an Independent Claim for Relief and Is Meritless; the Court
Appropriately Applied Relevant Federal Law and Had No
Obligation to Consider Evidence That She Failed to Provide ........... 92

XXXVII. Luo's Claim That the Trial Court Gave an Inapplicable Jury
Instruction Regarding Her Restraining Orders (Claim 35) Does
Not Warrant Federal Habeas Relief Because Any Error Did Not
Lower the Prosecution's Burden of Proof and the Element in
Question Was Supported by Overwhelming Evidence ...................... 94

Conclusion ....................................................................................................... 97

# TABLE OF AUTHORITIES

**Page**

CASES

*Acedo v. Fisher*
    2018 WL 4407589 (S.D. Cal. Sept. 17, 2018) .................................................. 10

*Aguirre v. Sherman*
    2016 WL 9752052 (C.D. Cal. Dec. 1, 2016) ..................................................... 10

*Alexander v. United States*
    509 U.S. 544 (1993) .................................................................................. 21, 77

*Anders v. California*
    386 U.S. 738 (1967) .............................................................................. 3, 89, 90

*Arroyo v. Curry*
    2009 WL 723877 (N.D. Cal. Mar. 18, 2009) ..................................................... 10

*Auburn Police Union v. Carpenter*
    8 F.3d 886 (1st Cir. 1993) ................................................................................. 24

*Bailey v. Hill*
    599 F.3d 976 (9th Cir.2010) ....................................................................... 65, 66

*Balboa Island Vill. Inn, Inc. v. Lemen*
    40 Cal. 4th 1141 (2007) .................................................................................... 24

*Barker v. Wingo*
    407 U.S. 514 (1972) ................................................................................. *passim*

*Baxter v. Palmigiano*
    425 U.S. 308 (1976) .......................................................................................... 36

*Beauharnais v. People of State of Ill.*
    343 U.S. 250 (1952) .................................................................................... 15, 24

*Bell v. Cone*
    535 U.S. 685 (2002) ............................................................................................ 6

*Bemore v. Chappell*
    788 F.3d 1151 (9th Cir. 2015) ................................................................ 42, 43, 50

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Bonin v. Calderon*
   59 F.3d 815 (9th Cir.1995) ................................................................... 11

*Bose Corp. v. Consumers Union of U. S., Inc.*
   466 U.S. 485 (1984) .......................................................................... 21

*Bradshaw v. Richey*
   546 U.S. 74 (2005) ........................................................................... 18

*Brecht v. Abrahamson*
   507 U.S. 619 (1993) ...................................................... 37, 84, 85, 97

*Briggs v. State*
   2017 WL 1806495 (N.D. Cal. May 5, 2017) ................................. 9, 10

*Broadrick v. Oklahoma*
   413 U.S. 601 (1973) ..................................................................... 14, 22

*Brown v. Davenport*
   142 S. Ct. 1510 (2022) .................................................................. 26, 85

*Bussard v. Lockhart*
   32 F.3d 322 (8th Cir. 1994) .......................................................... 51, 53

*Calderon v. Prunty*
   59 F.3d 1005 (9th Cir.1995) ............................................................. 72

*Cantwell v. State of Connecticut*
   310 U.S. 296 (1940) ..................................................................... 23, 24

*Carey v. Musladin*
   549 U.S. 70 (2006) ....................................................................... 17, 67

*Carpio v. Hill*
   2023 WL 3829687 (S.D. Cal. June 5, 2023) ............................... *passim*

*Carrera v. Ayers*
   670 F.3d 938 (9th Cir. 2011) ............................................................. 53

*Carriger v. Stewart*
   132 F.3d 463 (9th Cir. 1997) ............................................................. 28

1

2

## TABLE OF AUTHORITIES
### (continued)

Page

3

4

*Carter v. Giurbino*
    385 F.3d 1194 (9th Cir. 2004)..........................................................11, 60, 61, 65

5

6

*Chaker v. Crogan*
    428 F.3d 1215 (9th Cir. 2005)........................................................................ 13

7

8

*Church v. Hatton*
    2020 WL 978625 (N.D. Cal. Feb. 28, 2020)................................................. 10

9

10

*City of Ontario, Cal. v. Quon*
    130 S.Ct. 2619 (2010) ................................................................................... 61

11

*Cole v. Arkansas*
    333 U.S. 196 (1948) ................................................................................71, 72

12

13

*Coleman v. Thompson*
    501 U.S. 722 (1991) ...............................................................................*passim*

14

15

*Cooks v. Spalding*
    660 F.2d 738 (9th Cir. 1981) ........................................................................ 67

16

17

*Coy v. Iowa*
    487 U.S. 1012 (1988) .................................................................................... 68

18

19

*Crawford v. Washington*
    541 U.S. 36 (2004) ...................................................................................69, 70

20

21

*Darden v. Wainwright*
    477 U.S. 168 (1986) ..........................................................................33, 38, 82

22

*Davila v. Davis*
    137 S. Ct. 2058 (2017) ...........................................................................*passim*

23

24

*Davis v. Washington*
    547 U.S. 813 (2006) ...................................................................................69, 70

25

26

*Ex parte Dixon*
    41 Cal. 2d 756 (1953)..............................................................................*passim*

27

28

*Doggett v. United States*
    505 U.S. 647 (1992) ...................................................................................... 75

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3

4

*Donnelly v. DeChristoforo*
     416 U.S. 637 (1974) .................................................................................33, 85

5

6

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*
     472 U.S. 749 (1985) ...................................................................................... 13

7

8

*Dunn v. Reeves*
     141 S. Ct. 2405 (2021) ........................................................................39, 54, 57

9

10

*Estate of Neilson*
     57 Cal.2d 733 (1962).................................................................................... 55

11

*Estelle* v. *McGuire*
     502 U.S. 62 (1991) ..........................................................................6, 17, 59, 78

12

13

*Evitts v. Lucey*
     469 U.S. 387 (1985) ...................................................................................... 88

14

15

16

*Fields v. Woodford*
     309 F.3d 1095, 1108 (9th Cir.), *amended,* 315 F.3d 1062 (9th Cir.
     2002) .......................................................................................................... 53

17

18

*Fletcher v. Western National Life Insurance Company*
     10 Cal. App. 3d 376 (1970)........................................................................ 63

19

*Flowers v. Foulk*
     2016 WL 4611554 (N.D. Cal. Sept. 6, 2016)................................................ 10

20

21

*Foreman v. Lewis*
     875 F.2d 318 (9th Cir. 1989)....................................................................... 30

22

23

*Givens v. Housewright*
     786 F.2d 1378 (9th Cir.1986)...................................................................... 72

24

25

*Harrington* v. *Richter*
     562 U.S. 86 (2011) ................................................................................. 6, 39

26

27

*Hayes v. Brown*
     399 F.3d 972 (9th Cir. 2005)..............................................................29, 30, 31

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Henry v. Ryan*

4
720 F.3d 1073 (9th Cir. 2013) ............................................................. 30, 33

5

*Hernandez v. Hillsides, Inc.*

6
47 Cal. 4th 272 (2009) ............................................................................. 62

7

*Herrera v. Collins*
506 U.S. 390 (1993) ....................................................................... 66, 67, 91

8

*Hibbler v. Benedetti*

9
693 F.3d 1140 (9th Cir. 2012) .................................................................. 94

10

*Hill v. Colorado*

11
530 U.S. 703 (2000) ................................................................................. 14

12

*Hovey v. Ayers*

13
458 F.3d 892 (9th Cir. 2006) ........................................................ 38, 82, 84

14

*In re Morgan*

15
50 Cal. 4th 932 (Cal. 2010) ....................................................................... 8

16

*In re Oliver*

17
333 U.S. 257 (1948) ................................................................................. 71

18

*In re Reno*

19
55 Cal. 4th 428 (2012) ................................................................. 11, 12, 60

20

*In re Robbins*
18 Cal. 4th 770 (1998) .............................................................................. 10

21

*In re Sakarias*

22
35 Cal. 4th 140 (2005) ............................................................................. 11

23

*Jackson v. Brown*

24
513 F.3d 1057 (9th Cir. 2008) .................................................................. 30

25

*Jackson v. Virginia*

26
443 U.S. 307 (1979) ........................................................................... 61, 65

27

*James v. Borg*

28
24 F.3d 20 (9th Cir.1994) ................................................................... 72, 93

**TABLE OF AUTHORITIES**
(continued)

Page

*Johnson v. Lee*
   578 U.S. 605 (2016) ............................................................*passim*

*Johnson v. Montgomery*
   899 F.3d 1052 (9th Cir. 2018) ....................................................12, 18

*Jones v. Gomez*
   66 F.3d 199 (9th Cir. 1995) ......................................................50, 93, 94

*Juan H. v. Allen*
   408 F.3d 1262 (9th Cir. 2005) ...........................................................62

*Kastigar v. United States*
   406 U.S. 441 (1972) .........................................................................35

*Kyles v. Whitley*
   514 U.S. 419 (1995) .........................................................................25

*L.A. Police Dep't v. United Reporting Publ'g Corp.*
   528 U.S. 32 (1999) ...........................................................................22

*La Crosse v. Kernan*
   244 F.3d 702 (9th Cir. 2001) .............................................................9

*Langford v. Day*
   110 F.3d 1380 (9th Cir.1996) .........................................17, 18, 59, 78

*Larimer v. Yates*
   483 F. App'x 317 (9th Cir. 2012) ....................................................51

*Lefkowitz v. Cunningham*
   431 US 801 (1977) ...........................................................................35

*Lewis v. Jeffers*
   497 U.S. 764 (1990) .........................................................................17

*Lindh* v. *Murphy*
   521 U.S. 320 (1997) ...........................................................................6

*Ex parte Lindley*
   29 Cal. 2d 709 (1947) ...............................................................*passim*

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Lundgren v. Mitchell*
    440 F.3d 754 (6th Cir.2006) ................................................................. 51

*Marshall v. Rodgers*
    569 U.S. 58 (2013) ................................................................................ 28

*McCoy v. Louisiana*
    138 S. Ct. 1500 (2018) .............................................. 41, 42, 43, 50

*McNeil v. Wisconsin*
    501 U.S. 171 (1991) ............................................................................. 36

*McQuiggin v. Perkins*
    569 U.S. 383 (2013) ............................................................................. 91

*Melendez v. Pliler*
    288 F.3d 1120 (9th Cir. 2002) ............................................................... 9

*Melugin v. Hames*
    38 F.3d 1478 (9th Cir. 1994) ............................................................... 18

*Mezzles v. Katavich*
    731 F. App'x 639 (9th Cir. 2018) .................................... 34, 38, 83

*Michigan v. Bryant*
    562 U.S. 344 (2011) ............................................................................. 69

*Michigan v. Long*
    463 U.S. 1032 (1983) ............................................................................. 9

*Mickey v. Ayers*
    606 F.3d 1223 (9th Cir. 2010) ...................................................... 43, 50

*Middleton v. McNeil*
    541 U.S. 433 (2004) ............................................................................. 96

*Miller-El v. Cockrell*
    537 U.S. 322 (2003) ............................................................................... 7

*Montana v. Egelhoff*
    518 U.S. 37 (1996) ............................................................................... 28

1

2

## TABLE OF AUTHORITIES
### (continued)

**Page**

3

4
*Moore v. Dempsey*
   261 U.S. 86 (1923) ........................................................................ 66

5

6
*Morrison v. Estelle*
   981 F.2d 425 (9th Cir.1992) ........................................................ 72

7

8
*Murray v. Carrier*
   477 U.S. 478 (1986) ............................................................ 12, 18, 90

9

10
*Murtishaw v. Woodford*
   255 F.3d 926 (9th Cir.2001) ........................................................ 72

11
*Neder v. U.S.*
   527 U.S. 1 (1999) .......................................................................... 96

12

13
*New York State Club Assn., Inc. v. City of New York*
   487 U.S. 1 (1988) .......................................................................... 22

14

15
*Panah v. Chappell*
   935 F.3d 657 (9th Cir. 2019) ............................................ 29, 30, 31

16

17
*Parle v. Runnels*
   505 F.3d 922 (9th Cir. 2007) ...................................................... 85

18

19
*Patterson v. New York*
   432 U.S. 197 (1977) ...................................................................... 67

20

21
*People v. Anderson*
   5 Cal. 5th 372 (2018) .................................................................... 28

22
*People v. Clark*
   52 Cal. 4th 856 (2011) .................................................................. 28

23

24
*People v. Farwell*
   5 Cal. 5th 295 (2018) .......................................................... 19, 21, 45

25

26
*People v. Flinner*
   10 Cal. 5th 686 (2020) .................................................................. 68

27

28
*People v. Ford*
   45 Cal. 3d 431 (1988) .................................................................. 35

**TABLE OF AUTHORITIES**
(continued)

Page

*People v. Fruits*
   247 Cal. App. 4th 188 (2016)...................................................................54

*People v. Hayes*
   52 Cal. 3d 577 (1990)..........................................................................51

*People v. Jones*
   54 Cal. 4th 1 (2012)............................................................................55

*People v. Kerley*
   23 Cal. App. 5th 513 (2018)...........................................................54, 56

*People v. Lopez*
   198 Cal. App. 4th 698 (2011)...............................................................95

*People* v. *Luo*
   No. 30-2021-01216615, Unpub. (Cal. Sup. Ct. App. Div. Apr. 27,
   2022)..................................................................................................4

*People v. McCutcheon*
   187 Cal. App. 3d 552 (1986)..........................................................32, 53

*People v. Middleton*
   52 Cal. App. 4th 19 (1997)..................................................................95

*People v. Ramos*
   15 Cal. 4th 1133 (1997).......................................................................11

*People v. Riel*
   22 Cal. 4th 1153 (2000).......................................................................55

*People v. Robinson*
   37 Cal. 4th 592 (2005)........................................................................54

*People v. Salcido*
   44 Cal. 4th 93 (2008)..........................................................................67

*People v. Sandoval*
   4 Cal. 4th 155 (1992).....................................................................37, 84

**TABLE OF AUTHORITIES**
**(continued)**

Page

*People v. Seumanu*
    61 Cal. 4th 1293 (2015)................................................................34, 37

*People v. Webb*
    25 Cal. App. 5th 901 (2018).............................................................95

*People v. Wende*
    25 Cal. 3d 436 (1979)...............................................................*passim*

*People v. Wheeler*
    4 Cal. 4th 284 (1992)......................................................................28

*Perez v. Rosario*
    459 F.3d 943 (9th Cir. 2006)............................................................94

*Phillips v. Campbell*
    2 Cal. App. 5th 844 (2016)........................................................19, 20

*Police Dep't. of Chicago v. Mosley*
    408 U.S. 92 (1972) ........................................................................14

*Potter v. Firestone Tire & Rubber Co.*
    6 Cal. 4th 965 (1993).....................................................................64

*Premo v. Moore*
    562 U.S. 115 (2011) ....................................................32, 46, 48, 53

*R.A.V. v. City of St. Paul*
    505 U.S. 377 (1992) ......................................................................14

*Reis-Campos v. Biter*
    832 F.3d 968 (9th Cir. 2016).................................................29, 30, 31

*Rhines v, Weber*
    544 U.S. 269 (2005) ........................................................................4

*Richardson v. Marsh*
    481 U.S. 200 (1987) ......................................................................34

*Rogers v. United States*
    340 U.S. 367 (1951) ......................................................................35

xiv

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3

4

*Roth v. United States*
354 U.S. 476 (1957) ................................................................ 14, 24

5

6

*Rupe v. Wood*
93 F.3d 1434 (9th Cir. 1996) ...................................................47, 48

7

8

*Russell v. United States*
369 U.S. 749 (1962) ....................................................................... 72

9

*Saechao v. Oregon*
249 Fed. App'x. 678 (9th Cir.2007) ............................................... 70

10

11

*Sanchez-Llamas v. Oregon*
548 U.S. 331 (2006) ....................................................................... 79

12

13

*Sanders v. American Broadcasting Companies, Inc.*
20 Cal. 4th 907 (1999) ................................................................... 62

14

15

*Schad v. Borough of Mount Ephraim*
452 U.S. 61 (1981) ........................................................................ 22

16

17

*Schlup v. Delo*
513 U.S. 298 (1995) ....................................................................... 91

18

19

*Sechrest v. Ignacio*
549 F.3d 789 (9th Cir. 2008) ...................................................33, 83

20

*Sivak v. Hardison*
658 F.3d 898 (9th Cir. 2011) .......................................................... 30

21

22

*Slovik v. Yates*
543 F.3d 1090 (9th Cir. 2008) .......................................................... 4

23

24

*Smith v. Phillips*
455 U.S. 209 (1982) ...........................................................33, 38, 82

25

26

*Smith v. Robbins*
528 U.S. 259 (2000) ...................................................................88, 90

27

28

*Snyder v. Phelps*
562 U.S. 443 (2011) .................................................................13, 24

1

2

<div align="center">

**TABLE OF AUTHORITIES**
**(continued)**

</div>

**Page**

3

*Stauffer v. Vasquez*

4

    2009 WL 385446 (C.D. Cal. Feb. 12, 2009)................................................67

5

*Stone v. Federal Deposit Ins. Corp.*

6

    179 F.3d 1368 (Fed.Cir.1999) ......................................................................79

7

*Strickland v. Washington*

8

    466 U.S. 668 (1984) ...............................................................................*passim*

9

*Strickler v. Greene*

    527 U.S. 263 (1999) .................................................................................25, 26

10

*Tan v. Runnels*

11

    413 F.3d 1101 (9th Cir. 2005)..................................................................33, 82

12

*Tapia v. Tansy*

13

    926 F.2d 1554 (10th Cir. 1991)..........................................................30, 31, 33

14

*Tilcock v. Budge*

15

    538 F.3d 1138, 1141 (9th Cir. 2008)...........................................................4

16

*Trieu v Fox*

17

    764 Fed. App'x. 624 (9th Cir. 2019)............................................................10

18

*Turner Broad. Sys., Inc. v. FCC*

19

    512 U.S. 622 (1994) ....................................................................................14

20

*United States v. Alexander*

    817 F.3d 1178 (9th Cir. 2016)....................................................................77

21

*United States v. Bagley*

22

    473 U.S. 667 (1985) ....................................................................................25

23

*United States v. Balsys*

24

    524 U.S. 666 (1998) ....................................................................................35

25

*United States v. Berry*

26

    627 F.2d 193 (9th Cir.1980)........................................................................85

27

*United States v. Bonilla*

28

    602 F. App'x 667 (9th Cir. 2015)................................................................57

<div align="center">

xvi

</div>

1

2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3
4
*United States v. Charley*
    396 F.3d 1074 (9th Cir. 2005).................................................................... 36

5
6
*United States v. Corona-Verbera*
    509 F.3d 1105 (9th Cir. 2007)..........................................................75, 76, 77

7
8
*United States v. Cronic*
    466 U.S. 648 (1984) .................................................................................. 43

9
10
*United States v. Dang*
    488 F.3d 1135 (9th Cir. 2007)................................................................... 24

11
*United States v. Davis*
    787 F. Supp. 2d 1165 (D. Or. 2011)......................................................... 61

12
13
*United States v. Dunnigan*
    507 U.S. 87 (1993) .................................................................................... 33

14
15
*United States v. Flake*
    746 F.2d 535 (9th Cir.1984)..................................................................... 30

16
17
*United States v. Gregory*
    322 F.3d 1157 (9th Cir.2003)..............................................................74, 77

18
19
*United States v. Gudino*
    432 F.2d 433 (9th Cir. 1970)...............................................................62, 65

20
21
*United States v. Hanoum*
    33 F.3d 1128 (9th Cir.1994)...............................................................40, 57

22
*United States v. Hansen*
    599 U.S. 762 (2023) ...........................................................................22, 24

23
24
*United States v. Hasting*
    461 U.S. 499 (1983) .................................................................................. 37

25
26
*United States v. Jones*
    592 F.2d 1038 (9th Cir. 1979)................................................................... 83

27
28
*United States v. Keith*
    61 F.4th 839 (10th Cir. 2023)................................................................... 57

1

2

<div align="center">

**TABLE OF AUTHORITIES**
**(continued)**

</div>

**Page**

*United States v. Manfre*
   368 F.3d 832 Cir.2004 ................................................................ 70

*United States v. McChristian*
   47 F.3d 1499 (9th Cir. 1995) ...................................................... 37

*United States v. Mendoza*
   530 F.3d 758 (9th Cir. 2008) ...................................................... 75

*United States v. Molina*
   934 F.2d 1440 (9th Cir. 1991) ...............................................48, 51

*United States v. Myers*
   804 F.3d 1246 (9th Cir. 2015) .................................................... 19

*United States v. Necoechea*
   986 F.2d 1273 (9th Cir.1993) ...................................................... 30

*United States v. O'Brien*
   391 U.S. 367 (1968) .................................................................... 14

*United States v. Perez*
   116 F.3d 840 (9th Cir. 1997) ...................................................... 19

*United States v. Quintero-Barraza*
   78 F.3d 1344 (9th Cir. 1995) ...................................................... 53

*United States v. Sandoval*
   990 F.2d 481 (9th Cir.1993) ........................................................ 77

*United States v. Scheffer*
   523 U.S. 303 (1998) .................................................................... 41

*United States v. Sears, Roebuck & Co., Inc.*
   877 F.2d 734 (9th Cir.1989) ........................................................ 74

*United States v. Solano-Godines*
   120 F.3d 957 (9th Cir. 1997) ...................................................... 36

*United States v. Stinson*
   647 F.3d 1196 (9th Cir. 2011) .................................................... 83

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*United States v. Sudikoff*

4
   36 F. Supp. 2d 1196 (C.D. Cal. 1999)................................................................29

5

*United States v. Szabo*
   760 F.3d 997 (9th Cir. 2014).................................................................21, 22, 24

6

7

*United States v. Williams*
   547 F.3d 1187 (9th Cir. 2008)..............................................................................30

8

*United States v. Williams*

9
   782 F.2d 1462 (9th Cir.1985).............................................................................77

10

*Vansickel v. White*

11
   166 F.3d 953 (9th Cir.1999).................................................................11, 35, 81

12

*Vermont v. Brillon*

13
   556 U.S. 81 (2009).............................................................................57, 75, 77

14

*Virginia v. Black*

15
   538 U.S. 343 (2003) ..............................................................................14, 21

16

*Wainwright v. Sykes*

17
   433 U.S. 72 (1977) ..............................................................................11, 35, 81

18

*Ward v. Rock Against Racism*

19
   491 U.S. 781 (1989) ..............................................................................................14

20

*Weeks v. Angelone*
   528 U.S. 225 (2000)...............................................................................34, 83

21

22

*Wells v. Maass*
   28 F.3d 1005 (9th Cir. 1994)...............................................................................9

23

*Whorton v. Bockting*

24
   549 U.S. 406 (2007) ..............................................................................................69

25

*Williams* v. *Taylor*

26
   529 U.S. 362 (2000).............................................................................7, 22, 24

27

*Williamson v. Gregoire*

28
   151 F.3d 1180 (9th Cir.1998)..............................................................................66

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Wilson* v. *Sellers*
584 U.S.___ (2018) .......... 7

*Wong v. Jing*
189 Cal. App. 4th 1354 (2010) .......... 63, 64

*Wood v. Bartholomew*
516 U.S. 1 (1995) .......... 67

*Wood v. Ryan*
693 F.3d 1104 (9th Cir. 2012) .......... 94

*Woodford* v. *Visciotti*
537 U.S. 19 (2002) .......... 6

*Wright v. West*
505 U.S. 277 (1992) .......... 60

*Yarborough v. Gentry*
540 U.S. 1. (2003) .......... *passim*

*Ylst* v. *Nunnemaker*
501 U.S. 797 (1991) .......... 7

*York v. Story*
324 F.2d 450 (9th Cir. 1963) .......... 62

# TABLE OF AUTHORITIES
## (continued)

Page

**STATUTES**

California Evidence Code
   § 352 ....................................................................52, 54, 55, 93
   § 353 ..................................................................................11
   § 1200 ...........................................................................68, 70
   § 1221 ................................................................................55

California Family Code
   § 6210 ................................................................................19
   § 6211(c) .......................................................................19, 44
   § 6218(a) ............................................................................23

   § 6220 ................................................................................23
   § 6300 ................................................................................23
   § 6320 ................................................................................22
   § 6320(c) ............................................................................23
   § 6322 ................................................................................22

California Penal Code
   § 26 ..................................................................................16
   § 273.6 .........................................................................71, 96
   § 273.6(a) .......................................................................2, 96
   § 422 ................................................................................25
   § 594(a)/(b)(2)(A) ....................................................................2
   § 633.5 ..............................................................................46
   § 647(j)(4)(A) ................................................................*passim*
   § 977 ................................................................................73
   § 1382 .......................................................................56, 58, 59

United States Code
   28 U.S.C. § 2254 ............................................................6, 65, 86
   28 U.S.C. § 2254(a) ......................................................21, 65, 66
   28 U.S.C. § 2254(d) ..................................................6, 28, 39, 85
   28 U.S.C. § 2254(d)(2) ...............................................................59
   28 U.S.C. § 2254(e)(1) ............................................................4, 7

1
2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3

**CONSTITUTIONAL PROVISIONS**

4
5
6
7

United States Constitution
    First Amendment ........................................................................*passim*
    Fifth Amendment ..............................................................35, 36, 55
    Sixth Amendment ........................................................36, 68, 71, 74
    Fourteenth Amendment .............................................................*passim*

8

**COURT RULES**

9
10

Federal Rule Civil Procedure 56(c)(4) ............................................42, 49

**OTHER AUTHORITIES**

11
12
13

Anti-Terrorism and Effective Death Penalty Act (AEDPA)............................*passim*

Domestic Violence Protection Act ...................................................*passim*

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

After victim Tomas C. ended his extramarital dating relationship with Petitioner Xingfei Luo, she undertook a prolonged, highly public attack on his reputation, which included disseminating private, nude photographs of the victim without his consent, through fake social media accounts, YouTube videos, and on various "cheater" websites. Hundreds of strangers as well as the victim's friends and business associates saw these explicit images alongside Luo's disparaging comments about the victim's infidelity. Luo intended to subject the victim to unwanted notoriety in order to make him "suffer." She refused to obey lawful restraining orders instructing her to cease her abusive activities and to remove the materials she had posted online. Their breakup also resulted in an incident in which Luo trespassed on the victim's property and defaced the outside of his door by repeatedly striking it with a key until police forced her to leave. For her actions, she was convicted of vandalism, violation of a protective order, and unlawful dissemination of private photographs and recordings.

In her First Amended Petition before this Court, Luo raises thirty-five claims for relief. Among these many claims are: First Amendment challenges to the constitutionality of California's unlawful distribution statute and protective orders; several asserted *Brady* violations; allegations of suborned perjury and other acts of misconduct by the prosecutor and law enforcement; purported violations of Luo's speedy trial rights by the state and the public defender's office; attacks on the sufficiency of evidence concerning multiple elements of the offenses and restitution order; claims of federal and state law error concerning jury instructions and the unlawful admission of testimonial hearsay, compelled self-incrimination, and unduly prejudicial exhibits; as well as an assertion of factual innocence; and a plethora of ineffective assistance claims as to trial and appellate counsel, ranging from alleged failure to investigate and breakdown in communication to complaints

1  about counsels' argument selection and tactical choices about objections and

2  witness examination.

3      None of these arguments warrant relief. A number of them are not cognizable

4  on federal habeas review, either because they do not allege a violation of federal

5  law or do not raise a challenge affecting the validity of Luo's convictions or the

6  legality of the state's custody over her. Furthermore, most of these claims have

7  been defaulted through various independent and adequate state procedural bars,

8  stemming from her failure to file contemporaneous objections at trial, failure to

9  raise available issues on direct appeal, improperly raising sufficiency challenges

10  through collateral attack, and presenting her habeas claims to the state courts in

11  piecemeal fashion through successive petitions. Luo has failed to offer cause to

12  excuse her defaults, and she cannot show actual prejudice or a miscarriage of

13  justice from a violation of federal law because each of her assertions fails on the

14  merits. With regard to her remaining claims for relief, Luo has not met her exacting

15  burden to show that the California courts' resolution of those claims was contrary

16  to, or based on an unreasonable application, of clearly established United States

17  Supreme Court authority.

18      The Amended Petition should be denied and dismissed with prejudice.

19                 **STATEMENT OF THE CASE**

20      Luo is currently on three years of informal probation with terms and

21  conditions including domestic violence terms and a jail term of 30 days.[1]  (ECF

22  Doc. 3 at 6, 46-48 [CT 33-35]; Lodgment 2 at 1-2.) An Orange County jury found

23  her guilty of vandalism,  Cal. Pen. Code § 594(a)/(b)(2)(A), violation of a

24  protective order, Cal. Pen. Code § 273.6(a), and unlawful dissemination of private

25  photographs, Cal. Pen. Code § 647(j)(4)(A), all misdemeanors. (ECF Doc. 3 at 6,

26  

27      [1] At a subsequent hearing, Luo was also ordered to pay $93,003.76 in victim

28  restitution. (Lodgment 2 at 2.)

44, 177-179 [CT 31, 164-166]; ECF Doc. 4 at 206-207 [RT 305-306]; Lodgment 2 at 2.)

Luo appealed, and appointed counsel filed a no-issue *Wende*[2] brief on her behalf. She filed a supplemental brief raising five issues: (1) *Brady* violations by the prosecutor's failure to disclose three pieces of allegedly favorable evidence, (2) prosecutorial error, (3) ineffective assistance of counsel, (4) "sloppy police work," and (5) violation of speedy trial rights. (ECF Doc. 3 at 6.) The Appellate Division of the Orange County Superior Court rejected each claim of error and affirmed the judgment in full on April 27, 2022. (ECF Doc. 3 at 3-9; Lodgment 2 at 2.)

On October 13, 2021, Luo filed a petition for writ of habeas corpus, claiming that: (1) her rights to a speedy trial and conflict-free counsel were violated; (2) she was provided ineffective assistance of counsel; (3) there was insufficient evidence to support the conviction; (4) the trial court erred in allowing evidence of Luo's prior testimony from a civil proceeding; (5) the trial court erred in failing to consider her speedy trial motion; and (6) she is actually innocent. (ECF Doc. 5 at 9-51.) On October 19, 2021, the superior court denied the petition in full. (ECF Doc. 6 at 16-22.)

In November 2021 and February 2022, petitioner filed petitions for writ of habeas corpus in the Court of Appeal. (ECF Doc. 5 at 65-154) The appellate court denied both petitions. (ECF Doc. 5 at 62, 64; ECF Doc. 6 at 12, 14.) Luo filed her next habeas petition in the California Supreme Court on May 2, 2022. (ECF Doc. 6 at 4-9.) On August 31, 2022, the California Supreme Court summarily denied the petition. (ECF Doc. 6 at 3.)

Luo filed a federal habeas petition on September 6, 2022, raising thirty-four claims for relief. (ECF Docs. 1, 2.) On October 6, 2022, this Court screened the

---

[2] *People v. Wende,* 25 Cal. 3d 436 (1979); *see also Anders v. California*, 386 U.S. 738 (1967)

petition and determined it was mixed, finding six claims unexhausted (claims 7, 8
and 25-29.) (ECF Doc 12. ) The Court thereafter granted a *Rhines*[3] stay to give Luo
an opportunity to exhaust her remaining claims in state court. (ECF Doc. 18.)

On October 10, 2022, Luo filed a second state habeas petition, along with a
supporting declaration and trial transcripts raising twenty-nine claims for relief, in
the Orange County Superior Court. (Lodgment 1.) On December 28, 2022, the
Orange County Superior Court denied the petition in a reasoned decision.
(Lodgment 2.) On January 5, 2023, Luo filed a state habeas petition in the Court of
Appeal. (Lodgment 3.) The Court of Appeal summarily denied the petition on
January 26, 2023. (Lodgment 4.) On February 1, 2023, Luo filed her final state
habeas petition in the California Supreme Court. (Lodgment 5.) On April 5, 2023,
she filed a supplement to the petition to include an instructional error claim.
(Lodgment 6.) The California Supreme Court summarily denied the petition on
May 17, 2023. (Lodgment 7.)

On Luo's request, this Court lifted the stay on May 30, 2023, and granted her
motion to file a First Amended Petition, which she did on June 26, 2023. (ECF
Docs. 27, 32, 33.)

## STATEMENT OF FACTS

The following is taken from the Orange County Superior Court, Appellate
Division's recitation of facts. *People* v. *Luo*, No. 30-2021-01216615, Unpub. (Cal.
Sup. Ct. App. Div. Apr. 27, 2022). (ECF Doc. 3 at 3-9.) The factual summary set
forth in that court's opinion is presumed to be correct 28 U.S.C. § 2254(e)(1); see
*Slovikv. Yates*, 543 F.3d 1090, 1093 n. l (9th Cir. 2008); *Tilcockv. Budge*, 538 F.3d
1138, 1141 (9th Cir. 2008).

The victim was the sole witness at trial.

In August 2018, the victim met [Luo] on a dating app, and they
began communicating online about every other day. After their first

___

[3] *Rhines v, Weber*, 544 U.S. 269 (2005)

4

date, the victim sent [Luo] nude photos of himself. After a second date, the victim told [Luo] they "should take it easy" and meet other people.

A few days later, the victim learned from friends that one of his photos from the dating app had been posted on Facebook under a fake profile. He searched and found other photos of himself—including a nude photo he had sent only to [Luo]—on other websites. The nude photo was also part of a YouTube video about the victim, with comments that he was a liar and a serial cheater. Over defense objection, the prosecution introduced several screenshots and photos from social media sites showing images and statements posted online about the victim. One screenshot, taken by the victim's friend from the Facebook messenger app, shows a photo of the victim without any clothes on—the same photo the victim had sent only to [Luo].

Around that time, [Luo] texted the victim, "Never met an asshole that's worse than u. You will soon become famous coz I will put all your stuff on social media." Two days later [Luo] texted, "You wanted to play me but u picked the wrong girl to cheat. You need to suffer for what I have suffered." When the victim texted [Luo] that he would contact the police, [Luo] responded, "Call the police for what? [¶] Did I tell u that I have a law degree?" She later texted, "Your best solution is to sincerely apologize to me. The only thing the police will do is to laugh at you." She also texted, "Next week u will have new surprise. I won't stop until I get my dignity back."

On September 18, 2018, [Luo] arrived uninvited at the victim's house, knocking on the front door for 5 to 20 minutes. The victim told [Luo] to "get out" and videotaped portions of their conversation. In the video, when the victim asked [Luo] whether she had posted "shit" about him, [Luo] replied, "I was emotional." [Luo] refused to leave until the police arrived, about 40 to 45 minutes later.

The next day, the victim found scratches on his front door, which were not there before [Luo] arrived. At trial, the prosecution introduced a video still showing [Luo] knocking on the door with a metal key in the same area the victim later found scratches. The victim spent a few hundred dollars to repair the door.

On September 28, 2018, the victim obtained a temporary restraining order (TRO) against [Luo].

At the October 19, 2018  hearing on the domestic violence restraining order (DVRO hearing), the victim obtained a permanent

5

restraining order against [Luo], which required [Luo] to stay away from the victim, not to contact him, stay away from his Facebook page, not post online about him or his company, and remove online content [Luo] had posted about him. [Luo] was served with the TRO and the permanent restraining order.

After October 2018, the victim continued to see his name or likeness on about 20"cheater type" websites. He also received between 10 and 20 harassing phone calls and calls from people informing him something new had been posted online.

(ECF Doc. 3 at 4-6.)

## ARGUMENT

### I.   LUO MUST SHOW THAT THE STATE COURT'S RESOLUTION OF HER CLAIMS WAS CONTRARY TO OR BASED ON AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED UNITED STATES SUPREME COURT PRECEDENT

Luo's claims are subject to the relitigation bar enacted by Congress in 28 U.S.C. § 2254, which provides that federal habeas corpus relief is only available to correct violations of the Constitution, laws, or treaties of the United States. *Estelle* v. *McGuire,* 502 U.S. 62, 68 (1991). The "'highly deferential standard'" of § 2254(d) demands that a federal court give a state court's merits decision "the benefit of the doubt." *Woodford* v. *Visciotti,* 537 U.S. 19,24 (2002) (*quoting Lindh* v. *Murphy,* 521 U.S. 320, 333 (1997)). This standard seeks to prevent federal habeas "retrials" and ensures that state court convictions are "given effect to the extent possible under law." *Bell* v. *Cone,* 535 U.S. 685, 693 (2002).

"Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision 'was contrary to'" federal law as clearly established in the holdings of the United States Supreme Court; "or that it 'involved an unreasonable application of such law, [citation]; or that it 'was based on an unreasonable determination of the facts' in light of the record before  the state court [citation]." *Harrington* v. *Richter,* 562 U.S. 86, 100 (2011). A decision is "contrary to United States Supreme Court authority if it fails to

apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but reaches a different result. *Williams* v. *Taylor,* 529 U.S. 362, 413-414 (2000). A decision is an "unreasonable application" of clearly established federal law when the state court identifies the correct governing legal principle, but unreasonably applies that principle to the facts of that case. *Id*. at 413.

As to factual findings by the state courts, those determinations "are presumed correct absent clear and convincing evidence to the contrary." *Miller-El* v. *Cockrell,* 537 U.S. 322, 340 (2003); 28 U.S.C. § 2254(e)(1).

Where the highest state court has denied a claim without comment, a federal habeas court applies these standards to the "last reasoned decision" from a lower state court to determine the rationale for the denial of the claim. *Wilson* v. *Sellers,* 584 U.S.___ , 138 S. Ct. 1188, 1193-95 (2018); *see also Ylst* v. *Nunnemaker,* 501 U.S. 797, 803 (1991).

Here, the multitude of claims Luo raises in her amended federal Petition were presented to the state courts in "piecemeal" fashion through direct appeal and two separate rounds of state habeas petitions.  A panel of the Orange County Superior Court's Appellate Division rejected the claims raised on direct appeal in a reasoned decision. [4] (ECF Doc. 3 at 3-9.) With regard to the remaining claims, Luo's collateral state petitions were summarily denied  by the California appellate courts. (ECF Doc. 5 at 62, 64; ECF Doc. 6 at 3, 12, 14; Lodgments 4, 7.) This Court thus analyzes the reasoned decision from the Appellate Division affirming her judgment on direct appeal and the Superior Court's decisions denying her state habeas petitions. (ECF Doc. 3 at 3-9; Lodgment 2.)[5] Luo must show that these courts'

---

[4] The procedural record does not show that review was sought or granted by the California Supreme Court.

[5] In the forthcoming analysis, respondent will identify the applicable reasoned decision for each of Luo's claims through citation to the record.

rejection of her claims was contrary to established United States Supreme Court authority.

## II.   A NUMBER OF LUO'S CLAIMS, INCLUDING ALL PREVIOUSLY UNEXHAUSTED CLAIMS RAISED IN HER SECOND STATE HABEAS PETITION, ARE DEFAULTED UNDER CALIFORNIA'S INDEPENDENT AND ADEQUATE PROCEDURAL BARS

This Court screened Luo's original federal habeas Petition, finding that it contained unexhausted claims. (ECF Doc. 12.) The Court granted a stay so that Luo could seek to exhaust the remaining claims from her mixed petition. (ECF Doc. 18.) Luo filed a second state habeas petition, raising twenty-nine claims for relief. (Lodgment 1; Lodgment 2 at 2-3.) Among other bases, the Orange County Superior Court denied her state petition for relief as follows:

Piecemeal Presentation of Claims

"Absent justification for the failure to present all known claims in a single, timely petition for writ of habeas corpus, successive and/or untimely petitions will be summarily denied." (*In re Clark* (1993) 5 Cal.4th 750, 797.) "[I]t has long been the rule that 'piecemeal presentation of known claims' is prohibited." (*Id.* at p. 777.) "[A] litigant seeking extraordinary relief from a final judgment is not entitled to bring his legal claims to court seriatim." (*People v. Kim* (2009) 45 Cal.4th 1078, 1101.) A habeas corpus petitioner "'cannot be allowed to present his reasons against the validity of the judgment against him piecemeal by successive proceedings for the same general purpose.'" *(In re Horowitz* (1949) 33 Cal.2d 534, 547.) Petitioner does not explain why she is filing a second, similar petition for writ of habeas corpus one year after filing her previous petition

(Lodgment 2 at 4-5.) California's rule against successive and piecemeal habeas petitions, often referred to as the "*Clark*" rule, is an independent and adequate procedural bar to all claims raised in that petition. *See In re Clark*, 5 Cal. 4th 750, 767-768 (Cal. 1993) ("the court will not consider repeated applications for habeas corpus presenting claims previously rejected. The court has also refused to consider newly presented grounds for relief which were known to the petitioner at the time of a prior collateral attack on the judgment."); *In re Morgan*, 50 Cal. 4th 932, 945

(Cal. 2010) ("A corollary of the rule against successive petitions is the rule that all known claims must be brought in a single, timely habeas corpus petition.").

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). The independent and adequate state ground doctrine "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Id*. at 729-730. "In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism," as it forecloses "a means to undermine the State's interest in enforcing its laws." *Id*. at 730-731. Consequently. "[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id* at 750.

The state's grounds for denying the claim must be "independent of the federal question and adequate to support the judgment." *Coleman* 501 U.S. at 729. For a state procedural rule to be "independent," the state law basis for the decision must not be interwoven with federal law. *La Crosse v. Kernan*, 244 F.3d 702, 704 (9th Cir. 2001) (*citing Michigan v. Long*, 463 U.S. 1032, 1040-1041 (1983)). A state procedural bar is "adequate" if it is "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Melendez v. Pliler*, 288 F.3d 1120, 1124 (9th Cir. 2002) (*quoting Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)).

The independence of the *Clark* bar on successive petitions "is readily apparent" given that successiveness has nothing to do with any federal law. *Briggs*

9

1    *v. State*, 2017 WL 1806495, at *6 (N.D. Cal. May 5, 2017) (*citing In re Robbins*, 18

2    Cal. 4th 770, 811 (1998)); *Carpio v. Hill*, 2023 WL 3829687, at *4 (S.D. Cal. June

3    5, 2023). The *Clark* bar is also adequate and courts have routinely found it

4    sufficient to bar habeas relief. *Trieu v Fox*, 764 Fed. App'x. 624 (9th Cir. 2019)

5    (affirming district court's conclusion that the federal petition was barred by *Clark's*

6    procedural bar against successive habeas petitions); *see also Carpio v. Hill*, 2023

7    WL 3829687, at *3-*5 (finding all claims raised in federal habeas petition are

8    procedurally defaulted under the *Clark* rule); *Churich v. Hatton*, 2020 WL 978625,

9    at *3 (N.D. Cal. Feb. 28, 2020) (concluding petition was barred by *Clark's*

10   successive rule); *Acedo v. Fisher*, 2018 WL 4407589, at *5 (S.D. Cal. Sept. 17,

11   2018), adopted, 2020 WL 4015140 (finding state's initial burden to show adequacy

12   of *Clark* bar was satisfied); *Briggs*, 2017 WL 1806495, at *6-*7 (N.D. Cal. May 5,

13   2017) (concluding claims were procedurally defaulted because *Clark's* bar against

14   successive petitions is adequate and independent); *Aguirre v. Sherman*, 2016 WL

15   9752052, at *6 (C.D. Cal. Dec. 1, 2016); *Flowers v. Foulk*, 2016 WL 4611554, at

16   *4 (N.D. Cal. Sept. 6, 2016); *Arroyo v. Curry*, 2009 WL 723877, at *6 (N.D. Cal.

17   Mar. 18, 2009). Consequently, this procedural bar applies to Luo's Petition.

18       Here, while the state court "went on to provide additional bases for dismissal

19   of individual claims, its order makes clear the entire petition was denied under

20   *Clark's* rule against piecemeal litigation and successive habeas writs." *Carpio v.*

21   *Hill*, at *4; (Lodgment 2 at 4-5.) Accordingly, the state court's application of the

22   *Clark* bar triggers default of those claims this Court previously screened as

23   unexhausted.

24       In addition, the state courts adjudicating  Luo's direct appeal and habeas

25   petitions applied additional procedural bars to many of her previously exhausted

26

27

28

claims, including the contemporaneous objection rule, the *Lindley*[6] rule, and the *Dixon*[7] bar. (*See* ECF Doc. 3 at 7; ECF Doc. 6 at 19; Lodgment 2 at 3-5.)

The failure to lodge a contemporaneous objection is an independent and adequate procedural bar. California law has long required a defendant to make a timely and specific objection at trial in order to preserve a claim for appellate review. *See, e.g.,* Cal. Evid. Code § 353; *People v. Ramos,* 15 Cal.4th 1133, 1171 (1997). The United States Supreme Court has acknowledged that a state court's application of the contemporaneous objection rule may constitute grounds for default. *See Wainwright v. Sykes,* 433 U.S. 72, 87 (1977). The Ninth Circuit has confirmed that the contemporaneous rule is independent, and has honored defaults for failure to comply with the rule. *See Vansickel v. White,* 166 F.3d 953, 957-958 (9th Cir.1999); *Bonin v. Calderon,* 59 F.3d 815, 842-843 (9th Cir.1995).

Under the *Lindley* rule, "[c]laims alleging the evidence was insufficient to convict … are not cognizable on habeas corpus." *See In re Reno*, 55 Cal. 4th 428, 452 (2012), *superseded by statute on another ground*; *Lindley*, 29 Cal. 2d at 723 ("Upon habeas corpus, ordinarily it is not competent to retry issues of fact or the merits of a defense … and the sufficiency of the evidence to warrant the conviction of the petitioner is not a proper issue for consideration."). This principle is "an independent and adequate state procedural bar" and means that the state court's application of this rule procedurally bars her federal claim. *Carter v. Giurbino*, 385 F.3d 1194, 1197-1198 (9th Cir. 2004).

Finally, the *Dixon* bar prohibits a petitioner from raising claims through habeas that could have been, but were not, raised on direct appeal. *In re Sakarias*, 35 Cal. 4th 140, 169 (2005); *Dixon*, 41 Cal. 2d at 759 ("The general rule is that habeas corpus cannot serve as a substitute for an appeal … the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal

---

[6] *Ex parte Lindley*, 29 Cal. 2d 709, 723 (1947)
[7] *Ex parte Dixon*, 41 Cal. 2d 756, 759 (1953)

1   from a judgment of conviction.").  The California rule that claims which could have

2   been raised in direct appeal cannot be litigated through habeas corpus is an

3   independent and adequate procedural bar to the claim. California law has long held

4   that a defendant who fails to pursue claims available on direct appeal is prohibited

5   from asserting such claims in a later habeas petition. *See, e.g., Dixon*, 41 Cal. 2d at

6   759; *In re Reno*, 55 Cal. 4th 428, 505 (2012), *superseded by statute on another*

7   *ground*; *Ex parte Lindley*, 29 Cal. 2d 709, 723 (1947). The United States Supreme

8   Court has acknowledged that a state court's application of a requirement to raise

9   certain claims on direct appeal rather than through habeas corpus may constitute

10   grounds for default. *See Coleman*, 501 U.S. at 728-731; *Murray v. Carrier*, 477

11   U.S. 478, 483 (1986). The United States Supreme Court has confirmed that

12   California's *Dixon* bar is independent and adequate, and has honored defaults for

13   failure to comply with the rule. *Johnson v. Lee*, 578 U.S. 605, 608-609 (2016);

14   *Johnson v. Montgomery*, 899 F.3d 1052, 1060 (9th Cir. 2018).

15       As noted, denial under an independent and adequate state ground forecloses

16   federal habeas relief unless a petitioner can demonstrate cause and actual prejudice

17   or a fundamental miscarriage of justice from a failure to consider these claims on

18   the merits. *Coleman*, 501 U.S. at 750; *Davila v. Davis*, 137 S. Ct. 2058, 2064-65

19   (2017). Luo cannot show cause because she has provided no satisfactory

20   justification to excuse her multiple defaults under California Law. *See  Murray,* 477

21   U.S. at 488 (To establish "cause" a petitioner must "show that some objective factor

22   external to the defense impeded counsel's efforts to comply with the State's

23   procedural rule.") Nor can she show prejudice because none of her claims have

24   merit. *Coleman*, 501 U.S. at 750.

25

26

27

28

### III. LUO'S FIRST AMENDMENT CHALLENGE TO HER PROSECUTION FOR DISSEMINATING THE VICTIM'S NUDE PHOTOS (CLAIM 1) CANNOT SUCCEED BECAUSE THE STATE COURT'S DENIAL DID NOT CONTRAVENE OR UNREASONABLY APPLY CLEARLY ESTABLISHED FEDERAL LAW AS ARTICULATED BY THE UNITED STATES SUPREME COURT

Luo first claims that her prosecution for the intentional dissemination of private photographs violated her First Amendment protected speech rights because, as a nudist who engaged in a casual extramarital affair, the victim had no reasonable expectation of privacy in the photographs he sent to her. (ECF Doc 33 at 31-32.) Luo is not entitled to habeas relief because the state court's adjudication[8] of this claim was not contrary to, or based on an unreasonable application of, clearly established United States Supreme Court authority.

The First Amendment of the Constitution provides that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend I. However, "[t]he protections afforded by the First Amendment, made applicable to the States by the Fourteenth Amendment, are not absolute" and the government is permitted to impose legitimate and properly-tailored regulations on expression "consistent with the Constitution." *Chaker v. Crogan*, 428 F.3d 1215, 1223 (9th Cir. 2005). Relevant here, "restricting speech on purely private matters does not implicate the same constitutional concerns as limiting speech on matters of public interest." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011). "Speech on matters of purely private concern is of less First Amendment concern" than speech on public matters that go to the heart of our democratic system. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 759 (1985).

In the First Amendment context, the level of scrutiny to be applied when assessing the legitimacy of government regulation depends upon the " 'content

---

[8] The California Supreme Court summarily denied this claim in Luo's first and second round of state habeas petitions. (See ECF Doc. 6 at 3, 43; Lodgment 7.) The last reasoned decision addressing this claim on the merits is the superior court's denial of Luo's second state habeas petition. (Lodgment 2 at 6-7.)

1   neutrality' of the statute." *Hill v. Colorado,* 530 U.S. 703, 719 (2000). Content-

2   based regulations are subject to the most exacting scrutiny because the "government

3   has no power to restrict expression because of its message, its ideas, its subject

4   matter, or its content." *Police Dep't. of Chicago v. Mosley,* 408 U.S. 92, 95 (1972).

5   Under this standard, "statutes attempting to restrict or burden the exercise of First

6   Amendment rights must be narrowly drawn and represent a considered legislative

7   judgment that a particular mode of expression has to give way to other compelling

8   needs of society. [Citations.]" *Broadrick v. Oklahoma* 413 U.S. 601, 611-612

9   (1973). By contrast, "regulations that are unrelated to the content of speech are

10  subject to an intermediate level of scrutiny." *Turner Broad. Sys., Inc. v. FCC,* 512

11  U.S. 622, 642 (1994).  Under this less-exacting test, a content-neutral regulation

12  will be sustained if "it furthers an important or substantial governmental interest; if

13  the governmental interest is unrelated to the suppression of free expression; and if

14  the incidental restriction on alleged First Amendment freedoms is no greater than is

15  essential to the furtherance of that interest." *United States v. O'Brien,* 391 U.S. 367,

16  377 (1968). In order to decide which level of scrutiny applies,  "[t]he principal

17  inquiry in determining content neutrality ... is whether the government has adopted

18  a regulation of speech because of disagreement with the message it conveys." *Ward*

19  *v. Rock Against Racism,* 491 U.S. 781, 791 (1989).

20        Finally, the U.S. Supreme Court has "long recognized that the government

21  may regulate certain categories of expression consistent with the Constitution."

22  *Virginia v. Black,* 538 U.S. 343, 358 (2003). These well-defined categories of

23  speech have " 'such slight social value as a step to truth that any benefit that may be

24  derived from them is clearly outweighed by the social interest in order and

25  morality.'" *Id*. at 358-359 (*quoting R.A.V. v. City of St. Paul*, 505 U.S. 377, 383

26  (1992)). Among the speech categorically outside the traditional scope of

27  Constitutionally protected expression are obscenity and defamation. *See Roth v.*

28

1   *United States*, 354 U.S. 476, 483-485 (1957); *Beauharnais v. People of State of Ill.*,

2   343 U.S. 250 (1952).

3        The Orange County Superior Court addressed Luo's First Amendment claim

4   in its denial of her second state habeas petition:

5        Petitioner claims that her prosecution for dissemination of nude

6        photographs violates her First Amendment rights because the victim

7        lacked a reasonable expectation of privacy. Per Pen. Code,§ 647

         (j)(4)A), "A person who intentionally distributes the image of the

8        intimate body part or parts of another identifiable person, or an image

9        of the person depicted engaged in an act of sexual intercourse,

         sodomy, oral copulation, sexual penetration, or an image of

10       masturbation by the person depicted or in which the person depicted

11       participates, under circumstances in which the persons agree or

         understand that the image shall remain private, the person distributing

12       the image knows or should know that distribution of the image will

13       cause serious emotional distress, and the person depicted suffers that

         distress." To the extent that petitioner challenges the constitutionality

14       of the statute in general, courts have upheld the validity of Pen. Code,§

15       647 (j)(4)A) and found that the statute is not unconstitutionally vague

         or overbroad. (See e.g. *People v. Iniguez* (2016) 247 Cal.App.4th

16       Supp.1.)

17       To the extent that petitioner argues that she never promised to

18       keep the images private, that claim goes to the sufficiency of the

         evidence. The jury in petitioner's case was instructed that in order to

19       find petitioner guilty under Count 3, they had to find in part that "The

20       defendant received or acquired the image or images of the other person

         under circumstances in which the defendant and the other person

21       agreed or understood that the images shall remain private." Moreover,

22       petitioner's trial counsel raised the same argument to the jury during

         closing arguments, which the jury rejected: "[The People] have not

23       provided that information to show that there was an agreement or

24       understanding those photos would remain private and would not be

         disseminated ... There was no implicit understanding or agreement that

25       photo remained private, right? Why would there? ... Prosecution has

26       not presented any credible evidence that Ms. Luo posted those pictures

         without an agreement." (RT p. 282-283.) Since whether or not the

27       victim and/or petitioner believed the images would remain private was

28

1    a factual determination made by the jury, petitioner's factual claims
2    contradicting the jury's findings are not cognizable on habeas corpus.

3    (Lodgment 2 at 6-7.) This analysis reasonably applies clearly established federal

4    law. As the court noted, California case law has applied relevant federal precedent

5    to hold that California Penal Code, section 647 (j)(4)A) is not unconstitutional

6    under the First Amendment. *See People v. Iniguez*, 247 Cal. App. 4th Supp. 1, 7-8

7    (Cal. App. Dep't Super. Ct. 2016). The court in *Iniguez* found that, assuming that

8    the distribution of photos concerned protected free-speech rights, California's

9    statute was nonetheless constitutional "because it was narrowly drawn and it

10   protected a compelling public interest." *Id*. at 7. The court explained:

11       section 647, subdivision (j)(4) only barred a person who
12       photographed or recorded the image from distributing it, when such a
         person had the intent to cause serious emotional distress. The
13       requirement that a person *intend* to cause distress served to narrow the
         law (see *Stark v. Superior Court* (2011) 52 Cal.4th 368, 391, 128
14       Cal.Rptr.3d 611, 257 P.3d 41), rendering it inapplicable, for example,
         if the person acted under a mistake of fact or by accident (see § 26
15       classes Three & Five).
16
17       Furthermore, it is not just *any* images that are subject to the
         statute, but only those which were taken under circumstances where
18       the parties agreed or understood the images were to remain private.
         "The government has an important interest in protecting the substantial
19       privacy interests of individuals from being invaded in an intolerable
         manner. [Citation.]" (*People v. Astalis* (2014) 226 Cal.App.4th Supp.
20       1, 8, 172 Cal.Rptr.3d 568.) It is evident that barring persons from
         intentionally causing others serious emotional distress through the
21       distribution of photos of their intimate body parts is a compelling need
22       of society. The statute was not overbroad because the limitations
         specified therein greatly narrowed its applicability, diminishing the
23       possibility that it could lead persons to refrain from constitutionally
24       protected expression, and it constituted "a considered legislative
         judgment that a particular mode of expression has to give way to other
25       compelling needs of society. [Citations.]" (*Broadrick v. Oklahoma,
26       supra,* 413 U.S. at p. 611–612, 93 S.Ct. 2908.)
27
28

16

1  *Iniguez*, at 7-8. It is clear that the state court's reliance on the foregoing precedent

2  in rejecting Luo's analogous First Amendment challenge to the same statute

3  comports with the relevant federal legal principles for analyzing such claims.

4  (Lodgment 2 at 6.)

5       Luo has failed to present any controlling United States Supreme Court

6  authority that supports her position or that undermined what the California state

7  courts decided here. Absent such clearly established law, her claim necessarily

8  fails. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

9  **IV.   LUO'S CHALLENGE TO THE STATE COURT'S JURISDICTION TO ISSUE A
10  TEMPORARY RESTRAINING ORDER AND DOMESTIC VIOLENCE
   RESTRAINING ORDER BASED ON THE LACK OF A DATING
11  RELATIONSHIP (CLAIM 2) FAILED TO STATE A FEDERAL CLAIM, IS
   PROCEDURALLY DEFAULTED UNDER *DIXON*, AND IS MERITLESS**

12       Luo next contends that the California family court had no jurisdiction to issue

13  a temporary restraining order (TRO) or domestic violence restraining order

14  (DVRO) against her due to the lack of "dating relationship" between the victim

15  and Luo. (Doc 33 at 32-36.) The state courts[9] properly dismissed this claim, which

16  is procedurally defaulted and does not establish a basis for habeas relief

17       As an initial matter, this claim is not cognizable on federal habeas review

18  because it alleges a violation of state law; namely, that the state "family court had

19  no jurisdiction" to issue a restraining order due to the statutory requirements of the

20  California Family Code. "[I]t is not the province of a federal habeas court to

21  reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at

22  63; *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990); accord *Langford v. Day,* 110 F.3d

23  1380, 1389 (9th Cir.1996) ("alleged errors in the application of state law are not

24  cognizable in federal habeas corpus"). Rather, reviewing federal courts will "accept

25

26       [9] The California Supreme Court summarily denied this claim in Luo's first and
27  second round of state habeas petitions. (See ECF Doc. 6 at 3, 36-37; Lodgment 7.)
   The last reasoned decision addressing this claim on the merits is the superior
28  court's denial of Luo's second state habeas petition. (Lodgment 2.)

1   a state court's interpretation of state law[.]" *Langford,* 110 F.3d at 1389; *Melugin v.*

2   *Hames*, 38 F.3d 1478, 1482 (9th Cir. 1994). Indeed, a state court's interpretation of

3   state law is binding on the federal courts on habeas review. *Bradshaw v. Richey*,

4   546 U.S. 74, 76 (2005). And while Luo generally asserts a Fourteenth Amendment

5   violation in the issuance of her restraining orders (ECF Doc. 33 at 36), a petitioner

6   may not "transform a state-law issue into a federal one merely by asserting a

7   violation of due process." *Langford,* at 1389.

8       Second, this claim is separately barred on habeas because the state court held

9   it "should be denied on grounds that she has not explained or otherwise justified her

10  failure to raise the issues on appeal." (Lodgment 2 at 4); *see also Dixon*, 41 Cal. 2d

11  at 759 ("the writ will not lie where the claimed errors could have been, but were

12  not, raised upon a timely appeal from a judgment of conviction."). As noted, *Dixon*

13  constitutes an independent and adequate procedural bar which precludes relief.

14  *Johnson v. Lee*, 578 U.S. at 608-609; *Johnson v. Montgomery*, 899 F.3d at 1060. In

15  addition, Luo has failed to make the requisite showings of cause and prejudice to

16  justify relief from procedural default.

17      In an effort to overcome the procedural bar, Luo asserts that her appellate

18  counsel rendered ineffective assistance by filing a *Wende* brief, rather than raising

19  her now-desired claims on appeal. (ECF Doc. 33 at 102.) It has long been the rule

20  that attorney error is an objective external factor providing cause for excusing a

21  procedural default only if that error amounted to a deprivation of the constitutional

22  right to counsel.  *Davila,* 137 S. Ct. at 2065. Conversely, "[a]ttorney error that does

23  not violate the Constitution" is "attributed to the prisoner 'under well-settled

24  principles of agency law." *Id. quoting Coleman,* 501 U.S. at 754. As will be fully

25  detailed in the response to claim 32, *post*, Luo failed to show she received

26  ineffective appellate assistance.  For the same reasons, she cannot establish cause to

27  excuse the procedural bar. *See, e.g, Murray v. Carrier*, 477 U.S. 478, 486 (1986)

28  ("the mere fact that counsel failed to recognize the factual or legal basis for a claim,

1    or failed to raise the claim despite recognizing it, does not constitute cause for a

2    procedural default")

3        Luo also has not demonstrated "actual prejudice." *Coleman*, 501 U.S. at 750.

4    At trial, Luo stipulated that her TRO and DVRO were "lawful and valid." (ECF

5    Doc. 4 at 118-120 [RT 217-219]); see also  *People v. Farwell*, 5 Cal. 5th 295, 300

6    (2018) (party stipulation "conclusively established the stipulated facts as true and

7    completely relieved the prosecution of its burden of proof" in criminal trial). As a

8    result, any complained-of deficiencies with the restraining orders cannot undermine

9    the validity of her conviction for violating said orders, and her arguments are

10   waived through the doctrine of invited error. *United States v. Myers*, 804 F.3d 1246,

11   1254 (9th Cir. 2015) ("The doctrine of invited error prevents a defendant from

12   complaining of an error that was [her] own fault.")(citation omitted); *United States*

13   *v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) ("If the defendant has both invited the

14   error, and relinquished a known right, then the error is waived and therefore

15   unreviewable").

16       Finally, even if properly considered, her claim is meritless.  A restraining

17   order sought under the California Domestic Violence Prevention Act may be

18   granted where the parties are "having or [have] had a dating ... relationship." Cal.

19   Fam. Code §§ 6211 (c), 6301(a). Under the Act, " 'Dating relationship' means

20   frequent, intimate associations primarily characterized by the expectation of

21   affection or sexual involvement independent of financial considerations." Cal. Fam.

22   Code § 6210.

23       Luo contends that no dating relationship existed because the victim was

24   married to another woman and was merely looking for "casual hookups." (ECF

25   Doc. 33 at 17-19, 21, 33, 36.) However, the statute does not contemplate

26   exclusivity or the intent to pursue a serious courtship. *See Phillips v. Campbell*, 2

27   Cal. App. 5th 844, 849 (2016). By her own admission, Luo met the victim on a

28   dating app and believed him to be single (and presumably available to date). (ECF

19

Doc. 33 at 17-18, 20-21; *see also* ECF Doc. 3 at 4; ECF Doc. 4 at 31-32 [RT 130-131].) Thus, even accepting her characterization of the victim's intentions, both parties held the expectation of affection or sexual involvement. Luo further argues that no dating relationship existed because the pair only went on two dates. (ECF Doc. 33 at 19-20, 32; ECF Doc 4 at 34 [RT 133].) But in addition to their in-person liaisons, Luo and the victim engaged in more extensive interactions through text message and their dating app, communicating approximately every other day for a period of several weeks—during which time the pair flirted and the victim provided risqué photographs to Luo. (ECF Doc. 3 at 4; ECF Doc. 4 at 31-35 [RT 130-134].) These facts make clear that the nature of their association was both frequent and intimate and qualified as a dating relationship under California law.[10]

## V. LUO'S OVERBREADTH AND PRIOR RESTRAINTS CHALLENGES TO HER RESTRAINING ORDERS (CLAIM 3) ARE NOT COGNIZABLE THROUGH FEDERAL HABEAS; MOREOVER, THE STATE COURT REASONABLY APPLIED FEDERAL LAW AS ARTICULATED BY SUPREME COURT PRECEDENT, IN DENYING THIS CLAIM ON THE MERITS

Luo alleges that her Domestic Violence Restraining order and Temporary Restraining Order violated the First Amendment because they were overly broad content-based prior restraints on speech. (ECF Doc. 33 at 36-42.) This claim is unmeritorious, and was properly denied in the state proceedings.[11]

---

[10] Luo's insistence that the victim did not consider her to be his girlfriend (ECF Doc 33 at 32; ECF Doc 3 at 114 [CT 101]; Doc 4 at 35 [RT 134]) is immaterial to this analysis. "Sitting as trier of fact, a trial court may draw its own inferences and conclusions from the evidence" and has the "power to factually find a 'dating relationship' within the meaning of the DVPA even though the parties characterize their relationship as a friendship that does not involve 'dating' as that term is commonly understood." *Phillips*, 2 Cal. App. 5th at 846-847.

[11] The California Supreme Court summarily denied this claim in Luo's first and round of state habeas petitions. (See (ECF Doc. 6 at 3, 37-43; Lodgment 7.) The last reasoned decision addressing this claim on the merits is the Superior Court's denial of Luo's second state habeas petition. (Lodgment 2 at 7.)

1    For starters, this argument is not cognizable on federal habeas review. Federal

2    courts may grant relief "only on the ground that [a petitioner] is in custody in

3    violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §

4    2254(a). As previously explained, the parties here stipulated to the lawfulness of the

5    restraining orders issued against Luo, which conclusively established that element.

6    (ECF Doc. 4 at 118-120 [RT 217-219]); *Farwell*, 5 Cal. 5th at 300. Accordingly,

7    Luo cannot now raise a complaint as to the lawfulness of those orders. As such, a

8    challenge to those orders (regardless of their merits) cannot undermine the validity

9    of Luo's convictions or the legality of the state's custody over her—since the

10   prosecutor had no obligation to offer any evidence on that question at trial. Even if

11   cognizable, Luo's claim cannot succeed because the state court did not contravene

12   or misapply clearly established Supreme Court precedent.

13   In the context of First Amendment jurisprudence, a prior restraint is an

14   administrative or judicial order that forbids certain speech in advance of it being

15   made. *Alexander v. United States*, 509 U.S. 544, 550 (1993). "Temporary

16   restraining orders and permanent injunctions—i.e., court orders that actually forbid

17   speech activities—are classic examples of prior restraints." (*Ibid.*) However, prior

18   restraints are not unconstitutional per se. (*Southeastern Promotions, Ltd. v. Conrad*

19   (1975) 420 U.S. 546, 558.) Specifically, the doctrine of prior restraints applies only

20   to speech and expressive conduct that is protected by the First Amendment. As

21   stated, there are certain categories of speech which fall outside the protections of

22   the First Amendment because they "are no essential part of any exposition of ideas,

23   and are of such slight social value as a step to truth that any benefit that may be

24   derived from them is clearly outweighed by the social interest in order and

25   morality." *Bose Corp. v. Consumers Union of U. S., Inc.*, 466 U.S. 485, 503 (1984);

26   *Black,* 538 U.S. at 358-359.

27   "A constitutional challenge based on overbreadth is a challenge to the facial

28   validity of a statute or regulation." *United States v. Szabo*, 760 F.3d 997, 1003–

1004 (9th Cir. 2014). In an overbreadth challenge, the litigant asserts that a governmental restriction reaches so broadly that it deters expression protected by the First Amendment. *See Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65–66 (1981). "Invalidation for overbreadth is ' strong medicine ' that is not to be 'casually employed.'" *Williams*, 553 U.S. at 293; *see also Szabo*, 760 F.3d at 1004 (*quoting L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 38-40 (1999) (the Supreme Court has employed the overbreadth doctrine with hesitation, and "only as a last resort."). Instead, the unconstitutional overbreadth of a government restriction on speech "must be substantially disproportionate" to its "lawful sweep." *United States v. Hansen*, 599 U.S. 762, 770 (2023); *New York State Club Assn., Inc. v. City of New York*, 487 U.S. 1, 14 (1988); *Broadrick*, 413 U.S. at 615.

In denying Luo's second state habeas petition, the Orange County Superior Court identified the appropriate legal principles and authority, and thereafter applied this guidance to determine that her First Amendment challenge to the TRO and DVRO was unconvincing:

> Petitioner also claims that the enforcement of a domestic violence restraining order constituted a blanket prohibition on her speech in violation of the First Amendment. This argument fails. Per Fam. Code 6322, "The court may issue an ex parte order enjoining a party from specified behavior that the court determines is necessary to effectuate orders under Section 6320 or 6321." A prohibition against dissemination of nude photographs is not protected speech for purposes of First Amendment protections. "Although stated in broad terms, the right to free speech is not absolute. '[T]here are categories of communication and certain special utterances to which the majestic protection of the First Amendment does not extend because they 'are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'" (*In re Marriage o f Evilsizor* & *Sweeney* (2015) 237 Cal.App.4th 1416, 1427-1428, internal citations omitted.) Furthermore, the Domestic Violence Protection Act, which governs

domestic violence restraining orders, has been upheld as constitutional and withstood facial challenges. "'A statute that is otherwise valid, and ls not aimed at protected expression, does not conflict with the First Amendment simply because the statute can be violated by the use of spoken words or other expressive activity." (Citation.) Statutes that purportedly "'restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society.' [Citation.] The 'protection of Innocent individuals from fear, abuse or annoyance at the hands of persons who employ the telephone, not to communicate, but for other unjustifiable motives,' is such a compelling interest. [Citation.]" (*Altafulla v. Ervin* (2015) 238 Cal.App.4th 57,1, 581.)

(Lodgment 2 at 7.) Luo has not demonstrated that this analysis was contradicted by clearly established federal law.

Under California's Domestic Violence Protection Act, a court may issue a restraining order to prevent domestic violence or abuse if the party seeking the order "shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse." *See* Cal. Fam. Code, §§ 6300, 6220. Such an order enjoins "specific acts of abuse." Cal. Fam. Code, § 6218 (a). The Family Code identifies specific acts of abuse to include "conduct that, based on the totality of the circumstances, destroys the mental or emotional calm of the other party." Cal. Fam. Code, § 6320 (c). Here, Luo engaged in abusive conduct by, among things, posting explicit photographs and disparaging character attacks on the victim through social media and other websites. (ECF Doc. 3 at 4-6.) As such, the court issuing the restraining orders merely enjoined Luo from continuing to engage  in conduct which the court had earlier determined to be abusive. *Cf. Cantwell v. State of Connecticut*, 310 U.S. 296, 310 (1940) ("personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument."). A tailored injunction "based upon a continuing course of repetitive speech, and granted only after a final

1  adjudication" that the expression at issue is unlawful does not constitute a

2  prohibited prior restraint of speech. *Auburn Police Union v. Carpenter*, 8 F.3d 886,

3  903 (1st Cir. 1993); *accord Balboa Island Vill. Inn, Inc. v. Lemen*, 40 Cal. 4th 1141,

4  1153 (2007)

5       The state court's holding—namely, that the enjoined conduct involved types

6  of expression that did not fall within the robust protections of the First

7  Amendment—was  a valid interpretation of relevant Supreme Court authority.  *See*

8  *Cantwell*, 310 U.S. at 309-310; *Snyder v. Phelps*, 562 U.S. at 452; *Roth*, 354 U.S.

9  at483-485; *Beauharnais*, 343 U.S. at 254-261, 266-267. It follows from that

10  conclusion that Luo's overbreadth and prior restraints argument cannot succeed.

11  *See, e.g, United States v. Dang*, 488 F.3d 1135, 1142 (9th Cir. 2007) ("The

12  overbreadth doctrine is inapposite to a case in which First Amendment protections

13  are not implicated."); *Carpenter*, 8 F.3d at 903.( injunction granted after

14  adjudication "that the speech is unprotected does not constitute an unlawful prior

15  restraint."). And even if Luo could show that the restrictions at issue arguably

16  touched upon some protected speech, any such application was not so "substantially

17  disproportionate" to the legitimate sweep of the restraining orders to justify use of

18  the High Court's remedy of "last resort." *See Hansen*, 599 U.S. at 770; *Williams*,

19  553 U.S. at 293; *Szabo*, 760 F.3d at 1004.

20  **VI.   THE STATE COURT REASONABLY APPLIED CLEARLY ESTABLISHED**
      **FEDERAL LAW IN DENYING LUO'S *BRADY* CLAIM WITH REGARD TO**
21     **THE SEPTEMBER 10, 2018 FIELD ACTIVITY REPORT (CLAIM 4)**

22       Luo claims the prosecution's failure to disclose a police "field activity report"

23  from September 10, 2018, violated its *Brady* obligations because the report

24  undermined the credibility of the victim's testimony. Specifically, she claims that

25  the fact that the victim did not contact police until September 10th contradicted his

26  statement that Luo contacted him via text on September 7th and threatened to post

27  his nude photographs. (ECF Doc. 33 at 42-43.) The state courts correctly applied

28  established federal law in rejecting this claim.

The suppression of exculpatory evidence violates due process where the evidence is material to either guilt or punishment, irrespective of the good faith of the prosecutor. *Brady*, 373 U.S. at 87.  The three components of a *Brady* violation are: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *see United States v. Bagley*, 473 U.S. 667, 675-76 (1985) (duty applies to impeachment evidence). Evidence is material for the prejudice analysis only if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995); *Bagley*, 473 U.S. at 681-82.

The Appellate Division of the Orange County Superior Court analyzed Luo's claim in the proceedings below as follows:

> First, defendant complains the prosecutor violated *Brady* by failing to disclose … allegedly favorable evidence … . Defendant does not identify anything in either of the police department documents that could reasonably have resulted in a different outcome at trial. Defendant contends a reference to "a terrorism report" in one of the documents could have been used to impeach the victim's credibility. Nothing in the document supports defendant's unsupported claim the victim was the source of the reference to "a terrorism report" in that document. Indeed, it appears more likely that phrase refers to section 422, a reference to which appears on the same line of the document, and to the former description of charges pursuant to section 422 as "making terrorist threats." (See *People v. Crayton* (2002) 28 Cal.4th 346, 351 [describing § 422 as "making terrorist threats"].) … defendant has not demonstrated prejudice from the People's alleged failure to disclose these materials. (*See Strickler v. Greene* (1999) 527 U.S. 263, 281-282 [*Brady* violation requires prejudice resulting from withholding of evidence].)

(ECF Doc 3 at 6-7.) This discussion makes clear that the court identified the appropriate guiding legal authority and its finding that no prejudice occurred amounted to a reasonable application of Supreme Court precedent. *See Strickler*, 527 U.S. at 281-82; *Brown v. Davenport*, 142 S. Ct. 1510, 1520 (2022)("[A] state court's harmless-error determination qualifies as an adjudication on the merits under AEDPA."). Furthermore, its conclusion is soundly reasoned; the fact that the victim contacted police on September 10th to report Luo's continued harassment does nothing to disprove or contradict his testimony (and corroborating text message printouts) that Luo also threatened to expose nude photos of him on September 7th. This is especially true in light of the victim's explanation that he did try to report Luo's conduct on Friday, September 7th, but arrived after the station had closed and returned the following Monday. (ECF Doc. 4 at 51-52 [RT 150-151].) The state court reasonably determined that any *Brady* violation related to the September 10th field activity report could not have meaningfully affected the outcome of her trial. Indeed, this document had so little tendency in reason to undermine the victim's credibility that it is doubtful that it even constitutes *Brady* material. Regardless, Luo has not demonstrated that the state court contravened established federal law in disposing of her *Brady* claim, and habeas relief is unwarranted.

**VII.   THE STATE COURT REASONABLY APPLIED CLEARLY ESTABLISHED FEDERAL LAW IN DENYING LUO'S *BRADY* CLAIM WITH REGARD TO THE SEPTEMBER 18, 2018 FIELD ACTIVITY REPORT (CLAIM 5)**

Luo next asserts that the prosecution's failure to disclose a September 18, 2018 police field activity report violated its *Brady* obligations because the report apparently showed that the victim's 911 call did not mention the damage which he later stated Luo caused to his door by scratching it. (ECF Doc. 33 at 43-46.) Here again, the Appellate Division of the Orange County Superior Court identified and applied the legal principles articulated by the Supreme Court in *Brady* and *Strickler*. (ECF Doc 3 at 7.) Thereafter, the court reasonably considered and rejected Luo's claim:

> Defendant does not identify anything in either of the police department
> documents that could reasonably have resulted in a different outcome
> at trial. … Defendant contends the second document supports her
> contention she knocked on the victim's door rather than scratched it.
> This argument ignores other evidence introduced at trial that the victim
> found scratches on his door the day after defendant repeatedly knocked
> on it.

(ECF Doc 3 at 6-7.) As a result, the court concluded that Luo "has not demonstrated prejudice" from the alleged failure to disclose these the September 18th field activity report. (ECF Doc 3 at 7.) This conclusion was based on a reasonable application of established federal law. The mere fact that the police report summary of the victim's 911 call described Luo's repeated contact with the door as "knocking" rather than "scratching" does not make it exculpatory. The resulting damage to the door was well documented, and this report is consistent with other evidence—including video stills showing Luo hitting the door with a metal key—establishing that she was the one who caused it. (ECF Doc. 4 at 54-60, 67-72, 169-171 [RT 153-159, 166-171, 268-270].) Furthermore, this report is consistent with the victim's testimony that he was not initially aware that Luo had damaged his door on the night of the incident, and therefore does not undermine his credibility. (ECF Doc. 4 at 69, 170 [RT 168, 269].)

In sum, Luo has not established entitlement to habeas relief on this *Brady* claim.

## VIII. THE STATE COURT DID NOT CONTRAVENE OR MISAPPLY ESTABLISHED SUPREME COURT AUTHORITY IN DENYING LUO'S CLAIM OF WILLFUL SUPPRESSION OF INADMISSIBLE PRIOR-ACTS EVIDENCE (CLAIM 6)

Luo further argues that the prosecutor "engaged in strategic and willful ignorance" by failing to discover and disclose the victim's inadmissible prior convictions. (*See* ECF Doc. 33 at 46-47.) Like her previous *Brady* claims, this assertion was rejected on direct appeal because she failed to satisfy the requirement

27

1    of demonstrating that any such suppression was prejudicial. (ECF Doc 3 at 6-7.) As

2    the appellate division explained:

3           The victim's criminal record reflects he was convicted more than ten
            years before the trial of misdemeanor violations of contracting without
4           a license and advertising as a contractor without a license. Defendant
            does not identify any relevance of these old convictions to the charges
5           at trial and we cannot discern any.

6

7    (ECF Doc 3 at 7.)

8           This analysis is devoid of error. Misdemeanor convictions, especially those

9    remote in time that do not concern crimes of moral turpitude, are not admissible to

10   impeach a witness under California Law. *See People v. Anderson*, 5 Cal. 5th 372,

11   407 (2018); *People v. Clark*, 52 Cal. 4th 856, 931 (2011); *People v. Wheeler*, 4 Cal.

12   4th 284, 299 (1992). Moreover, under federal law, a criminal defendant "does not

13   have an unfettered right to offer [evidence] that is … inadmissible under standard

14   rules of evidence." *Montana v. Egelhoff*, 518 U.S. 37, 42-43 (1996) (plurality

15   opinion) (the exclusion of evidence does not violate the Due Process Clause unless

16   it offends some "fundamental principle of justice"). Consequently, such convictions

17   are of no conceivable value to the defense and could not have impacted Luo's trial.

18          In arguing the contrary, Luo relies on *Carriger v. Stewart*, 132 F.3d 463, 481

19   (9th Cir. 1997) for the proposition that "[t]he evidence revealed in [the victim's]

20   file need not have been independently admissible to have been material." (*See* ECF

21   Doc. 33 at 46.) For starters,  Luo must show that the state court disregarded or

22   unreasonably applied federal law, as clearly established by United States Supreme

23   Court precedent. *See Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (Circuit

24   precedent does not clearly establish federal law for purposes of § 2254(d)).

25   Regardless, *Carriger* is inapposite because, unlike in that case, the information at

26   issue here is not admissible "to impeach a government witness[.]" *Carriger*, 132

27   F.3d at 481. Additionally, Luo offers no explanation of how defense awareness that

28

the victim had irrelevant, decade-old misdemeanor convictions could have led to

obtaining usable, exculpatory evidence. (*See* ECF Doc. 33 at 46-47.) Where, as

here, "the withheld evidence was not admissible in the proceeding and could not

have led to evidence admissible in the proceeding, its nondisclosure could not affect

the proceeding's outcome." *United States v. Sudikoff*, 36 F. Supp. 2d 1196, 1198

(C.D. Cal. 1999).

### IX.    LUO'S CLAIM THAT THE PROSECUTION USED PERJURED TESTIMONY TO OBTAIN A CONVICTION (CLAIM 7) IS PROCEDURALLY BARRED UNDER *CLARK* AND IS MERITLESS BECAUSE THE TESTIMONY AT ISSUE WAS NOT DEMONSTRABLY FALSE OR MATERIAL

Luo next alleges that the prosecution violated due process and *Napue v.*

*Illinois*, 360 U.S. 264 (1959) by obtaining a conviction based on perjured testimony

from the victim. Specifically, she claims that the September 10, 2018 police field

activity report "clearly refutes" the victim's statements that Luo had threatened to

publish his nude photos between September 5th and September 7th. (ECF Doc. 33 at

47.) As an initial matter, this claim is defaulted. Because the previously-

unexhausted claim was not raised in Luo's first state habeas petition, the superior

court analyzing his second state habeas petition found it procedurally barred as

successive. (Lodgment 2 at 4-5); *See also In re Clark*, 5 Cal. 4th at 767-768; *Carpio*

*v. Hill*, 2023 WL 3829687, at \*3-\*5 (the *Clark* rule is independent and adequate

state procedural bar to federal habeas relief). Luo cannot satisfy the cause and

prejudice requirements to excuse default because this claim is meritless.

"[A] criminal defendant is denied due process of law when a prosecutor either

knowingly presents false evidence or fails to correct the record to reflect the true

facts when unsolicited false evidence is introduced at trial." (*Reis-Campos v.*

*Biter*, 832 F.3d 968, 976 (9th Cir. 2016) (quoting *Hayes v. Brown*, 399 F.3d 972,

984 (9th Cir. 2005) (en banc); *see also Napue*, 360 U.S. at 269. However, under

the standard articulated by the Supreme Court, a *Napue* claim will succeed only if a

claimant satisfies three distinct elements. *Panah v. Chappell*, 935 F.3d 657, 664–

29

65 (9th Cir. 2019).  First, the testimony or evidence in question must have actually been false.  *Reis-Campos*, 832 F.3d at 976; *Jackson v. Brown*, 513 F.3d 1057, 1071-1072 (9th Cir. 2008).  Second, the petitioner must demonstrate that the prosecution knew or should have known that the testimony was actually false.  *Panah*, 935 F.3d at 664; *Hayes*, 399 F.3d at 984.  "And third, because *'Napue* does not create a 'per se rule of reversal,' the testimony or evidence in question must be material."  *Panah*, 935 F.3d at 664 (quoting *Sivak v. Hardison,* 658 F.3d 898, 912 (9th Cir. 2011)).

Here, Luo cannot satisfy any of *Napue*'s requirements. The report referenced by Luo does even directly contradict the victim's testimony that Luo threatened to release his photos on September 7, let alone prove that was actually false. It is well settled that, absent an affirmative showing of intentional falsehood in sworn testimony, mere "inconsistency is not tantamount to perjury[.]"  *United States v. Flake,* 746 F.2d 535, 539 (9th Cir.1984), *overruled on other grounds by United States v. Uchimura,* 125 F.3d 1282, 1286 (9th Cir.1997); *see also United States v. Williams*, 547 F.3d 1187, 1202 n.13 (9th Cir. 2008); *Foreman v. Lewis*, 875 F.2d 318 (9th Cir. 1989) ("We have previously recognized the distinction between perjury and inconsistencies in a witness's testimony.").  Similarly, the existence of contradicting evidence or presentation of testimony which is at odds with other evidence in the record are also insufficient to prove a *Napue* violation.  *See Henry v. Ryan*, 720 F.3d 1073, 1084 (9th Cir. 2013); *United States v. Necoechea,* 986 F.2d 1273, 1281 (9th Cir.1993); *accord Tapia v. Tansy*, 926 F.2d 1554, 1563 (10th Cir. 1991) ("Contradictions and changes in a witness's testimony alone do not constitute perjury").

For the same reason, this police report cannot show that the prosecutor knowingly presented perjured testimony from the victim. *See Henry*, 720 F.3d at 1084 (a *Napue* claim requires witness testimony to be knowingly false, not merely inaccurate or rebuttable).  Mere "[c]ontradictions and changes in a witness's

1  testimony . . . do not create an inference, let alone prove, that the prosecution

2  knowingly presented perjured testimony." *Tapia*, 926 F.2d at 1563.  Rather, the

3  petitioner bears the burden to independently establish not only that the witness lied,

4  but that the prosecution knew or should have known that the complained-of

5  testimony was actually false.  *See Panah*, 935 F.3d at 664; *Hayes*, 399 F.3d at 984;

6  *Zuno-Arce*, 339 F.3d at 889. Nothing about the fact that the victim reported Luo to

7  police on September 10th, undermines his testimony that Luo made threatening

8  statements to him three days earlier. This is especially true in light of the victim's

9  testimony that he unsuccessfully attempted to go to the police station on the 7th and,

10  after finding it closed, returned the following Monday. (ECF Doc. 4 at 51-52 [RT

11  150-151].) Luo has offered nothing to show the prosecutor knew of and presented

12  any false evidence.

13       Finally*, "*[e]ven if we assume that [Luo] sufficiently alleged that [the victim]

14  knowingly perjured himself and the prosecutor suborned such perjury, his claim

15  still fails on materiality grounds[.]" *Reis-Campos*, 832 F.3d at 977.  In order to

16  demonstrate materiality under *Napue*, a petitioner must show a "reasonable

17  likelihood that the false testimony could have affected the judgment of the jury."

18  *Hayes*, 399 F.3d at 985.  As fully detailed in the response to claim 4, the September

19  10th field activity report was of negligible value and could not have meaningfully

20  affected the outcome of Luo's trial. Furthermore, regardless of whether Luo began

21  threatening to release the victim's private photos on September 7th, abundant

22  evidence, including Luo's own adoptive admissions, showed that she did in fact

23  subsequently distribute nude photos of the victim against his wishes and with intent

24  to cause him serious emotional distress. (ECF Doc. 4 at 20, 33-34, 45-50, 54, 86-

25  88, 96, 104-105, 166-167, 170, 174-175  [RT 119, 132-133, 144-149, 153, 185-187,

26  195, 203-204, 265-266, 269, 273-274].)

27       For the foregoing reasons, Luo *Napue* claim is meritless.

28

**X.    LUO'S CHALLENGE TO THE REMARK THAT IT WAS THE "DARK OF THE NIGHT" WHEN SHE DAMAGED THE VICTIM'S DOOR (CLAIM 8) IS PROCEDURALLY BARRED UNDER *CLARK* AND/OR *DIXON*, INACCURATELY ATTRIBUTES TRIAL TESTIMONY TO THE VICTIM, AND INCORRECTLY CLAIMS THAT NON-EVIDENTIARY ATTORNEY ARGUMENT WAS PERJURY**

Luo next objects to the prosecutor's comment concerning the victim's statement that he did not see her damage his door on the night it happened: "in the dark of the night, no, he might not have seen when she was doing that. At some point, he's inside; at some point, she's outside. He admits that no, he didn't see it while it was happening." (ECF Doc. 47-48; ECF Doc. 4 at 193 [RT 292].) She further faults her trial counsel for failing to "expose [the victim's] perjured testimony" by challenging it with evidence that there was a light bulb in front of the victim's door. (ECF Doc. 47-48.)

First off, because this previously-unexhausted claim was not raised in Luo's first state habeas petition, the superior court analyzing her second state habeas petition found it procedurally barred as successive. (Lodgment 2 at 4-5); *See also In re Clark*, 5 Cal. 4th at 767-768; *Carpio v. Hill*, 2023 WL 3829687, at *3-*5 (the *Clark* rule is independent and adequate state procedural bar to federal habeas relief). Second, to the extent that this Court interprets this argument as a claim of prosecutorial misconduct, the state court found the claim barred under *Dixon* for failure to raise it on direct appeal. (Lodgment 2 at 4); *see also Dixon*, 41 Cal. 2d at 759; *Johnson v. Lee*, 578 U.S. at 608-609. Luo cannot show prejudice from the procedural bars because her argument is meritless. For the same reason, she cannot demonstrate cause by asserting ineffective assistance of counsel (as will be fully discussed in response to claims 15 and 17). *See Premo v. Moore*, 562 U.S. 115, 124 (2011) (state court reasonably determined that counsel did not provide ineffective representation under *Strickland* for declining to make a futile motion); *accord People v. McCutcheon*, 187 Cal. App. 3d 552, 558-559 (1986) ("Defense counsel

1   need not make futile objections or motions merely to create a record impregnable to

2   attack for claimed inadequacy of counsel").

3        The victim testified merely that he did not see the damage Luo had caused to

4   his door on the night of September 18th until the next day. (ECF Doc. 4 at 54-55,

5   59, 66-71 [RT 153-154, 158, 165-170.) The argument that video showed a light

6   bulb above the door does not prove that this statement was false, or that the

7   prosecution knowingly presented perjured testimony. *Henry*, 720 F.3d at 1084 (a

8   *Napue* claim requires witness testimony to be knowingly false, not merely

9   inaccurate or rebuttable); *Tapia*, 926 F.2d at 1563.  As for the prosecutor's remarks

10  during closing argument, these cannot form the basis of a perjury claim because

11  under California Law, "nothing the attorneys say is evidence." *See* Judicial Council

12  of California, Criminal Jury Instruction No. 222; *cf. United States v. Dunnigan*, 507

13  U.S. 87, 94 (1993) (under federal definition, "[a] witness testifying under oath or

14  affirmation" commits perjury if he or she "gives false testimony concerning a

15  material matter with the willful intent to provide false testimony, rather than as a

16  result of confusion, mistake, or faulty memory."). Furthermore, the complained-of

17  comments did not amount to prosecutor error.

18       Where a petitioner raises a constitutional claim of prosecutorial error, habeas

19  relief is warranted only if the conduct was so egregious as to have infected the

20  entire trial, rendering it fundamentally unfair.  *Darden v. Wainwright*, 477 U.S.

21  168, 181 (1986); *see Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005).  The

22  standard of review is the narrow one of due process, and not the broad exercise of

23  supervisory power.  *Darden*, 477 U.S. at 181; *see Donnelly v. DeChristoforo*, 416

24  U.S. 637, 643 (1974).  Habeas relief may not be granted merely because the federal

25  court might disapprove of the prosecutor's behavior.  *Sechrest v. Ignacio*, 549 F.3d

26  789, 807 (9th Cir. 2008).  Rather, "the touchstone of due process analysis in cases

27  of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of

28  the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

33

1   Here, the prosecutor's argument constituted fair comment on the evidence, and

2   speculation that the "dark of the night" may have helped explain why the victim did

3   not initially notice the damage Luo has caused to his property did not amount

4   misconduct. *See, e.g, People v. Seumanu*, 61 Cal. 4th 1293, 1330, (2015)

5   (Prosecutor's "argument may be strongly worded and vigorous so long as it fairly

6   comments on the evidence admitted at trial or asks the jury to draw reasonable

7   inferences and deductions from that evidence.").

8   And even if the prosecutor  erred during argument, the court cured it by

9   instructing that "[n]othing that the attorneys say is evidence. In their opening and

10  closing arguments, the attorneys discuss the case, their remarks are not evidence"

11  and informed the jury that it was to decide the case "only on the evidence that has

12  been presented to you in this trial." (ECF Doc. 3 at 137, 142 [CT 124, 129]); *accord*

13  *Mezzles v. Katavich*, 731 F. App'x 639, 642 (9th Cir. 2018).  The jury is presumed

14  to follow the court's instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000);

15  *Richardson v. Marsh,* 481 U.S. 200, 211 (1987).

16  All told, Luo has failed to demonstrate entitlement to habeas relief based on

17  the victim's testimony regarding when he discovered Luo had vandalized his door,

18  or from the prosecution's discussion of that testimony during argument.

19  **XI.   LUO'S CLAIM THE PROSECUTOR UNLAWFULLY USED COMPELLED**
        **TESTIMONY AND MISREPRESENTED HER STATEMENTS (CLAIM 9) IS**
20      **PROCEDURALLY BARRED BY THE CONTEMPORANEOUS OBJECTION**
        **RULE AND IS MERITLESS; LUO WAS NOT PREVENTED FROM**
21      **ASSERTING HER PRIVILEGE AGAINST SELF INCRIMINATION AND THE**
        **PROSECUTOR'S ARGUMENT AMOUNTED TO FAIR COMMENT ON THE**
22      **EVIDENCE**

23  Luo's ninth claim is twofold. She first alleges that the prosecutor was not

24  allowed to introduce information gleaned from her prior civil testimony, which she

25  alleges was compelled and involuntary. (ECF Doc 33 at 48- 51.) She further

26  complains that the prosecutor misquoted her testimony in the course of his

27  argument. (ECF Doc 33 at 51-52.)

28

This claim is not cognizable on habeas because the state court determined on direct appeal that Luo forfeited it by failing to lodge a contemporaneous objection in the trial court. (ECF Doc. 3 at 7.) That failure is an independent an adequate procedural bar to the claim. *Wainwright v. Sykes,* 433 U.S. at 87; *Vansickel v. White,* 166 F.3d at 957-958. In addition, Luo has failed to make the requisite showings of cause and prejudice to justify relief from procedural default. Luo asserts that trial counsel rendered ineffective assistance by failing to object to the alleged errors identified in the instant claim. (ECF Doc. 33 at 59.) As will be fully detailed in the response to claim 14 *post*, Luo failed to show she received ineffective assistance.  For the same reasons, she cannot establish cause to excuse the procedural bar. *Davila,* 137 S. Ct. at 2065 (Attorney error that does not violate the Constitution is attributed to the prisoner.)

Luo also cannot demonstrate "actual prejudice as a result of the alleged violation of federal law," because her claim could not succeed.  *Coleman*, 501 U.S. at 750.

Under the Fifth and Fourteenth Amendments, a person may not be compelled to give self-incriminating testimony. This privilege extends to any proceeding, civil or criminal, before administrative, legislative or judicial bodies, when that person's answers may tend to incriminate him in future criminal proceedings. *See United States v. Balsys*, 524 U.S. 666, 672 (1998);  *Lefkowitz v. Cunningham*, 431 US 801, 804-805 (1977); *Kastigar v. United States*, 406 U.S. 441, 444-445 (1972). Crucially, however, the legal determination of whether a witness may exercise this privilege can only be made after the witness has affirmatively asserted the privilege. *Rogers v. United States*, 340 U.S. 367, 370 (1951) ("If petitioner desired the protection of the privilege against self-incrimination, she was required to claim it"); *accord People v. Ford*, 45 Cal. 3d 431, 441 (1988). Conversely, a witness's decision to make incriminating admissions waives the privilege against self-incrimination. *Rogers*, 340 U.S. at 374. Indeed, witnesses outside the criminal

35

1    context often have unique incentives to tactically waive the privilege, since "the

2    Fifth Amendment does not forbid adverse inferences against parties to civil actions

3    when they refuse to testify in response to probative evidence offered against them."

4    *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); accord *United States v. Solano-*

5    *Godines*, 120 F.3d 957, 962 (9th Cir. 1997).

6            Here, Luo does not contend that she attempted to invoke her constitutional

7    privilege against self-incrimination and was prevented from doing so. (ECF Doc.

8    33 at 49.) Instead, she insists that she had "no legal mechanism available to

9    avoid testifying in a family court proceeding" because she could not afford counsel.

10   (ECF Doc. 33 at 49, 51 ("The introduction of Petitioner's prior testimony in a civil

11   proceeding when she was not represented by counsel violated her Fifth, Sixth, and

12   Fourteenth Amendments rights.").) This reasoning is flawed because she provides

13   no explanation as to how the absence of personal counsel prevented her from

14   asserting her available constitutional privilege or declining to offer incriminating

15   admissions. Furthermore, Luo did not possess a federal right to counsel at the civil

16   proceeding. Under the Sixth Amendment, entitlement to counsel is "offense

17   specific and "does not attach until a prosecution is commenced;" i.e. after an

18   adversarial proceeding is initiated through formal charging. *McNeil v. Wisconsin*,

19   501 U.S. 171, 175 (1991); *United States v. Charley*, 396 F.3d 1074, 1082 (9th Cir.

20   2005). The related  but distinct *Miranda* right to counsel under the Fifth

21   Amendment must affirmatively be invoked, and vests only in the context of

22   custodial interrogation by law enforcement. Luo's October 19, 2018, family court

23   proceeding was not part of a police investigation into a particular crime, and

24   occurred before any prosecution was initiated. (*See* ECF Doc. 3 at 6, 14-16.)

25   Consequently, Luo had no right to appointed counsel, and the fact that she did not

26   retain private counsel did not in any way impede her ability to invoke her privilege

27   against self-incrimination—meaning her implied waiver in proffering incriminating

28   testimony was not compelled.

1    Regardless, Luo cannot show prejudice from any purported error in

2    referencing her prior testimony. *See Brecht v. Abrahamson*, 507 U.S. 619, 637

3    (1993); *United States v. Hasting*, 461 U.S. 499, 510–512 (1983) (finding no

4    prejudice from constitutional error "In the face of this overwhelming evidence of

5    guilt"). Luo's guilt of the charged offenses was independently established through

6    direct testimony, documentary evidence of Luo's incriminating texts and online

7    activity, as well as recorded adoptive admissions made voluntarily by Luo to the

8    victim. (ECF Doc. 3 at 4-6; ECF Doc 4 at 20, 36-54, 59-66, 80-96, 166-170, 174-

9    175  [RT 119, 135-153, 158-165, 179-195, 265-269, 273-274].) As such, habeas

10   relief is unwarranted on this claim.

11   Luo's accusation that the prosecutor misrepresented her testimony (ECF Doc.

12   33 at 51-52) fares no better. As noted above, California law has long held that "A

13   criminal prosecutor has much latitude when making a closing argument. [His]

14   argument may be strongly worded and vigorous so long as it fairly comments on

15   the evidence admitted at trial or asks the jury to draw reasonable inferences and

16   deductions from that evidence." *Seumanu*, 61 Cal. 4th at 1330; *cf. People v.*

17   *Sandoval*, 4 Cal. 4th 155, 184 (1992) (a defendant suffers no prejudice from

18   prosecutor comments on the evidence that are "clearly recognizable as an

19   advocate's hyperbole."). This precedent mirrors the guidance of federal case law

20   regarding the permissibility of zealous but fair advocacy on the part of the

21   prosecutor. See, e.g., *United States v. McChristian*, 47 F.3d 1499, 1506 (9th Cir.

22   1995). Under this standard, Luo cannot show that any minor discrepancies between

23   her testimony and the prosecutor's discussion of those statements amounts to

24   misconduct warranting reversal of her convictions. Luo offers no authority

25   suggesting that, when discussing the evidence, a prosecutor is required to quote

26   testimony verbatim or provide what a defendant considers full context of her

27   attributed statements. To be sure, a prosecutor is allowed to highlight and focus on

28   those portions of evidence most incriminating to the defendant, as was done here.

37

1    But the prosecutor did not exceed the bounds of his wide latitude because his

2    remarks summarizing the nature of Luo's prior admissions find support in the trial

3    evidence, and amounted to fair comment on the substance of her statements.  (*See*

4    ECF Doc. 4 at 74-80, 168, 175-176 [RT 173-179, 267, 274-275].)

5         In any event, even if the prosecutor's comments strayed into impropriety, it

6    cannot justify federal relief because they did not infect the entire trial, rendering it

7    fundamentally unfair.  *Darden v. Wainwright*, 477 U.S. at 181; *Smith v. Phillips*,

8    455 U.S. at 219 ( "the touchstone of due process analysis in cases of alleged

9    prosecutorial misconduct is the fairness of the trial, not the culpability of the

10   prosecutor.") Any inappropriate remarks were "minimal in comparison with the

11   weight of the evidence presented against" Luo and cured by court instruction that

12   "[n]othing that the attorneys say is evidence" that could be used to convict her. (*See*

13   ECF Doc. 3 at 137, 142 [CT 124, 129]); *Hovey v. Ayers*, 458 F.3d 892, 912 (9th

14   Cir. 2006); *Mezzles v. Katavich*, 731 F. App'x at 642.).

15   **XII.  THE STATE COURT REASONABLY APPLIED FEDERAL LAW AS
16   ARTICULATED BY UNITED STATES SUPREME COURT PRECEDENT, IN
     DENYING LUO'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM FOR
17   ALLEGED FAILURE TO INVESTIGATE AND PRESENT VICTIM
     IMPEACHMENT EVIDENCE (CLAIM 10)**

18        Luo next asserts that her trial counsel rendered constitutionally ineffective

19   assistance by failing to investigate information she claimed would undermine the

20   victim's credibility; namely: that the victim was previously subject to deportation;

21   his prior arrest  for impersonation; other prior criminal convictions establishing

22   dishonesty; the victim's dishonesty to Luo about his marital status; information

23   contradicting his claims about his company and Yelp page. (ECF Doc. 33 at  52-

24   53.) Luo further faults counsel for failing to effectively cross-examine the victim

25   regarding the damage to his door, when Luo threatened to expose his nude

26   photographs, as well as failing to impeach him with his infidelity and nudism. (ECF

27   Doc. 33 at 53-56.) None of the contentions in this claim warrant relief, as the state

28

1  courts reasonably applied established federal law in rejecting them through both

2  direct appeal and in Luo's first state habeas petition.

3      In order to establish that counsel was ineffective, Luo bears the burden of

4  showing that counsel's performance fell below an objective standard of

5  reasonableness under prevailing professional norms, and that there is a reasonable

6  probability the result of the proceeding would have been different. *Strickland v.*

7  *Washington*, 466 U.S. 668, 687-688 (1984). In considering the first prong of the

8  test, the reviewing court "must indulge a strong presumption that counsel's conduct

9  falls within the wide range of reasonable professional assistance." *Id*. at 689. As to

10  the second prong, a "reasonable probability" is "a probability sufficient to

11  undermine confidence in the outcome." *Id*. at 694.

12      Under § 2254(d), "[t]he pivotal question is whether the state court's

13  application of the *Strickland* standard was unreasonable. This is different from

14  asking whether defense counsel's performance fell below *Strickland's* standard….

15  A state court must be granted a deference and latitude that are not in operation

16  when the case involves review under the *Strickland* standard itself." *Harrington v.*

17  *Richter*, 562 U.S. 86, 101 (2011). Thus, a federal habeas court must use "a 'doubly

18  deferential' standard of review that gives both the state court and the defense

19  attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013; see *Dunn*

20  *v. Reeves*, 141 S. Ct. 2405, 2411 (2021) (per curiam) (federal court may grant relief

21  only if "every 'fairminded juris[t]' would agree that every reasonable lawyer would

22  have made a different decision") (emphasis in original).

23      On direct appeal, the appellate division rejected Luo's claims regarding

24  counsel's alleged failure to properly investigate and discover materials to impeach

25  the victim and aid the defense. Specifically, the court found Luo's argument

26  meritless because her failure to investigate allegation was based on her declaration

27  outside the trial record and "because [Luo] has not shown the record contains

28  'affirmative evidence that counsel had no "rational tactical purpose" for an action

39

or omission.'(*People v. Mickel* (2016) 2 Ca1.5th 181,198)." (ECF Doc. 3 at 8). This holding constituted a reasonable application of federal law, especially considering the posture of an IAC claim on direct appeal. (*Burt v. Titlow*, 571 U.S. at 15; *see also United States v. Hanoum,* 33 F.3d 1128, 1131 (9th Cir.1994) (Appellate courts "usually decline[] to reach ineffectiveness challenges on direct appeal, because the claim cannot be advanced without development of facts outside the record.").

In denying Luo's first state habeas petition, the superior court's evaluation of the arguments raised in this claim was equally reasonable. It is evident from the record that the court identified and understood the applicable federal law, as established by *Strickland* and its progeny:

> "To establish a claim of incompetence of counsel, a defendant must establish both that counsel's representation fell below an objective standard of reasonableness and that it is reasonably probable that, but for counsel's error, the result of the proceeding would have been different. An ineffective assistance of counsel claim fails on an insufficient showing of either element." (*People v. Cua*  (2011) 191 Cal.App.4th 582, 606.) "Evaluation of a claim of deficient representation is deferential to counsel; the court must, if possible, indulge the presumption that counsel's conduct 'falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstance, the challenged action "might be considered sound trial strategy.'"[Citation.] 'A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'[Citation.]... Stated differently, the question is not what the 'best lawyers would have done,' nor 'even what most good lawyers would have done,' but simply whether 'some reasonable lawyer' could have acted, in the circumstances, as defense counsel acted in the case at bar. [Citation.]" (*People v. Jones* (2010) 186 Caf.App.4th 216, 235.) For a failure to investigate, "'the petitioner must establish "prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel. [Citation.]... Prejudice is established if there is a reasonable probability that a more favorable outcome would have resulted had the evidence been presented, i.e., a probability

1
2
3
4
5
6
7
8
9
10

sufficient to undermine confidence in the outcome. [Citations.] The
incompetence must have resulted in a fundamentally unfair proceeding
or an unreliable  verdict. [Citation.]' (Citation.]" (*In re Cox* (2003) 30
Cal.4th 974, 1016.) "[T]here is no reason for a court deciding an
ineffective assistance claim to approach the inquiry in the same order
or even to address both components of the inquiry if the defendant
makes an insufficient showing on one. In particular, a court need not
determine whether counsel's performance was deficient before
examining the prejudice suffered by the defendant as a result of the
alleged deficiencies. The object of an ineffectiveness claim is not to
grade counsel's performance. If it is easier to dispose of an ineffective
assistance claim on the ground of lack of sufficient prejudice, which
we expect will often be so, that course should be followed."
(*Strickland v. Washington* (1984) 466 U.S. 668, 697.)

11 (ECF Doc. 6 at 19-20.) Furthermore, Luo has failed to show that the rejection

12 of this claim was contrary to, or any unreasonable application of, any Supreme

13 Court precedent.

14 Regarding counsel's alleged failure to investigate and utilize various

15 misdemeanor and non-criminal character attacks on the victim's credibility, Luo

16 offers no explanation of how such information was even admissible for

17 impeachment under state law, let alone how it could have undermined the victim's

18 account of events related to her convictions. Cf. *Moses v. Payne* (9th Cir. 2009) 555

19 F.3d 742, 757 (*quoting United States v. Scheffer,* 523 U.S. 303, 308 (1998)) ("'[a]

20 defendant's right to present relevant evidence is not unlimited, but rather is subject

21 to reasonable restrictions,' such as evidentiary and procedural rules."). As for Luo's

22 complaints regarding the substance of counsel's cross-examination, it is well settled

23 that "counsel has wide latitude in deciding how best to represent a client, and

24 deference to counsel's tactical decisions … is particularly important because of the

25 broad range of legitimate defense strategy." *Yarborough v. Gentry* 540 U.S. 1, 5-6.

26 (2003); *see also McCoy v. Louisiana*, 138 S. Ct. 1500, 1508 (2018) (counsel retains

27 broad professional discretion and control in selecting the defense strategy and

28

41

tactics). As such, defense strategy is the "lawyer's province," and dissatisfaction by a defendant in hindsight does not establish that counsel rendered deficient performance. *McCoy*, 138 S. Ct. at 1508; *Bemore v. Chappell*, 788 F.3d 1151, 1163 (9th Cir. 2015) ("[A] tactical decision may constitute constitutionally adequate representation even if, in hindsight, a different defense might have fared better.").

Finally, the Superior Court was also entitled to deny habeas relief on the allegations in this claim because Luo did not "demonstrate that she has personal knowledge of what investigation counsel did or did not do" and failed "to demonstrate that the victim was inadequately cross-examined" because her "conclusory allegations" did not "include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts…." (ECF Doc. 6 at 20; ECF Doc. 3 at 208 [RT 11] (Luo stating that she had "no clue whether her counsel adequately investigated the facts and the law."); *see also Burt v. Titlow*, 571 U.S. 12, 22–23 (2013) (*quoting Strickland*, 466 U.S. at 687, 689) ("The burden to 'show that counsel's performance was deficient' rests squarely on the defendant," and "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.' "); *cf.* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge").

In sum, because Luo fails to show that these decisions contravene or misapply clearly established federal law, she is not entitled to relief under AEDPA.

**XIII.  THE STATE COURT REASONABLY APPLIED UNITED STATES SUPREME COURT AUTHORITY IN REJECTING LUO'S CLAIM THAT COUNSEL PROVIDED INEFFECTIVE ASSISTANCE BY NOT PRESENTING EVIDENCE THAT THE VICTIM WAS A NUDIST AND NEEDED TO PAY TO REMOVE HIS PRIVATE PHOTOS FROM THE INTERNET (CLAIM 11)**

Luo challenges defense counsel's tactics in not telling the jury that the victim was a nudist or presenting an email showing that the victim would need to pay to remove nude photos posted by the victim—arguing that these decisions amounted

1   to ineffective assistance. (ECF Doc. 33 at 56-57.) These assertions are unavailing.

2   As with her other ineffective assistance claims, the state court rejected Luo's

3   argument because she failed to demonstrate from the trial record that counsel had

4   no "rational tactical purpose" for the complained-of decisions. (ECF Doc. 3 at 8.)

5   Luo has not shown how the state court's rejection of her claim was contrary to, or

6   based on an unreasonable application of *Strickland*.

7       As previously explained "counsel has wide latitude in deciding how best to

8   represent a client" and decisions of specific legal strategy and tactics fall within the

9   province of the lawyer, not the client. *Yarborough*, 540 U.S. at 5-6.; *McCoy*, 138 S.

10  Ct. at 1508. To show constitutional error in this context, a petitioner bears the

11  burden of rebutting the "presumption that [an attorney] was conscious of his duties

12  to his clients and that he sought conscientiously to discharge those duties." *United*

13  *States v. Cronic*, 466 U.S. 648, 658, n. 23 (1984). Most importantly, there is no

14  obligation for a defense attorney to present every conceivable defense argument or

15  fact which a defendant believes is favorable to them. *Mickey v. Ayers*, 606 F.3d

16  1223, 1238 (9th Cir. 2010) ("Counsel need not present a defense just because it was

17  viable."). Indeed, "a tactical decision may constitute constitutionally adequate

18  representation even if, in hindsight, a different defense might have fared better."

19  *Bemore v. Chappell*, 788 F.3d at 1163.

20      Here, defense counsel zealously challenged the victim's credibility during

21  closing argument. (ECF Doc. 4 at 180, 186-187 [RT 279, 285-286].) Luo provides

22  no compelling reasons why counsel was obligated to inform the jury that the victim

23  was a "nudist," or why such information had a reasonable probability of altering the

24  outcome of her trial. As will be fully discussed in the response to claim 21, the

25  victim's general comfort level with nudity does nothing to undermine the evidence

26  that he possessed a reasonable expectation that the particular images he shared with

27  Luo would remain private. Cal. Pen. Code § 647(j)(4)(A). Similarly, as will be

28  detailed in response to claim 22, the evidence established that the victim suffered

1   emotional distress from Luo's widespread distribution of his nude photos across the

2   internet, including to his family and business clients, and the fact that he had gone

3   to a nude beach did not rebut or otherwise cast doubt on this evidence. *See*

4   *Strickland*, 466 U.S. at 694 (prejudice requires that the counsel's errors "undermine

5   confidence in the outcome.").

6       Luo also provides no persuasive argument on the relevance of evidence that

7   the victim would have to pay to have his private photos removed from the internet.

8   Specifically, she provides no logical explanation of how evidence that she caused

9   the victim financial harm by unlawfully distributing nude photographs of him

10  would prove that he lied about the damage that Luo inflicted while striking his door

11  with a metal key. Consequently, she fails to show that denial of habeas relief in the

12  state courts constituted a violation of federal law.

13  **XIV. THE STATE COURT'S DENIAL OF LUO'S CLAIM THAT COUNSEL
14  RENDERED INEFFECTIVE ASSISTANCE BY NOT REQUESTING A JURY
    INSTRUCTION ON THE CONCEPT OF A DATING RELATIONSHIP (CLAIM
15  12) WAS NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF
    ESTABLISHED FEDERAL LAW**

16      Luo further asserts that her trial counsel provided ineffective assistance by

17  failing to request an instruction on a "dating relationship," which she purports

18  would have shown the restraining orders were unlawful and that the victim had no

19  expectation of privacy[12] in the nude photos Luo posted. (ECF do. 33 at 57-58.) This

20  claim does not warrant habeas relief, and was properly rejected by the state court on

21  direct appeal. (ECF Doc. 3 at 8)

22  _____

23      [12] Luo appears to confuse the requirements for issuing a DVRO and the
    elements required for conviction of unlawfully distributing private images. The
24  "dating relationship" requirement applies only to issuance of a restraining order.
    Cal. Fam. Code §§ 6211 (c), 6301(a). On the other hand, California Penal Code
25  section 647(j)(4)(A) prohibits dissemination of an intimate image "under
    circumstances in which the persons agree or understand that the image shall remain
26  private." Luo does not articulate how instructing the jurors on the requirements of
27  the restraining order would lead them to conclude that the victim lacked a privacy
    interest in the images she posted online.
28

44

First,  counsel would have had no basis for requesting an instruction on a

"dating relationship" because the parties had already stipulated to the lawfulness of

the restraining orders and thus the jury had no reason to evaluate that issue. (ECF

Doc. 4 at 118-120 [RT 217-219]); see also  *Farwell*, 5 Cal. 5th at 300 (party

stipulation "conclusively established the stipulated facts as true and completely

relieved the prosecution of its burden of proof" in criminal trial). Moreover, any

error in declining to request Luo's now-desired instruction could not have affected

the outcome of her trial. As already explained in response to claim 2, the record

established that Luo's relationship to the victim met California's statutory

definition of a dating relationship.

For these reasons, Luo's argument could not have met the requirements of

*Strickland* and she cannot show a violation of federal law in the state court's

decision.

## XV. THE STATE COURT'S DETERMINATION THAT LUO FAILED TO SHOW THAT COUNSEL'S STIPULATION REGARDING THE PROTECTIVE ORDERS HAD NO TACTICAL PURPOSE (CLAIM 13) REASONABLY APPLIED CLEARLY ESTABLISHED FEDERAL LAW

Luo claims that defense counsel rendered further ineffective assistance by

stipulating to the lawfulness of the temporary restraining order and domestic

violence restraining order—allegedly without her consent. (ECF do. 33 at 58-59.)

The state court rejected this claim on direct appeal because Luo  had failed to show

from the record "that counsel had no rational tactical purpose'" for the decision to

enter into the stipulation. (ECF Doc. 3 at 8.) Luo has failed to show how this

conclusion was contrary to or based on an unreasonable application of *Strickland*.

The transcript of pretrial proceedings reveals that counsel was concerned

about the prejudice Luo would suffer as to the other charges from admission of the

restraining orders themselves, and the decision to enter a more limited stipulation

regarding their validity and terms appears to be a calculated strategy to preclude

admission of these exhibits. (ECF Doc. 3 at 233- 238 [RT 36-41]; *see also*

*Yarborough*, 540 U.S. at 5-6 ("counsel has wide latitude in deciding how best to represent a client," within the "broad range of legitimate defense strategy.").

Additionally, the reasonableness of counsel's decision not to further contest the "dating relationship" element of the DVRO is better understood when viewed in the context of the pretrial proceedings. In his motions in limine, defense counsel moved to exclude surreptitiously recorded video of Luo captured by the victim. (ECF Doc. 3 at 94-95 [CT 81-82], 249 [RT 51-52] The prosecution argued that the general prohibition on secret recordings did not apply to the video due to an exception articulated in California Penal Code 633.5; namely, that the recording involved the commission of domestic violence. (ECF Doc. 3 at 249-250 [RT 52-53].) In contesting this issue, defense counsel made the following argument:

> California Criminal Code Section 13700 defines domestic violence between former spouses, spouses cohabitant, or people in a dating relationship. And here the evidence going to show that Ms. Luo and [the victim] were not in a dating relationship. They knew each other approximately three weeks. Saw each other socially on two occasions … And I don't believe their three-week period of knowing each other and two social, you know, gathering is considered a dating relationship.

(ECF Doc. 3 at 250 [RT 53].) After considering the requirements of the statute and the facts concerning the duration, frequency, and nature of Luo's association with the victim, the trial court stated: "Okay. Well, with respect to the issue of whether it's a dating relationship or not based on what I've heard so far, I think it does meet the definition of a dating relationship" and thus ruled that the secretly recorded video fell within the section 633.5 exception. (ECF Doc. 3 at 253 [RT 56].) Given the court's explanation of the law and ruling on this issue, it was not unreasonable for counsel to conclude that any further challenge to that element would have been futile. *See Premo v. Moore*, 562 U.S. 115, 124 (2011) (state court reasonably determined that counsel did not provide ineffective representation under *Strickland*

1    for declining to make a futile motion); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir.
2    1996) ("the failure to take a futile action can never be deficient performance").

3    Finally, as fully explained in the argument responding to claim 2, the record
4    established that Luo's relationship with the victim met California's statutory
5    definition of a dating relationship for purposes of the Domestic Violence
6    Prevention Act. For this reason, Luo cannot show a reasonable probability in a
7    more favorable outcome but for counsel's alleged error in entering into the
8    complained-of stipulation.

9    **XVI. THE STATE COURT'S DENIAL OF LUO'S ARGUMENT THAT COUNSEL WAS INEFFECTIVE FOR ALLEGEDLY NOT OBJECTING TO THE USE OF HER PRIOR "COMPELLED" TESTIMONY (CLAIM 14) DID NOT CONTRAVENE OR MISAPPLY FEDERAL LAW ARTICULATED BY THE SUPREME COURT**
10
11

12    Luo alleges that her counsel provided prejudicially deficient performance by
13    failing to object to the use of her "compelled" testimony offered in the prior family
14    court proceeding. (ECF Doc. 33 at 59.) She is incorrect.

15    In rejecting this argument on direct appeal, the state court explained that
16    "Counsel did object, albeit unsuccessfully, to the introduction of [Luo's] testimony
17    at the DVRO hearing." (ECF Doc. 3 at 8.) The record confirms the accuracy of this
18    analysis, as defense counsel moved through the motion in limine to exclude all
19    statements made by Luo in all the civil restraining order hearings. (ECF Doc. 3 at
20    93 [CT 80].) Put simply, Luo cannot show deficient performance for failing to raise
21    an objection that counsel in fact did raise, and she cannot show the possibility of a
22    more favorable outcome because the trial court already considered and overruled
23    the objection. In any event, the objection at issue was substantively meritless
24    because, as fully analyzed in response to claim 9, Luo's prior testimony was not
25    compelled and she was not prevented from invoking her privilege against self-
26    incrimination. *Cf. Rupe v. Wood*, 93 F.3d at 1445 (failure to take futile action is not
27    deficient performance).

28

XVII. **THE STATE COURT REASONABLY APPLIED ESTABLISHED FEDERAL
LAW IN REJECTING LUO'S ARGUMENT THAT COUNSEL RENDERED
INEFFECTIVE ASSISTANCE BY FAILING TO COUNTER THE
PROSECUTION'S COMMENT THAT IT WAS DARK OUTSIDE (CLAIM 15)**

Luo contends that counsel provided ineffective assistance in failing to counter the claim that it was dark by exposing the fact that there was a light bulb near the door she damaged. (ECF Doc. 33 at 59-60.) As previously explained, the victim's trial testimony stated only that he did not see the damage Luo caused to the door until the day after she trespassed on his property and was asked to leave by police. (ECF Doc. 4 at 54-55, 59, 66-71 [RT 153-154, 158, 165-170.) Thus, contrary to Luo's assertions, there was no "lie" for counsel to "expose[] to the jury" with evidence that there was light in the doorway on the night she showed up at the victim's house. (*See* ECF Doc. 33 at 59.)

Instead, it was the prosecutor who argued during closing that the victim's initial oversight of Luo's vandalism was understandable in the "dark of the night." (ECF Doc. 4 at 193 [RT 292].) To the extent that Luo's claim may be interpreted as faulting counsel for failing to challenge or rebut this remark, it is equally meritless. "[D]eference to counsel's tactical decisions in his closing presentation is particularly important" and judicial review is doubly deferential when it is conducted through the lens of federal habeas. *Yarborough*, 540 U.S. at 6. Here, counsel could have declined to object or argue against the prosecutor's remark because, as explained in response to claim 8, it amounted to fair comment on the evidence. *Premo*, 562 U.S. at 124 (declining to make futile request is not ineffective assistance); *Rupe v. Wood*, 93 F.3d at 1445. And even if counsel found fault with the prosecutor's comment, there are valid reasons he may have decided not to engage it. "From a strategic perspective, for example, many trial lawyers refrain from objecting during closing argument to all but the most egregious misstatements by opposing counsel on the theory that the jury may construe their objections to be a sign of desperation or hyper-technicality." *United States v. Molina*, 934 F.2d

48

1440, 1448 (9th Cir. 1991). Alternatively, counsel may have felt no need to highlight the prosecutor's theory because he was aware that the court was instructing the jury that under California Law, "nothing the attorneys say is evidence" during closing argument. (ECF Doc. 3 at 137, 142 [CT 124, 129]); *see* Judicial Council of California, Criminal Jury Instruction No. 222.

Regardless, any shortcoming in counsel's performance was harmless because the mere fact that there was a light bulb by the door does not prove that Luo did not vandalize the victim's door and does nothing to contradict or undermine the victim's statement that he did not notice the damage to his property on the night of September 18th. *See Strickland*, at 697 (A reviewing court may dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice regardless of whether counsel's performance was deficient).

**XVIII. THE STATE COURT'S REJECTION OF LUO'S INEFFECTIVE ASSISTANCE CLAIM REGARDING ALLEGED FAILURE TO INVESTIGATE AND CALL DEFENSE WITNESSES (CLAIM 16) CONSTITUTED A REASONABLE APPLICATION OF FEDERAL LAW AS ARTICULATED BY UNITED STATES SUPREME COURT AUTHORITY**

Luo further challenges the assistance provided by counsel, blaming him for failing to discover and present inconsistent statements the victim made to police or to identify and call defense witnesses. (ECF Doc. 33 at 60-62.) As previously argued, the state court reasonably determined that any claim related to deficient investigation by counsel cannot succeed because Luo did not "demonstrate that she has personal knowledge of what investigation counsel did or did not do[.]" (ECF Doc. 6 at 20); *see also* (ECF Doc. 3 at 208 [RT 11] (Luo stating that she had "no clue whether her counsel adequately investigated the facts and the law.")); Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge").

With regard to Luo's complaints regarding counsel's failure to locate and present testimony from purportedly favorable witnesses, this claim was rejected on direct appeal because Luo relied on evidence outside the trial record and because

the record contained no affirmative evidence proving that counsel acted without any rational tactical purpose. (ECF Doc. 3 at 8.) The superior court also denied this claim in response to Luo's first state habeas petition:

> [Luo] also contends that counsel provided ineffective assistance by failing to call any defense witnesses. [she] suggests that counsel should have called the victim's friend who was present the night of the vandalism, the 911 operator, and the police officers who responded to the scene, but she does not adequately explain what their testimony would have been or how it would have raised doubts about her guilt.

(ECF Doc. 6 at 21.) Neither of these decisions by the state courts ran afoul of federal law, as established through binding Supreme Court precedent.

As fully explained above, trial strategy is the exclusive province of counsel, and the courts owe substantial deference to an attorney's selection of tactics from within a wide range of legitimate defense options. *McCoy*, 138 S. Ct. at 1508; *Yarborough*, 540 U.S. at 5-6; *Strickland*, 466 U.S. at 689. Counsel is not required to present every conceivable argument or witness favorable to the defense, and a defendant's dissatisfaction with defense strategy cannot itself establish deficient performance, even if hindsight, another strategy may have fared better. *Bemore v. Chappell*, 788 F.3d at 1163; *Mickey v. Ayers*, 606 F.3d at 1238. Additionally, "It is well-settled that '[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.' " *Jones v. Gomez*, 66 F.3d 199, 204-205 (9th Cir. 1995) (*quoting James v. Borg,* 24 F.3d 20, 26 (9th Cir.1994)). Here, Luo offers no satisfactory explanation of how the 911 operator, responding police, or the victim's friend Chris K. would have personal knowledge of any facts that could have meaningfully impacted the determination of her guilt or innocence of vandalism. Furthermore, Luo's conjecture that it was possible to create fake or edited text messages between her and the victim does not show that the investigating law enforcement officers could have offered any evidence favorable

to the defense. For the same reasons, Luo cannot demonstrate any prejudice from such omission, as required to prevail under *Strickland*.

## XIX. THE STATE COURT'S DENIAL OF LUO'S CLAIMS OF INEFFECTIVE ASSISTANCE FOR FAILURE TO OBJECT (CLAIM 17) WAS CONSISTENT WITH CLEARLY ESTABLISHED FEDERAL LAW

Luo next asserts that counsel was ineffective for failing to raise a number of objections, namely: failure to object to the court's denial of a juror's hardship request, failure to object to "prosecutorial misconduct," failure to seek exclusion of recorded videos and screenshots on the basis that their prejudicial effect outweighed their probative value, and failure to object to discussion of her adoptive admission. (ECF Doc. 33 at 62-65.) None of these claims has merit.

The high degree of judicial deference owed to an attorney's strategic choices extends to the decision of whether or not to object because such decision is inherently tactical, and requires counsel to weigh not only the prospect of success, but also the potential risks of creating a poor impression in the eyes of the jury or inadvertently highlighting unfavorable evidence or argument. *See Molina*, 934 F.2d at 1448; *Larimer v. Yates*, 483 F. App'x 317, 319-320 (9th Cir. 2012); *accord Lundgren v. Mitchell,* 440 F.3d 754, 774 (6th Cir. 2006) (usually, "defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice."); *Bussard v. Lockhart*, 32 F.3d 322, 324 (8th Cir. 1994) ("We have often deferred to counsel's decisions about whether to object to a statement in a prosecutor's summation as "strategic" decisions.); *People v. Hayes* 52 Cal. 3d 577, 621 (1990) ("Whether to object to inadmissible evidence is a tactical decision; because trial counsel's tactical decisions are accorded substantial deference [citations], failure to object seldom establishes counsel's incompetence.").

In addressing this claim on direct appeal, the appellate division rejected Luo's assertions that counsel rendered ineffective assistance by "failing to object to the

1  trial court's denial of a juror's hardship request" and "failing to object to

2  prosecutorial misconduct" on the basis that she failed to show affirmative evidence

3  in the record proving that "counsel had no rational tactical purpose" for these

4  choices. The court also denied her claim that counsel was ineffective for "failing to

5  object on Evidence Code section 352 grounds" because "counsel did object, albeit

6  unsuccessfully,… to several exhibits on Evidence Code section 352 grounds." (ECF

7  Doc. 3 at 8.) The superior court again denied relief on these claims following Luo's

8  first state habeas petition, holding in relevant part:

9
> "To satisfy the initial burden of pleading adequate grounds for relief,
10
> an application for habeas corpus must be made by petition, and if the
> imprisonment is alleged to be illegal, the petition must also state in
11
> what the alleged illegality consists. The petition should both (i) State
12
> fully and with particularity the facts on which relief is sought as well
> as (ii) include copies of reasonably available documentary evidence
13
> supporting the claim, including pertinent portions of trial transcripts
> and affidavits or declarations. Conclusory allegations made without
14
> any explanation of the basis for the allegations do not warrant relief,
15
> let alone an evidentiary hearing." (*People v. Duvall* (1995) 9 Cal.4th
> 464, 474-475.)
16

17  […]

18
> [Luo] does not provide sufficient evidence or authority to support her
> claims regarding trial counsel's failure to object to the presentation of
19
> a particular video pursuant to Evidence Code section 352, … failure to
20
> object to the trial court's denial of hardship request by juror number
> four, and general poor tactical decisions. As noted above, it is
21
> petitioner's burden to supply any relevant documents, including a trial
22
> transcript, and to provide relevant authority so that the court may make
> a meaningful analysis of her claims.
23

24  (ECF Doc. 6 at 20-21.) Luo cannot prevail on these claims because the state courts'

25  conclusions are reasonable and consistent with established federal law.

26        Luo insists that counsel's failure to object to denial of a juror's financial

27  hardship request led to her conviction by retaining a "frustrated" juror who could

28  not "devote himself" to his duties and instead harbored personal incentives to

52

"finish as soon as possible." (ECF Doc. 33 at 62; ECF Doc. 4 at 4 [RT 103].) Her mere disagreement with counsel's exercise of professional judgment in retaining jurors or unhappiness with individual members of her panel is insufficient to demonstrate constitutionally deficient performance. See, e.g., *Carrera v. Ayers*, 670 F.3d 938, 948 (9th Cir. 2011), *on reh'g en banc,* 699 F.3d 1104 (9th Cir. 2012) ("this court's jurisprudence demonstrates the high level of deference given to counsel's decisions during jury selection."); *United States v. Quintero-Barraza*, 78 F.3d 1344, 1349 (9th Cir. 1995) (federal review of counsel's tactical decision not to strike a potentially biased juror "must be highly deferential"). Nothing about Luo's uncorroborated speculation regarding a juror's mindset or motivations demonstrates the existence of impermissible bias or prejudice against her; nor is there any proof that an objection would have led the court to dismiss the juror. (*See* ECF Doc. 4 at 4-6 [RT 103-105]); *cf. Fields v. Woodford*, 309 F.3d 1095, 1108 (9th Cir.), *amended,* 315 F.3d 1062 (9th Cir. 2002) (rejecting ineffective assistance argument that "failure to inquire beyond the court's voir dire was outside the range of reasonable strategic choice" where counsel declined to question six jurors who were ultimately empaneled).

Luo's complaints of counsel's decision not to object to alleged instances of prosecutor error fare no better. As explained in the arguments responding to claims 4-9 and 30, there were no acts of prejudicial prosecutorial error warranting an objection from defense counsel. *See Premo*, 562 U.S. at 124 (declining to make futile request is not ineffective assistance)*; accord McCutcheon*, 187 Cal. App. 3d at 558-559 (attorney "need not make futile objections" simply to "create a record impregnable to attack for claimed inadequacy of counsel"). Furthermore, due to the competing strategic concerns surrounding an objection and the deference owed to counsel's choices, "the question we have to ask is not whether the prosecutor's comments were proper, but whether they were so improper that counsel's only defensible choice was to interrupt those comments with an objection." *Bussard*, 32

1    F.3d at 324. Luo has failed to prove a violation of federal law from the state court's

2    conclusion that some conceivable tactical purpose could have supported counsel's

3    decisions—especially under the doubly deferential standard required to succeed on

4    habeas. *See Burt v. Titlow*, 571 U.S. at 15 ; *Dunn v. Reeves*, 141 S. Ct. at 2411.

5          With regards to California Evidence Code section 352 objections, the trial

6    record supports the state court's assessment that counsel repeatedly objected to

7    admission of the prosecution's video, photo, and text evidence on this basis (among

8    others). (ECF Doc. 3 at 94-100 [CT 81-87]; ECF Doc. 4 at 124-129 [RT 223-228].)

9    Consequently, Luo cannot prove that her attorney acted deficiently in failing to

10   raise her desired objection, or that such objection could have altered the outcome of

11   her trial. Furthermore, any such objections were properly overruled as meritless,

12   meaning she cannot satisfy the prejudice prong of *Strickland*.

13   Under section 352, otherwise-admissible evidence may be excluded in the trial

14   court's discretion "if its probative value is substantially outweighed by the

15   probability that its admission will (a) necessitate undue consumption of time or (b)

16   create substantial danger of undue prejudice, of confusing the issues, or of

17   misleading the jury." Cal. Evid. Code, § 352.  Evidence is considered prejudicial

18   for purposes of section 352 where it predominantly tends to evoke an emotional

19   bias while having only slight probative value to the issues. *People v. Robinson*, 37

20   Cal. 4th 592, 632 (2005).  However, "'[u]ndue prejudice,' as used in section 352, []

21   does not mean evidence that is harmful to the defendant's case. '[T]he prejudice

22   which exclusion of evidence under Evidence Code section 352 is designed to avoid

23   is not the prejudice or damage to a defense that naturally flows from relevant,

24   highly probative evidence.'" *People v. Kerley* 23 Cal. App. 5th 513, 532 (2018)

25   (*quoting People v. Fruits*, 247 Cal. App. 4th 188, 205 (2016)).  Here, all of the

26   exhibits received into evidence were clearly relevant and probative to the question

27   of guilt for Luo's offenses. And while they were harmful to the defense in the sense

28   that they were incriminating, Luo does not explain how such materials were the

54

type of evidence uniquely designed to inflame an emotional or irrational response from jurors which is unrelated to a defendant's guilt or innocence. *See People v. Jones*, 54 Cal. 4th 1, 62 (2012). As such, the challenged evidence was admissible and could not be excluded through a section 352 objection.

Finally, Luo's claim that counsel was ineffective for failing to object on section 352 grounds to the evidence about her failure to deny the victim's accusations regarding her criminal acts fails because its probative value outweighed its prejudice. In California, "[e]vidence of a statement offered against a party is not made inadmissible by the hearsay rule if the statement is one of which the party, with knowledge of the content thereof, has by words or other conduct manifested his adoption or his belief in its truth." Cal. Evid. Code, § 1221. "Under this provision, 'If a person is accused of having committed a crime, under circumstances which fairly afford him an opportunity to hear, understand, and to reply, and which do not lend themselves to an inference that he was relying on the right of silence guaranteed by the Fifth Amendment to the United States Constitution, and he fails to speak, or he makes an evasive or equivocal reply, both the accusatory statement and the fact of silence or equivocation may be offered as an implied or adoptive admission of guilt.'" *People v. Riel*, 22 Cal. 4th 1153, 1189, 998 P.2d 969, 994 (2000);(*quoting People v. Preston*, 9 Cal.3d 308, 313–314 1973)). Immediately after the victim asked Luo whether she had posted "shit" about him online, her recorded response was, "I was emotional." (ECF Doc. 3 at 5.) This was clearly an adoptive admission, and thus substantially probative of guilt, since it was an evasive or equivocal response to an accusatory statement under circumstances in which Luo had not invoked her constitutional right to silence. *See Estate of Neilson* 57 Cal.2d 733, 746 (1962) (A defendant's "silence, evasion, or equivocation may be considered as a tacit admission of the statements made in [her] presence."). Luo has identified no undue prejudice from the prosecutor's use of this admissible and noninflammatory evidence, other than "the prejudice or damage to a

defense that naturally flows from relevant, highly probative evidence.'" *Kerley* 23 Cal. App. 5th at 532.

In sum, the state courts did not contravene or unreasonably apply established Supreme court authority by concluding that Luo failed to satisfy the *Strickland* requirements as to these ineffective assistance claims.

## XX.   LUO CANNOT SHOW THAT THE STATE COURTS' RESOLUTION OF HER CLAIM THAT DEFENSE COUNSEL WAS INEFFECTIVE IN FAILING TO TIMELY BRING HER CASE TO TRIAL (CLAIM 18) CONTRAVENED OR UNREASONABLY APPLIED FEDERAL AUTHORITY

Luo claims that her trial counsel violated her rights to a speedy trial under both the federal Constitution and California Penal Code Section 1382 by failing to timely prepare for trial. (ECF Doc. 33 at 65-66.) She further asserts that she never voluntarily waived her right to a speedy trial and did not benefit from a continuance. (ECF Doc. 33 at 65.) Luo cannot show that the state courts' adjudications of this claim contravened or unreasonably applied clearly established federal law.

This claim (as presently constructed in Luo's federal petition) was addressed in part on direct appeal and in part in the denial of her first state habeas petition. The direct appeal opinion disposed of the claim that counsel rendered ineffective assistance by failing to timely prepare for trial, while the denial of her first habeas petition addressed the argument that counsel was ineffective by failing to assert her constitutional and statutory speedy trial rights. (ECF Doc. 3 at 8; ECF Doc. 6 at 21-22.) Respondent analyzes each in turn.

The Appellate Division of the Superior Court rejected Luo's claim that "trial defense counsel rendered ineffective assistance…[by] failing to prepare for trial in a timely manner" on the basis that she "has not shown the record contains 'affirmative evidence that counsel had "no rational tactical purpose" for an action or omission."( ECF Doc. 3 at 8) (*citing People v. Mickel*, 2 Ca1.5th 181, 198 (2016)). As explained above, this conclusion comports with applicable federal law

56

1  regarding an ineffective assistance claim raised on direct appeal. *See Strickland*,

2  466 U.S. at 689; *Hanoum,* 33 F.3d at 1131. Moreover, this conclusion is based on

3  an accurate characterization of the record.

4          The Supreme Court has acknowledged the "reality that defendants may have

5  incentives to employ delay as a 'defense tactic': delay may 'work to the accused's

6  advantage' because 'witnesses may become unavailable or their memories may

7  fade' over time." *Vermont v. Brillon*, 556 U.S. 81, 90 (2009) (*quoting Barker v.

8  Wingo,* 407 U.S. 514, 521 (1972). In addition, it is well settled that competent

9  counsel is obligated to ensure adequate time to develop a defense and prepare for

10  trial. *United States v. Bonilla*, 602 F. App'x 667, 668 (9th Cir. 2015) (finding

11  continuances justified by "defense counsel's requests for adequate time to prepare

12  for trial" and stating that it is "defense counsel's professional responsibility to

13  diligently pursue discovery and preparations for trial."). Here, defense counsel

14  represented to the court that continuance was motivated by the legitimate need to

15  prepare for trial and was not due to caseload concerns. (ECF Doc. 3 at 207 [RT

16  10].) Given this, Luo cannot show that counsel's belief in the need to delay the date

17  of trial was objectively unreasonable or held no rational tactical purpose—

18  especially considering that at least part of the delay occurred due to difficulties

19  posed by the Covid-19 pandemic. (ECF Doc. 6 at 17-18); *cf. United States v. Keith*,

20  61 F.4th 839, 851 (10th Cir. 2023) (discussing balancing a defendant's speedy trial

21  rights with the "unique challenges" related to COVID-19, including how social

22  distancing can interfere with counsel meeting with clients and witnesses). Certainly,

23  she cannot demonstrate that "every 'fairminded juris[t]' would agree that every

24  reasonable lawyer would have made a different decision," as required for federal

25  habeas relief. *Dunn v. Reeves*, 141 S. Ct. at 2411.

26          The accompanying issue of counsel's obligation to assert Luo's state and

27  federal speedy trial rights was analyzed in depth by the superior court's denial of

28  Luo's first state habeas petition:

Petitioner also argues that counsel's performance was deficient because counsel did not file a motion to dismiss before trial. She argues that she did not knowingly, voluntarily, and intelligently waive her right to a speedy trial, and that Penal Code section 1382 entitles her to a dismissal regardless of prejudice. Counsel alone, over a defendant's objection, may waive a defendant's statutory right to a speedy trial. (*Townsend v. Superior Court* (1975) 15 Cal.3d 774, 780.) The statutory right under Penal Code section 1382 is not fundamental in the constitutional sense and therefore is within counsel's primary control. (*Id*. at p. 781.) In the absence of an affirmative objection to further delay, the defense is deemed to have consented to the continuance. (*Id*. at p. 783.) It is true that "'a criminal defendant may not be deprived of a speedy trial because the prosecution — or the defense — is lazy or indifferent, or because the prosecution seeks to harass the defendant rather than bring him fairly to justice..." [Citation.]" (*Id*. at p. 784.) No such circumstances, however, are presented here. The requests for continuance were reasonably justified, particularly given that the bulk of the delay was due to limited court operations as a result of the COVID-19 pandemic, and there is no evidence that counsel was not well qualified to represent petitioner. A motion to dismiss pursuant to Penal Code section 1382 would not have been successful. It is unclear whether petitioner faults counsel for not filing a motion to dismiss based on an alleged violation of her constitutional right to a speedy trial as well as an alleged violation of her statutory right, but, assuming the does, counsel's failure to file a constitutional speedy trial motion also does not rise to the level of deficient performance. *Barker v. Wingo* (1972) 407 U.S. 514 sets forth four factors to be assessed in determining whether a defendant has been deprived of the right to a speedy trial: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) prejudice to the defendant. They are related factors and must be considered together with other relevant circumstances. Here, the bulk of the delay was due to court closures and limited operations as a result of the COVID-19 pandemic. Defendant makes no effort to demonstrate prejudice, aside from claiming generally that she has suffered damage and harm to her character by having been accused of three crimes for almost three years, and, as noted above, she failed to object to the continuances. A motion to dismiss alleging a violation of petitioner's constitutional right to a speedy trial would likely not have been successful.

(ECF Doc. 6 at 21-22.) Luo has failed to show that this analysis by the state court contradicted or misapplied clearly established federal law. To the extent her argument is premised on the court's examination of rights conferred by California Penal Code section 1382, it cannot be raised here because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 63; *Langford,* 110 F.3d at 1389.

As for the federal claim, the court correctly identified the pertinent legal test established by the Supreme Court in *Barker*, and reasonably applied the articulated factors to the specifics of this case. This issue will be comprehensively addressed in response to Luo's substantive speedy trial argument raised in claim 27, but put simply, the state court properly concluded that her constitutional challenge would not have succeeded because 1) she personally and voluntarily waived her speedy trial rights; 2) the delay was not attributable to malicious or negligent conduct by the government; but instead occurred due to reasonable continuance requests by the defense and because of unavoidable delays from the pandemic; and 3) Luo failed to show any actual prejudice as a result of the delay. (*See* ECF Doc. 3 at 17-24 [CT 4-11], 205, 217-219, 224 [RT 8, 20-22, 27]; ECF Doc. 6 at 17-18; Lodgment 2 at 1-2.)

## XXI. LUO'S ARGUMENT THAT HER CONVICTIONS WERE BASED ON AN UNREASONABLE DETERMINATION OF FACTS (CLAIM 19) IS NOT AN INDEPENDENT CLAIM FOR FEDERAL HABEAS RELIEF

In her nineteenth claim, Luo argues that her guilty verdict constitutes an unreasonable determination of the facts under section 2254(d)(2) because the victim did not have a reasonable expectation of privacy in sending nude photos to her. (ECF Doc. 33 at 66.) As this Court recognized in its screening of Luo's petition, this is not an independent exhausted claim; rather it is an argument in support of claim 21. (ECF Doc. 12 at 5.) Consequently, Luo's argument will be fully addressed in the response to that claim.

**XXII. LUO'S CLAIM THAT INSUFFICIENT EVIDENCE PROVED THE VICTIM HAD A DATING RELATIONSHIP THAT ENGENDERED AN EXPECTATION OF PRIVACY (CLAIM 20) IS PROCEDURALLY BARRED UNDER *LINDLEY* AND IS MERITLESS; A DATING RELATIONSHIP IS NOT REQUIRED FOR CONVICTION OF UNLAWFUL DISTRIBUTION OF PRIVATE PHOTOGRAPHS, AND SUBSTANTIAL EVIDENCE SHOWED LUO'S CONNECTION TO THE VICTIM MET THE STATUTORY DEFINITION OF A DATING RELATIONSHIP FOR PURPOSES OF THE PROTECTIVE ORDERS**

Luo next claims that there was insufficient evidence showing the existence of a dating relationship which engendered an expectation of privacy. (ECF Doc. 33 at 66.)

First and foremost, his claim is procedurally defaulted on federal habeas due to the *Lindley* rule. In rejecting this claim in her state habeas petitions, the state superior court explained that "[c]hallenges to the sufficiency of the evidence supporting the conviction are not subject to review via habeas corpus." (ECF Doc. 6 at 19; Lodgment 2 at 3 ("As ruled in petitioner's prior petition for writ of habeas corpus, any arguments that there was insufficient evidence to support the conviction are not cognizable on habeas corpus")); *see also Reno*, 55 Cal. 4th at 452 ("Claims alleging the evidence was insufficient to convict … are not cognizable an habeas carpus."); *Lindley*, 29 Cal. 2d at 723 ("Upon habeas corpus, ordinarily it is not competent to retry issues of fact or the merits of a defense … and the sufficiency of the evidence to warrant the conviction of the petitioner is not a proper issue for consideration."). As noted, the *Lindley* rule, is "an independent and adequate state procedural bar" and means that Luo's "sufficiency of the evidence claims [are] procedurally defaulted." *Carter v. Giurbino*, 385 F.3d at 1197-1198.

Moreover, Luo's claim is substantively meritless, meaning she cannot demonstrate cause (via a claim of ineffective assistance) or prejudice necessary to excuse default. The review of any claim that a conviction is unconstitutional based on insufficiency of the evidence is "sharply limited." *Wright v. West* 505 U.S. 277, 296 (1992). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

Luo conflates the requirements for the DVRO, which requires the existence of a "dating relationship," with the elements of California Penal Code section 647(j)(4)(A), which prohibits dissemination of an intimate image "under circumstances in which the persons agree or understand that the image shall remain private." In any event, her sufficiency challenge is unfounded. As fully explained in response to claim 2, substantial evidence in the record established that Luo's relationship to the victim met California's statutory definition of a dating relationship. Consequently, Luo is not entitled to habeas relief on this basis.

## XXIII. LUO'S CLAIM THAT INSUFFICIENT EVIDENCE SUPPORTED HER CONVICTION FOR UNLAWFUL DISTRIBUTION OF PRIVATE PHOTOGRAPHS (CLAIM 21) IS PROCEDURALLY BARRED UNDER *LINDLEY* AND IS MERITLESS; SUBSTANTIAL EVIDENCE SHOWED THAT THE VICTIM HAD A REASONABLE EXPECTATION OF PRIVACY IN HIS NUDE PHOTOS, AND PROVIDED THEM WITH THE UNDERSTANDING THAT LUO WOULD NOT DISTRIBUTE THEM TO OTHERS

Luo alleges that there was insufficient evidence of the victim's expectation of privacy to prevent her from distributing his nude images. (ECF Doc. 33 at 66-68.) As with her previous claim, this argument is procedurally defaulted, as the state court rejected it on an "an independent and adequate state procedural bar," the *Lindley* rule. (ECF Doc. 6 at 19; Lodgment 2 at 3); *see also Lindley*, 29 Cal. 2d at 723; *Carter v. Giurbino*, 385 F.3d at 1197-1198. Luo has not shown the cause or prejudice necessary to obtain relief because this claim cannot succeed on the merits.

"A person has a reasonable expectation of privacy in his or her personal cell phone, including call records and text messages." *United States v. Davis*, 787 F. Supp. 2d 1165, 1170 (D. Or. 2011), (*citing City of Ontario, Cal. v. Quon*, 130 S.Ct. 2619, 2630-2631 (2010)). In addition, the Ninth Circuit has stated that "We cannot conceive of a more basic subject of privacy than the naked body. The desire to shield one's unclothed figured from view of strangers… is impelled by elementary self-respect and personal dignity. … We do not see how it can be argued that the

1   searching of one's home deprives him of privacy, but …the distribution of [nude]

2   photographs to strangers does not." *York v. Story*, 324 F.2d 450, 455 (9th Cir.

3   1963). It follows logically from these principles that an individual possesses a

4   reasonable expectation that nude photographs contained in a person-to-person text

5   exchange would remain private from parties beyond the intended recipient.

6        The California Supreme Court has further explained, "privacy ... is not a

7   binary, all-or-nothing characteristic. There are degrees and nuances to societal

8   recognition of our expectations of privacy: the fact that privacy one expects in a

9   given setting is not complete or absolute does not render the expectation

10  unreasonable as a matter of law." *Sanders v. American Broadcasting Companies,*

11  *Inc.*, 20 Cal. 4th 907, 916 (1999).  Instead, the Court has "made clear that the  'mere

12  fact that a person can be seen by someone does not automatically mean that he or

13  she can legally be forced to be subject to being seen by everyone.' " *Hernandez v.*

14  *Hillsides, Inc.*, 47 Cal. 4th 272, 291 (2009) (*quoting Sanders,*  20 Cal. 4th at 916).

15       In order to convict Luo of unlawful dissemination of intimate photographs,

16  California law required the state to  prove that she received or acquired the images

17  of the victim under circumstances in which "the Defendant and the other person

18  agreed or understood that the images shall remain private." Cal. Pen. Code §

19  647(j)(4)(A); *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005) (review of

20  sufficiency of evidence claims requires "reference to the elements of the criminal

21  offense as set forth by state law"). The victim's testimony spoke directly to that

22  question, explaining that he sent Luo solicited nude photographs in a "private

23  conversation" through a nonpublic person-to-person text message, and that he did

24  not send them to anyone else or give her permission to disseminate them. (ECF

25  Doc. 4 at 33-34, 45-47, 49-50, 104-105 [RT 132-133, 144-146, 148-149, 203-204].)

26  "The testimony of the one witness, if believed, was sufficient to support the

27  conviction, and the resolution of any question as to his credibility was properly

28  entrusted to the jury." *United States v. Gudino*, 432 F.2d 433, 434 (9th Cir. 1970).

1  In addition, texts from Luo to the victim explained that her actions in posting the

2  photos were intended to provide him negative notoriety in order to make him

3  "suffer," and she continued to spread them online after the victim asked her to stop,

4  threatened to go to the police, and obtained a restraining order. (ECF Doc. 4 at 20,

5  54, 86-88, 96, 166-167, 170, 174-175 [RT 119, 153, 185-187, 195, 265-266, 269,

6  273-274].) This conduct made clear that Luo was aware that the victim wanted the

7  images to remain private and was embarrassed by their public distribution.  Thus,

8  substantial evidence presented at trial established this element of Luo's offense. Her

9  claim is meritless.

10  **XXIV.  LUO'S SUFFICIENCY CHALLENGE REGARDING THE EMOTIONAL DAMAGE ELEMENT OF HER CONVICTION (CLAIM 22) IS DEFAULTED UNDER *LINDLEY* AND MERITLESS; SUBSTANTIAL EVIDENCE SHOWED THAT THE VICTIM SUFFERED SERIOUS EMOTIONAL DAMAGE AS A RESULT OF HER DISTRIBUTING HIS PRIVATE NUDE IMAGES**

11

12

13  Luo next claims that there was insufficient evidence of serious emotional

14  damage because the victim was a nudist and did not testify that he went to therapy.

15  As previously explained, her sufficiency of evidence claims were not cognizable

16  through state habeas corpus proceedings, and her federal claim is procedurally

17  defaulted. (ECF Doc. 6 at 19; Lodgment 2 at 3); *see also Lindley*, 29 Cal. 2d at 723.

18  Luo has offered no good cause to excuse this independent and adequate procedural

19  bar and cannot show prejudice because she could not prevail on the merits of this

20  claim.

21  Conviction under Penal Code section 647(j)(4)(A) requires that "the person

22  distributing the image knows or should know that distribution of the image will

23  cause serious emotional distress, and the person depicted suffers that distress."

24  California law defines emotional distress as " 'any highly unpleasant mental

25  reaction such as fright, grief, shame, humiliation, embarrassment, anger, chagrin,

26  disappointment or worry[.]' " *Wong v. Jing*, 189 Cal. App. 4th 1354, 1376 (2010)

27  (quoting *Fletcher v. Western National Life Insurance Company* 10 Cal. App. 3d

28  376, 397 (1970)). Case law has indicated in the civil context that "severe"

1  emotional distress means ' "emotional distress of such substantial quality or

2  enduring quality that no reasonable [person] in civilized society should be expected

3  to endure it.' " *Wong*, 189 Cal. App. 4th at 1376 (*quoting Potter v. Firestone Tire*

4  *& Rubber Co.*, 6 Cal. 4th 965, 1004 (1993)). However, in the context of the statute

5  at issue here, the reference to "serious" emotional distress carries its common use

6  meaning of emotional distress that is "[s]ignificant or worrying because of possible

7  danger or risk; not slight or negligible." *Iniguez*, 247 Cal. App. 4th Supp. at 9.

8      The record here establishes that the victim suffered unpleasant grief, shame,

9  humiliation, embarrassment, or worry that was not slight or negligible. The

10  evidence showed that Luo engaged in a sustained, highly public, and multifaceted

11  attack on the victim's reputation, which included distributing physical leaflets as

12  well as online video, image, and texts posted across multiple platforms. (ECF Doc.

13  3 at 4-6; ECF Doc 4 at 36-53, 59-66, 80-95 [135-152, 158-165, 179-194].) In the

14  course of this conduct, the victim's private nude photos were viewed by hundreds

15  or thousands of strangers on "cheater" websites and were sent to his friends and

16  customers of his business through social media. (ECF Doc 4 at 59-64, 89, 91,92

17  [RT 158-163, 188, 190-191].) Luo's admitted motive for these actions was to make

18  the victim "famous" for his infidelity and to make him "suffer." (ECF Doc. 3 at 4-6;

19  ECF Doc. 4 at 20, 54, 86-88, 96, 166-167, 170, 174-175 [RT 119, 153, 185-187,

20  195, 265-266, 269, 273-274].) The victim detailed that, as a result, he googled

21  himself and his company every day as part of a costly and unsuccessful effort to

22  remove the private content from the internet, and was subjected to numerous calls

23  regarding the images and video. (ECF Doc. 4 at 64, 79-81, 85-86, 91-92, 96 [RT

24  163, 178-180, 184-185, 190-191, 195].) He further testified that going through this

25  ordeal made him feel "disgusting" and explained that, while he had not yet sought

26  professional help, he was "thinking about [going to therapy] a lot." (ECF Doc. 4 at

27  96 [RT 195].)

28

All told, the foregoing constitutes substantial evidence that the victim suffered serious emotional distress from the unauthorized distribution of his private photographs, as Luo intended and knew it would. *See, e.g., Iniguez*, 247 Cal. App. 4th Supp. at 12 (finding substantial evidence that victim who did not obtain therapy for financial reasons nonetheless suffered serious emotional distress from private photo posted on Facebook due to her testimony regarding her embarrassment, fear of losing her job, and a comment referencing suicide). This is especially true in light of the principles that all evidence be viewed in the light most favorable to the conviction and that a single witness is sufficient to prove the challenged element of a criminal offense. *Jackson*, 443 U.S. at 319; *Gudino*, 432 F.2d at 434.

## XXV. LUO'S CHALLENGE TO THE SUFFICIENCY OF EVIDENCE REGARDING HER RESTITUTION AMOUNT BASED ON THE VICTIM'S LOST INCOME (CLAIM 23) IS DEFAULTED UNDER *LINDLEY* AND DOES NOT RAISE A VALID CLAIM FOR RELIEF UNDER FEDERAL HABEAS CORPUS

Luo also challenges the sufficiency of evidence that the victim lost income as a result of her actions because he was self-employed and his annual net income statistics do not establish a steady trend of income. (ECF Doc. 33 at 68-69.) As with all her other sufficiency arguments, this claim is procedurally barred by the *Lindley* rule. (ECF Doc. 6 at 19; Lodgment 2 at 3); *see also Lindley*, 29 Cal. 2d at 723; *Carter v. Giurbino*, 385 F.3d at 1197-1198. In addition, this claim does not fall within federal habeas corpus jurisdiction because it does not challenge the validity of Luo's convictions and the State's custody of her. 28 U.S.C. § 2254(a) states:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

An order for financial restitution is merely a collateral consequence of a criminal conviction and does not meet the 'in custody' requirement of § 2254. *Bailey v. Hill,* 599 F.3d 976, 979, 982-983 (9th Cir.2010) ("an attack on a

1  restitution  order is not an attack on the execution of a custodial sentence" and is

2  "not premised on [a petitioner's] custody being in violation of federal law."). In

3  *Bailey,* the Ninth Circuit affirmed the district court's ruling that it lacked

4  jurisdiction over Bailey's habeas corpus petition, holding that to sustain a habeas

5  corpus challenge, the petitioner must show that his custody itself, or its conditions,

6  offends federal law. A restitution order is not the sort of "significant restraint on

7  liberty" contemplated in § 2254(a). *Id.* at 979 (*citing Williamson v. Gregoire,* 151

8  F.3d 1180, 1183 (9th Cir.1998) ). Consequently, Luo's challenge to the trial court's

9  calculation of  the victim's lost income is not cognizable here.

10  **XXVI. Luo's Claim Regarding Law Enforcement's Failure to Conduct an Adequate Independent Investigation of the Victim's Account (Claim 24) Fails to Identify a Cognizable Violation of Any Federal Right, and Is Substantively Meritless**

11

12

13  Luo claims that law enforcement officers failed in their duty of "lie detection in the

14  criminal justice system" by failing to view the victim's claims with adequate

15  suspicion or independently investigate metadata from photos and text exchanges he

16  provided to ensure they were not manipulated. (ECF Doc. 33 at 69-72.)

17      First, this claim cannot warrant habeas relief because it fails to raise a

18  cognizable federal question. Luo fails to identify any constitutional or federal right

19  that was allegedly violated, and this claim does not cite to any federal authority.

20  (ECF Doc. 33 at 69-72); *see also  Moore v. Dempsey*, 261 U.S. 86, 87-88 (1923)

21  ("what we have to deal with [on federal habeas review] is not the petitioners'

22  innocence or guilt but solely the question whether their constitutional rights have

23  been preserved").

24      To be sure, the Constitution requires that any conviction be based on proof of

25  guilt beyond a reasonable doubt and provides a number of procedural safeguards to

26  protect "against the risk of convicting an innocent person." *Herrera v. Collins*, 506

27  U.S. 390, 398-399 (1993).  However, there is no federal requirement that police

28  actively seek to discredit or contradict the credible account of a crime victim. *See*

1   *Patterson v. New York,* 432 U.S. 197, 208 (1977) ("Due process does not require

2   that every conceivable step be taken, at whatever cost, to eliminate the possibility of

3   convicting an innocent person."). Indeed, "[t]o conclude otherwise would all but

4   paralyze our system for enforcement of the criminal law." *Herrera*, 506 U.S. at

5   399. Likewise, Luo points to no established federal law requiring the prosecution to

6   seek out independent digital "metadata" evidence for the text messages and photos

7   provided by the victim. *Cf. Stauffer v. Vasquez*, 2009 WL 385446, at *20 (C.D. Cal.

8   Feb. 12, 2009) (finding that "[t]he United States Supreme Court has never held that

9   the Constitution requires" the prosecution to put on all evidence or witnesses

10  related to the crime.); *accord People v. Salcido*, 44 Cal. 4th 93, 150 (2008) ("the

11  prosecution is not required … to present its case in the manner preferred by the

12  defense."). And Luo's  unsubstantiated speculation that the texts and photographs

13  used at trial could have been "forged" or "digitally altered" cannot justify habeas

14  relief. *Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (habeas relief is

15  improper "on the basis of little more than speculation"); *Cooks v. Spalding*, 660

16  F.2d 738, 740 (9th Cir. 1981).

17        Second, Luo cannot show that the state court's merits adjudication of this claim

18  on direct appeal ran afoul of clearly established federal law. The Appellate Division

19  of the Orange County Superior Court rejected Luo's instant complaint, finding that

20  "[t]he record does not support" her contention that "police should have more fully

21  investigated the victim's claims." (ECF Doc. 3 at 8.) Luo does not identify any

22  clearly established Supreme Court precedent that this decision contravened or

23  unreasonably applied. (ECF Doc. 33 at 69-72); *See Carey v. Musladin*, 549 U.S. at

24  77.

25

26

27

28

1
2
3
4

**XXVII. LUO'S CLAIM THAT THE TRIAL COURT VIOLATED THE CONFRONTATION CLAUSE BY ALLOWING USE OF OUT-OF-COURT STATEMENTS FROM THE VICTIM'S FRIENDS (CLAIM 25) IS PROCEDURALLY BARRED UNDER *CLARK* AND *DIXON* AND IS MERITLESS; NO TESTIMONIAL HEARSAY WAS ADMITTED, AND ANY COMPLAINED-OF COMMENTS WERE NOT MADE TO LAW ENFORCEMENT IN PREPARATION FOR TRIAL OR OFFERED FOR THE TRUTH OF THE MATTER ASSERTED**

5
6
7
8
9
10
11
12
13
14
15
16
17

Luo alleges that the trial court violated due process and confrontation clause guarantees by admitting hearsay[13] statements from the victim's "friends and clients" over trial counsel's objections. (ECF Doc. 33 at 72-73.) This claim is not cognizable because the superior court found that it was *Dixon* barred by her failure to raise this claim on direct appeal and *Clark* barred by failure to raise it in her first habeas petition. (Lodgment 2 at 4-5); *see also Dixon*, 41 Cal. 2d at 759; *In re Clark*, 5 Cal. 4th at 767-768; *Johnson v. Lee*, 578 U.S. at 608-609; *Carpio v. Hill*, 2023 WL 3829687, at *3-*5. As will be fully explained in response to claim 32, Luo cannot show good cause to excuse her default because she failed to demonstrate that appellate counsel provided constitutionally ineffective assistance. *See Davila,* 137 S. Ct. at 2065 (Attorney error that does not violate the Constitution is attributed to the petitioner). Furthermore, she cannot show prejudice because her underlying claim cannot succeed on the merits.

18
19
20
21
22
23
24
25
26

The confrontation clause of the Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . [.]" U.S. Const. amend. VI. It "provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." *Coy v. Iowa,* 487 U.S. 1012, 1017 (1988). However, with regard to the Clause's application to out-of-court hearsay statements offered into evidence, the Supreme Court has explained that only testimonial statements "cause the declarant to be a 'witness' within the

27
28

---

[13] California law provides that "[h]earsay is an out-of-court statement offered for the truth of the matter asserted and is generally inadmissible." *People v. Flinner*, 10 Cal. 5th 686, 735 (2020); Cal. Evid. Code, § 1200.

68

1   meaning of the Confrontation Clause.  [Citation.].”  *Davis v. Washington*, 547 U.S.

2   813, 821 (2006) (“It is the testimonial character of the statement that separates it

3   from other hearsay that, while subject to traditional limitations upon hearsay

4   evidence, is not subject to the Confrontation Clause”); *Whorton v. Bockting*, 549

5   U.S. 406, 420 (2007).

6        Testimonial statements are those made primarily to memorialize facts relating

7   to past criminal activity, which could be used like trial testimony while

8   nontestimonial statements are those whose primary purpose is unrelated to

9   preserving facts for later use at trial.  *Davis*, 547 U.S. at 822, 828-830; *Michigan v.*

10  *Bryant*, 562 U.S. 344, 358, 360, 374-377 (2011). The Supreme Court has provided

11  the following examples to guide a court’s determination of whether an out-of-court

12  statement is testimonial: Testimonial statements take the form of 1) “*ex parte* in-

13  court testimony or its functional equivalent;” 2) “extrajudicial statements…

14  contained in formalized testimonial materials, such as affidavits, depositions, prior

15  testimony, or confessions;” and 3) “statements that were made under circumstances

16  which would lead an objective witness reasonably to believe that the statement

17  would be available for use at a later trial.” *Crawford v. Washington* 541 U.S. 36,

18  51-52 (2004).

19        The statements Luo complains about were not testimonial. No declarant was in

20  the employ or acting at the behest of law enforcement, and there is no reason to

21  believe their words were conveyed in anticipation of criminal prosecution. *See*

22  *Bryant* 562 U.S. at 358 (“the most important instances in which the [Confrontation]

23  Clause restricts the introduction of out-of-court statements are those in which state

24  actors are involved in a formal, out-of-court interrogation of a witness to obtain

25  evidence for trial”.)  Of greatest relevance, a declarant “who makes a formal

26  statement to government officers bears testimony in a sense that a person who

27  makes a casual remark to an acquaintance does not.” (*Crawford*, *supra*, 541 U.S. at

28  p. 51.)  The conversations at issue consisted of informal text exchanges between

69

friends and colleagues, and the primary purpose of these communications was to inform the victim of disparaging and explicit materials online for the sake of his wellbeing. Consequently, these exchanges do not trigger federal confrontation clause principles. *See Davis, supra,* 547 U.S. at pp. 838, 840; *accord Saechao v. Oregon* 249 Fed. App'x. 678 (9th Cir.2007) (holding that jailhouse conversation over the phone with an acquaintance was not testimonial, as declarant did not have the purpose of supplying prosecution with evidence); *United States v. Manfre*, 368 F.3d 832, 838, n. 1 8th Cir.2004) ("[Declarant's] comments were made to loved ones or acquaintances and are not the kind of memorialized, judicial-process-created evidence of which *Crawford* speaks.").

In addition to being nontestimonial, the communications at issue are not hearsay. During the victim's testimony, he described how friends and former clients warned him that intimate photographs of him had been posted online, and they provided him a link to a disparaging video on YouTube. (ECF Doc 4 at 44, 92, 124 [RT 143, 191, 223].) The trial court overruled defense objections because the prosecution did not offer any statements from these individuals as evidence to prove the truth of the matter asserted. (ECF Doc 4 at 44, 92, 125-126 [RT 143, 191, 224-225]); *See* Cal. Evid. Code, § 1200.

## XXVIII. LUO'S CLAIM THAT THE PROSECUTOR COMMITTED CONSTITUTIONAL ERROR BY AMENDING THE COMPLAINT (CLAIM 26) IS PROCEDURALLY BARRED UNDER *CLARK* AND THE STATE COURT DID NOT CONTRADICT OR UNREASONABLY APPLY SUPREME COURT PRECEDENT IN REJECTING IT.

Luo argues that the prosecution prejudiced her defense, in violation of due process, by belatedly amending the complaint without good cause. (ECF Doc. 33 at 73.) First, because this previously-unexhausted claim was not raised in Luo's first state habeas petition, the superior court analyzing his second state habeas petition found it procedurally barred as successive. (Lodgment 2 at 4-5); *See also In re Clark*, 5 Cal. 4th at 767-768; *Carpio v. Hill*, 2023 WL 3829687, at *3-*5 (the *Clark* rule is independent and adequate state procedural bar to federal habeas relief).

Second, the state court's subsequent merits adjudication of this claim in Luo's

second state habeas petition did not contravene or unreasonably apply Supreme

Court precedent. The court analyzed and rejected this argument as follows:

> Petitioner argues the court erred by allowing the People to file an
> amended complaint prior to trial on July 26, 2021. Counsel for
> petitioner objected at the time, but the court overruled the objection.
> The only change between the original complaint (filed 8/6/19) and the
> amended complaint (filed 7/26/21) concerned Count 2 (Pen. Code,§
> 273.6). In the original complaint, the People alleged that petitioner
> violated a protective order by coming within 100 yards of the protected
> person. In the amended complaint, the People alleged that petitioner
> violated a protective order by failing "to deactivate website and created
> new websites." The People moved for a trial continuance upon filing
> the complaint, to which the defense objected. Petitioner does not
> explain how this amendment so prejudiced her case as to warrant relief
> from the judgment on habeas corpus, and yet the amendment was not
> so significant that it warranted a delay of her jury trial for counsel to
> prepare for the amended charge. "'Under the generally accepted rule in
> criminal law a variance [in pleadings] is not regarded as material
> unless it is of such a substantive character as to mislead the accused in
> preparing his defense....'And '[n]o accusatory pleading is insufficient,
> nor can the trial, judgment, or other proceeding thereon be affected by
> reason of any defect or imperfection in matter of form which does not
> prejudice a substantial right of the defendant upon the merits.'"
> (*People v. Peyton* (2009) 176 Cal.App.4th 642,659, internal citations
> omitted.) Petitioner's conclusory argument regarding this claim fails to
> establish error.

(Lodgment 2 at 6.) This analysis fully comports with federal constitutional law.

The Sixth Amendment guarantees a criminal defendant the fundamental right

to be informed of the nature and cause of the charges made against him so as to

permit adequate preparation of a defense. *See* U.S. Const. amend. VI ("In all

criminal prosecutions, the accused shall enjoy the right ... to be informed of the

nature and cause of the accusation...."); *Cole v. Arkansas,* 333 U.S. 196, 201

(1948); *In re Oliver,* 333 U.S. 257, 273 (1948) ("A person's right to reasonable

notice of a charge against him, and an opportunity to be heard in his defense—a

right to his day in court—are basic in our system of jurisprudence...."). This fair
notice analysis begins with the content of the charging document. *Cole,* 333 U.S. at
198; *accord James v. Borg,* 24 F.3d 20, 24 (9th Cir.1994). However, to satisfy the
Constitution, an information need only "state the elements of an offense charged
with sufficient clarity to apprise a defendant of what he must be prepared to defend
against." *Givens v. Housewright,* 786 F.2d 1378, 1380 (9th Cir.1986) (*citing
Russell v. United States,* 369 U.S. 749, 763–764 (1962)). Furthermore, where (as
here) a defendant is properly informed of the criminal charge against her long
before trial, sufficient notice of the particular theory under which the prosecutor
intends to proceed may be obtained through sources other than the Information—
including materials disclosed during the trial itself. *See Murtishaw v. Woodford,*
255 F.3d 926, 953–54 (9th Cir.2001) (relying on the state's opening statement,
evidence presented at trial, and the instructions conference to hold that the
defendant had notice of the prosecution's felony-murder theory); *Calderon v.
Prunty,* 59 F.3d 1005, 1009–10 (9th Cir.1995) (looking to the opening statement
and transcript from a hearing after the close of the prosecution's case to assess
whether the defendant had notice that the prosecution was proceeding under a
lying-in-wait theory of murder); *Morrison v. Estelle,* 981 F.2d 425, 428–29 (9th
Cir.1992) (holding that the defendant received constitutionally adequate notice of
felony murder theory through the jury instructions the prosecutor submitted two
days before closing arguments and from the overall evidence presented at trial).
Finally, as pointed out by the state court, had defense counsel needed more time to
prepare to defend against the amended charges, it presumably would not have
opposed a continuance.

In short, Luo has failed to demonstrate that the state court's rejection of her
claim was contrary to or based upon an unreasonable application of clearly
established United States Supreme Court authority.

**XXIX. THE STATE COURT REASONABLY APPLIED FEDERAL LAW IN DENYING LUO'S CLAIM OF A SPEEDY TRIAL VIOLATION (CLAIM 27); LUO VOLUNTARILY WAIVED HER RIGHT, DELAY WAS LARGELY ATTRIBUTABLE TO REASONABLE DEFENSE CONTINUANCES AND THE COVID-19 PANDEMIC, AND LUO CANNOT SHOW PREJUDICE**

Luo next contends that her right to a speedy trial was violated. (ECF Doc. 33 at 74.) The state courts' rejection of this claim was not contrary to or an unreasonable application of clearly established federal law.

The superior court considering Luo's two state habeas petitions described the relevant proceedings below as follows:

> On August 6, 2019 petitioner was charged by misdemeanor complaint…. On her arraignment on August 12, 2019, through her appointed counsel, petitioner entered a general time waiver. At the pretrial on September 6, 2019, the pretrial was continued to October 18, 2019 at the request of petitioner, and the general time waiver was maintained. On October 18, 2019, the pretrial was continued to January 10, 2020 at the request of petitioner, and the general time waiver was maintained. On January 10, 2020, the pretrial was continued at the People's request to February 14, 2020, and a jury trial was set on March 24, 2020. On February 14, 2020, the pretrial was continued to March 20, 2020 at petitioner's request, and the jury trial was to remain. On March 20, 2020, counsel made an appearance pursuant to Penal Code section 977 and entered a general time waiver. The jury trial was vacated and the pretrial was continued to June 26, 2020. On July 14, 2020, both parties jointly requested a pretrial date on December 4, 2020, due to COVID-19. Petitioner failed to appear at the pretrial. On December 12, 2020, counsel appeared for petitioner pursuant to Penal Code section 977, the warrant was recalled, and a pretrial was set on March 5, 2021 with the general time waiver remaining. On March 5, 2021, the pretrial was continued to March 7, 2021, with the general time waiver remaining. On May 7, 2021, a pretrial and mandatory settlement conference were set on June 8, 2021, with petitioner ordered to appear, and the general time waiver remaining. On June 8, 2021, a jury trial was set on July 19, 2021, as day 0 of 10.
>
> On July 19, 2021, petitioner's counsel answered ready, but the People answered not ready, so the trial was trailed to July 26, 2021…. On July 26, 2021, the People requested a continuance of the jury trial,

1
2

but it was denied. The People amended the complaint, and the trial was trailed until the next day. Trial commenced on July 27, 2021.

3    (ECF Doc. 6 at 17-18; Lodgment 2 at 1-2.) In arguing that a constitutional

4    violation occurred, Luo claims that the continuances requested by defense counsel

5    should be attributed to the state because they constituted a "systematic breakdown

6    of the public defender system," the COVID-19 pandemic did not justify delay

7    because it was not "impossible" to hold a trial, and the prosecution violated its duty

8    to move the case along by not objecting to defense requests for continuances. (ECF

9    Doc. 33 at 74-92.) These assertions are unavailing and do not warrant federal

10   habeas relief, as they were properly considered and rejected in the proceedings

11   below.

12   The Sixth Amendment guarantees that criminal defendants "shall enjoy the

13   right to a speedy and public trial...." U.S. Const. amend. VI. Under *Barker,* 407

14   U.S. 514, courts review four factors in determining whether a defendant has been

15   denied his right to a speedy trial: (1) the length of the delay, (2) the reason for the

16   delay, (3) the defendant's prior assertion of the right, and (4) the prejudice resulting

17   from the delay. None of these four factors are either necessary or sufficient,

18   individually, to support a finding that a defendant's speed trial right has been

19   violated. *Id.* at 533. Rather the factors are related and "must be considered together

20   with such other circumstances as may be relevant." *Id.*

21   The length of the delay is a "threshold" factor, and a sufficiently lengthy delay

22   "necessitates an examination of the other three factors." *United States v. Sears,*

23   *Roebuck & Co., Inc.,* 877 F.2d 734, 739 (9th Cir.1989). A delay of longer than one

24   year from the date of the indictment is generally considered sufficiently lengthy to

25   trigger inquiry into the remaining factors. *Barker,* 407 U.S. at 530; *United States v.*

26   *Gregory,* 322 F.3d 1157, 1162 (9th Cir.2003).

27   The second factor, the reason for delay, is "the focal inquiry." *Sears,* 877 F.2d

28   at 739. In applying *Barker,* courts have asked "whether the government or the

1   criminal defendant is more to blame for th[e] delay," *Doggett v. United States,* 505

2   U.S. 647, 651 (1992). "[D]elay caused by the defense weighs against the

3   defendant…. An assigned counsel's failure 'to move the case forward' does not

4   warrant attribution of delay to the State." *Brillon*, 556 U.S. at 90, 92. Further, where

5   delay is attributable to the government,  a "defendant does not have a speedy trial

6   claim" where the state fulfills its obligations " by pursuing a defendant with

7   reasonable diligence." *United States v. Mendoza*, 530 F.3d 758, 763 (9th Cir. 2008)

8   (citing *Doggett* 505 U.S. at 656.) Finally, even where the prosecution's conduct

9   falls below this standard, *Barker* instructs that "different weights should be

10  assigned to different reasons," *Barker,* 407 U.S. at 531. Deliberate delay "to hamper

11  the defense" weighs heavily against the prosecution while  "more neutral reason[s]

12  such as negligence or overcrowded courts " weigh less heavily. *Id*.

13      The third *Barker* factor is the defendant's assertion of the right to a speedy

14  trial. *Barker,* 407 U.S. at 530. "[I]f delay is attributable to the defendant, then his

15  waiver may be given effect under standard waiver doctrine." *Id.,* at 529.

16  Furthermore, where a defendant asserts his speedy trial right "only after requesting

17  numerous continuances," this factor "weighs neither in favor of dismissal nor in

18  favor of the government." *United States v. Corona-Verbera*, 509 F.3d 1105, 1116

19  (9th Cir. 2007)

20      The last factor to consider is the prejudice to the defendant. The amount of

21  prejudice a defendant must show is inversely proportional to the length and reason

22  for the delay. *See Doggett,* 505 U.S. at 655–656. If the government can show that it

23  proceeded with reasonable diligence, the defendant's speedy trial claim generally

24  cannot succeed in the absence of a showing of actual prejudice resulting from the

25  delay. *Id.* at 656. If the government intentionally delayed or negligently pursued the

26  proceedings, however, prejudice may be presumed, and its weight in the defendant's

27  favor depends on the reason for the delay and the length of the delay. *Id.* at 656–

28  657.

1    The Appellate Division of the Superior Court addressed the merits of this

2    claim of Luo's direct appeal[14]:

3           Defendant argues her federal, state, and statutory speedy-trial rights
            were violated by the trial court's orders continuing her trial several
4           times. As the trial court noted, however, defendant consistently entered
            general or statutory time waivers from August 2019,when she was
5           arraigned, to June 2021, a month before trial. (See *People v. Seaton*
            (2001) 26 Cal.4th 598, 634 ["Each time the trial court continued the
6           case,[defendant] either sought the continuance or personally 'waived
            time': that is, he formally and knowingly relinquished his right to a
7           speedy trial for the period covered by each continuance."].)

8

9

10   (ECF Doc. 3 at 8-9.)

11   The foregoing analysis constitutes a reasonable application of established

12   federal law, particularly with regard to the second and third *Barker* factors. Luo,

13   through counsel, entered and repeatedly maintained a waiver to her speedy trial

14   rights. (ECF Doc. 6 at 17-18; ECF Doc. 3 at 17-24 [CT 4-11].); *see also Barker,*

15   407 U.S. at 529-530. Luo was personally present for these waivers on more than

16   one occasion, and her trial counsel confirmed to the court that he had explained her

17   speedy trial rights and obtained her voluntary agreement to waive them. (ECF Doc.

18   3 at 205, 217-219,  224 [RT 8, 20-22, 27].) Additionally, the fact that the defense

19   sought "numerous continuances" prior to any assertion of the speedy trial right

20   means that the third *Barker* factor does not favor dismissal. *Corona-Verbera*, 509

21   F.3d at 1116. Similarly, the reasons for delay are largely attributable to the defense.

22   _____

23   14 The superior court judge addressing Luo's first state habeas petition denied her
     speedy trial claims "on grounds that this court lacks jurisdiction to address
24   petitioner's claim of error while an appeal from the judgment is pending." (ECF
     Doc. 6 at 19.) The state court dismissing her second habeas petition stated that "any
25   arguments related to a violation of speedy trial rights were already raised and
     rejected on direct appeal and should not be considered via the instant writ."
26   (Lodgment 2 at 4.)

27

28

1    *Brillon*, 556 U.S. at 90-92. In addition to multiple continuances at the request of

2    defense counsel, Luo also failed to appear at a pretrial proceeding. (ECF Doc. 6 at

3    17-18); *see Brillon*, at 90-91 (*quoting Coleman v. Thompson,* 501 U.S. at 753

4    ("Because 'the attorney is the [defendant's] agent when acting, or failing to act, in

5    furtherance of the litigation,' delay caused by the defendant's counsel  is also

6    charged against the defendant."); *cf. United States v. Sandoval,* 990 F.2d 481, 485

7    (9th Cir.1993) (If a defendant attempts to avoid detection, the government is not

8    required to "make heroic efforts" to locate them).

9        Additionally, Luo cannot show any prejudice from her relatively moderate

10    length of delay, which amounted to less than two years from the time of

11    arraignment until the time of trial. *See, e.g., United States v. Alexander*, 817 F.3d

12    1178, 1181–83 (9th Cir. 2016) (*citing United States v. Gregory,* 322 F.3d 1157,

13    1162 (9th Cir.2003))("This court has previously held that a violation of the

14    constitutional right to a speedy trial did not occur in the absence of a showing of

15    particularized prejudice when the government's negligence caused a 22–month

16    delay."). The Ninth Circuit has found delays as long as five years nonprejudicial

17    where, as here, the defendant was not incarcerated during the delay, he or she has

18    not shown any particularized " uncertainty or anxiety resulting from the delay," and

19    has not "provided any non-speculative proof as to how his defense was prejudiced

20    by the delay."  *Alexander*, 817 F.3d at  1182–1183; *see also Corona–Verbera,* 509

21    F.3d at 1116; *United States v. Williams,* 782 F.2d 1462, 1466 (9th Cir.1985). Luo

22    has not made any particularized showing of prejudice based on the delay in her

23    trial.

24        Most importantly, Luo has failed to show that the state court's rejection of her

25    claim was contrary to or based on an unreasonable application of *Barker*.

26

27

28

**XXX.** **Luo's Claim That The Trial Court Erred in Refusing to
Consider an Ex Parte Motion to Dismiss That Had Not Been
Provided to the Prosecutor (Claim 28) Is Procedurally
Barred Under *Clark*, Does Not Concern an Alleged
Violation of Federal Law, Is Based on an Inaccurate
Understanding of the Facts, and Has No Legal Merit**

During a pre-trial *Marsden* hearing on Luo's request for substitute counsel,

Luo moved to dismiss her case on speedy trial violations. The trial court refused to

entertain the motion as it was not properly noticed, the prosecutor had no

opportunity to respond, and the hearing itself was not the place for such a motion.

Now, Luo claims that the court erred in refusing to consider her motion to dismiss

due to speedy trial violations because it was untimely and because the prosecution

was not present. (ECF Doc. 33 at 92; ECF Doc. 3 at 224-225 [RT 27-28].) As an

initial matter, this claim is not cognizable because it fails to allege a violation of

federal law. *Estelle*, 502 U.S. at 63 ("it is not the province of a federal habeas court

to reexamine state-court determinations on state-law questions."). Luo's claim is

premised on the court's allegedly incorrect interpretation of state procedural rules

and cites only to California case law. (ECF Doc. 33 at 92.) As previously explained,

a petitioner  may not "transform a state-law issue into a federal one merely by

asserting a violation of due process." *Langford,* 110 F.3d at 1389. As such, Luo's

request for habeas relief must be denied.

Furthermore, because this previously-unexhausted claim was not raised in

Luo's first state habeas petition, the superior court analyzing his second state

habeas petition found it procedurally barred as successive. (Lodgment 2 at 4-5); *See

also In re Clark*, 5 Cal. 4th at 767-768; *Carpio v. Hill*, 2023 WL 3829687, at *3-*5

(the *Clark* rule is independent and adequate state procedural bar to federal habeas

relief). In any event, her claim is baseless and premised on an inaccurate recitation

of the proceedings below. It strains credulity to suggest that federal law even

allowed, let alone required, the state court to grant a substantive motion to dismiss

without affording the prosecution notice and the opportunity to respond. *See*

1    *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 356 (2006) (our adversarial system

2    "relies chiefly on the *parties* to raise significant issues and present them to the

3    courts in the appropriate manner at the appropriate time for adjudication")

4    (emphasis in original); *Stone v. Federal Deposit Ins. Corp.,* 179 F.3d 1368, 1376

5    (Fed.Cir.1999) (the introduction of new and material information by means of *ex*

6    *parte* communications to the deciding official undermines due process guarantee of

7    notice and the opportunity to respond).

8        Finally, contrary to Luo's representations, the court in fact addressed the

9    merits of her request, noting that she repeatedly waived her speedy trial rights and

10   that the length of delay was not unreasonable in light of legitimate continuances to

11   prepare for trial and the difficulties posed by the pandemic. (ECF Doc. 3 at 209-

12   211, 223-226 [RT 12-14, 26-29].) Finally, any constitutional error on the part of the

13   court was harmless beyond a reasonable doubt because, as fully explained earlier in

14   response to claim 27, Luo's speedy trial argument is unmeritorious and thus her

15   motion to dismiss could not have succeeded.

16   **XXXI. LUO'S ARGUMENT THAT THE TRIAL COURT ERRED IN DENYING HER**
     **SUBSTITUTION OF COUNSEL MOTION BASED SOLELY ON THE**
17   **COMPETENCE OF HER ATTORNEY (CLAIM 29) IS PROCEDURALLY**
     **BARRED UNDER *CLARK* AND *DIXON*, MISREPRESENTS THE RULING OF**
18   **THE TRIAL COURT, AND IS UNAVAILING**

19       Luo argues that the court violated due process by denying her *Marsden* motion

20   based merely on counsel's adequacy, rather than taking into account the serious

21   breakdown in communication. (ECF Doc. 33 at 92-93) The state court addressing

22   her second habeas petition found this claim was *Dixon* barred due to Luo's failure

23   to raise it on direct appeal and *Clark* barred because it was raised for the first time

24   in a successive petition (both independent and adequate procedural bars to federal

25   habeas relief). (Lodgment 2 at 4-5); *see also Dixon*, 41 Cal. 2d at 759; *In re Clark*,

26   5 Cal. 4th at 767-768. Luo cannot show cause to excuse this default because, as will

27   be fully explained in response to claim 32, she cannot demonstrate ineffective

28   assistance of appellate counsel. *See Davila,* 137 S. Ct. at 2065 (Attorney error that

79

does not violate the Constitution is attributed to the petitioner). And no prejudice occurred from the state court's refusal to address the substance of her meritless claim.

For starters, the record reflects that Luo's request for substitution of counsel was not premised on a complete "breakdown in communication" as she now alleges. (ECF Doc. 33 at 92-93; ECF Doc. 3 at 55-70 [CT 42-57].) Instead, Luo sought different counsel only to advance her motion to dismiss because of an alleged "conflict of interest" with the public defender's office, whom she alleged was partially to blame for denial of her speedy trial rights. (ECF Doc. 3 at 55-70 [CT 42-57],198-199, 202, 217 [RT 1-2, 5, 20].) Once the trial court declined to grant her dismissal, Luo appeared willing to accept appointed counsel representing her at trial.  (ECF Doc. 3 at  225-226, 228 [RT 28-29, 31].)

Even if the argument Luo now advances were appropriately considered, it is incorrect. Contrary to her assertion, the trial court did not deny her *Marsden* motion simply upon finding that counsel was competent or that his representation was adequate. Rather, the court carefully inquired into the nature of the relationship and communication between counsel and Luo. (ECF Doc. 3 at 217-223 [RT 20-26].) The court confirmed that counsel had conferred with Luo at length on two occasions to discuss her rights, the charges and potential punishment, and trial strategy, and obtained counsel's representation that any problems stemmed only from an "impasse" over the motion to dismiss and that he could effectively represent her. (ECF Doc. 3 at 217-222 [RT 20-25].) Accordingly, the court determined not only that counsel was competent, but also ensured that there was no "irreconcilable conflict" between Luo and her appointed attorney. (ECF Doc. 3 at 223 [RT 26].)

**XXXII.  LUO'S VARIOUS CLAIMS OF PROSECUTORIAL ERROR (CLAIM 30)
ARE ALL PROCEDURALLY DEFAULTED UNDER *DIXON* AND THE
CONTEMPORANEOUS OBJECTION RULE; THESE CLAIMS ARE ALSO
MERITLESS BECAUSE LUO CANNOT SHOW THAT ANY ALLEGED
ERROR WAS SO EGREGIOUS AS TO AFFECT THE FUNDAMENTAL
FAIRNESS OF THE ENTIRE TRIAL PROCEEDING**

In her thirtieth claim, Luo raises a number of alleged acts of prosecutorial
misconduct at trial, alleging that the prosecutor "overstepped the bounds of that
propriety and fairness which should characterize the conduct of such an officer[.]"
(ECF Doc. 33 at 93-94.) Specifically, she asserts that the prosecutor: 1) unlawfully
introduced and misrepresented Luo's prior "compelled" testimony; 2) made
"inappropriate or inflammatory suggestions;" 3) referred to facts not in evidence; 4)
improperly vouched for the prosecution witness  "while at the same time
withholding exculpatory evidence;" and 5) improperly expressed opinions to the
jury. (ECF Doc. 33 at 94-99.) None of these claims have merit.

First, these claims are all procedurally barred. The argument that the
prosecutor unlawfully used and inaccurately referenced her prior testimony is
barred by the contemporaneous objection rule because the appellate division
rejected this claim on direct appeal, finding that Luo failed to object in the
proceedings below. (ECF Doc. 3 at 7; Lodgment 2 at 4); *see also Wainwright v.
Sykes,* 433 U.S. at 87; *Vansickel v. White,* 166 F.3d at 957-958. With regard to her
remaining prosecutor misconduct claims, the superior court rejecting Luo's second
habeas petition denied relief because such claims were *Dixon* barred by Luo's
failure to raise them on appeal. (Lodgment 2 at 4); *see also Dixon*, 41 Cal. 2d at
759; *Johnson v. Lee*, 578 U.S. at 608-609.

In order to escape these procedural bars, Luo alleges ineffective assistance of
trial counsel in failing to object to the prosecutor's purported error and ineffective
assistance of appellate counsel for failure to raise the claims on direct appeal.
However, as explained earlier in response to claims 14 and 17, and as will be later
explained in response to claim 32, Luo cannot establish cause to excuse her default

1  because she has not met *Strickland*'s requirements for demonstrating
2  constitutionally ineffective assistance. *See Davila,* 137 S. Ct. at 2065 (attorney error
3  that does not violate the Constitution is attributed to the petitioner). Furthermore,
4  Luo suffered no actual prejudice because these claims are meritless.

5       As previously explained, where a petitioner raises a constitutional claim of
6  prosecutorial error, habeas relief is warranted only if the conduct was so egregious
7  as to have infected the entire trial, rendering it fundamentally unfair. *Darden v.*
8  *Wainwright*, 477 U.S. at 181; *Tan v. Runnels*, 413 F.3d at 1112. The "touchstone of
9  due process analysis in cases of alleged prosecutorial misconduct is the fairness of
10  the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. at 219.
11  With regard to claims of error from closing argument, a prosecutor's remarks do
12  not violate the Constitution where erroneous statements are isolated or limited in
13  nature and the weight of evidence suggests they did not affect the verdict. *See*
14  *Hovey v. Ayers*, 458 F.3d at 912; *Beardslee v. Woodford*, 358 F.3d at 588.

15       Luo's first allegation of prosecutor error regarding her "compelled" prior
16  testimony is identical to the argument she separately raised in claim 9. (ECF Doc.
17  33 at 48-52, 94.) Respondent addressed this argument previously. Luo's complaints
18  regarding "inflammatory suggestions" are likewise unfounded. The prosecutor
19  accurately characterized recorded incriminating statements made by Luo and urged
20  the jury to draw the reasonable inference that she intended to damage the door by
21  hitting it with her key. (ECF Doc. 4 at 168-169 [RT 267-268, 291-293].) Luo's
22  present conjecture about the possibility of an unrecorded denial or the existence of
23  metal door knockers (ECF Doc. 33 at 94-96) does nothing to prove that the
24  prosecutor's comments were improper, let alone that they impacted the fundamental
25  fairness of her trial.
26
27
28

1    Luo next claims that the prosecutor relied on facts not in evidence during

2    argument[15] because there was "no evidence" that she was in a dating relationship

3    with the victim and the prosecutor's use of the term "dark of the night" was

4    improper because there was a light bulb above the victim's door. (ECF Doc. 33 at

5    96-98.) As fully analyzed in response to claims 2, 8, 15, and 20, the record supports

6    the comments and inferences put forth by the prosecutor. Regardless, any

7    misstatement could not have infected the entire proceeding because the jury is

8    presumed to follow the court's instruction to base its verdict on the evidence itself,

9    not attorney argument. (ECF Doc. 3 at 137, 142 [CT 124, 129]); *Weeks v.*

10   *Angelone*, 528 U.S. at 234; *Mezzles v. Katavich*, 731 F. App'x at 642.

11   Luo's fourth theory of prosecutor misconduct, i.e. that the prosecutor vouched

12   for the victim witness while "withholding exculpatory evidence" about his

13   credibility, is equally unpersuasive. As already explained in response to Luo's

14   *Brady* arguments, (claims 4-6 ) the prosecution did not withhold any material

15   exculpatory evidence. Additionally, improper vouching occurs only when the

16   prosecutor "places the prestige of the government behind the witness by providing

17   personal assurances of the witness's veracity." *United States v. Stinson*, 647 F.3d

18   1196, 1212 (9th Cir. 2011). Here, the prosecutor merely argued for the credibility of

19   the victim's testimony—in response to challenges by the defense (ECF Doc. 4 at

20   180, 186-187 [RT 279, 285-286])—based on the plausibility of his account and the

21   circumstances under which it was offered. (ECF Doc. 4 at 189-192 [RT 288-291].)

22   In any event, habeas relief may not be granted merely because the federal court

23   might disapprove of the prosecutor's behavior.  *Sechrest v. Ignacio*, 549 F.3d at

24

25   [15] To the extent that this claim is based on statements made during opening

26   argument, this claim is untenable because opening statements are merely a "prediction" of what the prosecution reasonably believes the evidence will show,

27   even if it ultimately does not. *See United States v. Jones*, 592 F.2d 1038, 1044,  n. 9 (9th Cir. 1979)

28

807.  The prosecutor's comments could not have materially affected the verdict because the victim's testimony was in fact credible, and corroborated by photo and video evidence, as well as Luo's own incriminating admissions and stipulations.

Lastly, Luo objects to the prosecutor's remark that "by the rules of the restraining order, if [Luo] posted a post that said, like, 'hey, [the victim], he's a nice guy,' that's a violation of the restraining order." (ECF Doc. 4 at 194-195 [RT293-294].) Specifically she claims that this constituted an improper "personal opinion" about Luo's guilt because "the restraining order did not pass constitutional muster." (ECF Doc. 33 at 99.) As already explained in response to claims 2 and 3, the parties stipulated to the lawfulness of the TRO and DVRO, and the state courts reasonably determined that these orders did not violate the First Amendment. Further, as indicated, a defendant rarely suffers constitutional prejudice from a prosecutor's brief and isolated comment, especially where it is "clearly recognizable as an advocate's hyperbole." *Sandoval*, 4 Cal. 4th at 184; *Hovey v. Ayers*, 458 F.3d at 912. And even if erroneous, this hypothetical was immaterial to the verdict reached, as Luo was alleged to have violated the orders by posting and failing to remove disparaging, harassing content and explicit photos of the victim. (ECF Doc. 3 at 79 [CT 66]; ECF Doc. 4 at 23-25, 171-173, 175 [RT 122-124, 270-272, 274].)

In sum, the prosecutor did not commit any error warranting federal relief. For the same reasons, Luo should not be excused from her procedural default of these arguments.

## XXXIII. LUO'S CLAIM OF CUMULATIVE ERROR (CLAIM 31) FAILS BECAUSE SHE CANNOT DEMONSTRATE PREJUDICE UNDER THE FEDERAL STANDARDS ARTICULATED IN AEDPA AND *BRECHT*

Luo contends that the cumulative effect of her complained-of errors justifies habeas relief, even if no single claim reached that threshold. (ECF Doc 33 at 99-

1   102.) She is incorrect, and this argument was properly rejected in the state court

2   proceedings.[16]

3       "[A] state court's harmless-error determination qualifies as an adjudication on

4   the merits under AEDPA." *Brown v. Davenport*, 142 S. Ct. at 1520. Where a

5   petitioner challenges a state court's finding of harmless error on federal habeas

6   review, he must satisfy two distinct tests.  Petitioner must prove that the state

7   court's conclusion was so unreasonable that "*every* fair-minded jurist would agree

8   than [the] error was prejudicial." *Id.* at 1524-1525.  In other words, the state court's

9   error must be both obvious and indisputable to overcome the relitigation bar erected

10  in section 2254(d).  If a petitioner can overcome this stringent showing, he still

11  must show prejudice under the federal standard articulated in *Brecht*, 507 U.S. 619,

12  i.e. that the constitutional violation had a substantial and injurious effect or

13  influence in determining the jury's verdict.  *Brecht*, 507 U.S. at 637.

14      Likewise, "cumulative error warrants habeas relief only where the errors have

15  'so infected the trial with unfairness'" that their combined impact "had a

16  'substantial and injurious effect or influence on the jury's verdict.'"  *Parle v.*

17  *Runnels*, 505 F.3d 922, 927–928 (9th Cir. 2007) (*quoting Donnelly,* 416 U.S. at

18  643; *Brecht,* 507 U.S. at 637).  Furthermore, where "the evidence of guilt is

19  otherwise overwhelming," then even the cumulative effects of multiple errors "are

20  considered 'harmless' and the conviction will generally be affirmed."  *Parle*, 505

21  F.3d at 927–928; *United States v. Berry,* 627 F.2d 193, 201 (9th Cir.1980)).

22

23

24

25

26      [16] The California Supreme Court summarily denied this claim in Luo's first
    and second round of state habeas petitions. (See ECF Doc. 6 at 3, 114-116;
27  Lodgment 7.) The last reasoned decision addressing this claim on the merits is the
    superior court's denial of Luo's second state habeas petition. (Lodgment 2 at 7-8.)
28

85

In denying this claim as part of Luo's second state habeas petition, the state court identified the appropriate legal standards for cumulative error under both state law and federal due process requirements:

> "Under the cumulative error doctrine, the reviewing court must 'review each allegation and assess the cumulative effect of any errors to see if it is reasonably probable the jury would have reached a result more favorable to defendant in their absence.' When the cumulative effect of errors deprives the defendant of a fair trial and due process, reversal is required. Additionally, multiple errors may create a "negative synergistic effect, rendering the degree of overall unfairness to defendant more than that flowing from the sum of the individual errors." Under this standard, which is expressed in substantially the same manner as the review for prejudice required by *People v. Watson* (1956) 46 Cal.2d 818, 299 P.2d 243, there is a reasonable probability of a more favorable result when there exists "at least such an equal balance of reasonable probabilities as to leave the court in serious doubt as to whether the error affected the result."  ... The cumulative prejudice doctrine is based on an examination of the "entire record." *(People v. Ka Yang* (2021) 67 Cal.App.5th 1, 52-53 [internal citations omitted].)

(Lodgment 2 at 7.) Applying these guiding principles, the court found no cumulative error, explaining:

> Nearly all of petitioner's claims of error have already been considered and rejected either via direct appeal or prior petition for writ of habeas corpus. The appellate court reviewed the entire record and found no error. Additional review does not disclose cumulative error, particularly in light of petitioner's repeated unsuccessful attempts to overturn the Jury's verdict.

(Lodgment 2 at 7-8.) Luo offers no explanation of how the state court's conclusion misconstrued or misapplied established Supreme Court precedent, instead opting to reassert the same arguments considered and rejected by the superior court. Consequently, she cannot show entitlement to relief under Section 2254.

## XXXIV. THE STATE COURT DECISION REJECTING LUO'S CLAIM OF INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL (CLAIM 32) REASONABLY APPLIED FEDERAL LAW; COUNSEL COMPLIED WITH THE STATE LAW PROCEDURES ARTICULATED IN *WENDE*, AND INDEPENDENT REVIEW OF THE TRIAL RECORD BY THE COURT ON DIRECT APPEAL SHOWED NO MERITORIOUS ISSUES

Luo also alleges that she received ineffective assistance of her appellate counsel because, after reviewing the record, counsel identified no meritorious issue to raise on appeal. (ECF Doc. 33 at 102.) The state courts'[17] rejection of this claim did not contravene or unreasonably apply federal law, as established by Supreme Court authority.

Luo's counsel here followed the standard California procedures established in *People v. Wende,* 25 Cal. 3d 436, 441-442 (1979). (ECF Doc. 3 at 3-4; Lodgment 2 at 5-6) The United States Supreme Court has summarized the *Wende* procedures as follows:

> [C]ounsel, upon concluding that an appeal would be frivolous, files a brief with the appellate court that summarizes the procedural and factual history of the case, with citations of the record. He also attests that he has reviewed the record, explained his evaluation of the case to his client, provided the client with a copy of the brief, and informed the client of his right to file a *pro se* supplemental brief. He further requests that the court independently examine the record for arguable issues. … he is silent on the merits of the case and expresses his availability to brief any issues on which the court might desire briefing. See generally *id.,* at 438, 441-442, 158 Cal.Rptr. 839, 600 P.2d, at 1072, 1074-1075.

> The appellate court, upon receiving a "*Wende* brief," must "conduct a review of the entire record," regardless of whether the defendant has filed a *pro se* brief. *Id.,* at 441-442, 158 Cal.Rptr. 839, 600 P.2d, at 1074-1075. … If the appellate court, after its review of the record pursuant to *Wende,* also finds the appeal to be frivolous, it may affirm. See *id.,* at 443, 158 Cal.Rptr. 839, 600 P.2d, at 1076 (majority

---

[17] The California Supreme Court summarily denied this claim in Luo's first and second round of state habeas petitions. (See ECF Doc. 6 at 3, 65; Lodgment 7.) The last reasoned decision addressing this claim on the merits is the superior court's denial of Luo's second state habeas petition. (Lodgment 2 at 5-6.)

1    opinion). If, however, it finds an arguable (*i.e.,* nonfrivolous) issue, it
2    orders briefing on that issue. *Id.,* at 442, n. 3, 600 P.2d, at 1075, n. 3

3    *Smith v. Robbins*, 528 U.S. 259, 265-266 (2000). The High Court has specifically
4    found that California's *Wende* procedures provide the safeguards necessary to
5    constitute adequate and effective appellate review, as the Fourteenth Amendment
6    requires. *Id.* at 276, 278-279; *see also Evitts v. Lucey,* 469 U.S. 387, 392 (1985).
7    Consequently, Luo bears an onerous burden under *Strickland* to show that her
8    counsel rendered objectively deficient performance in choosing to file a *Wende*
9    brief. *See Smith*, 528 U.S. at 284-286. Furthermore, "where, as here, the defendant
10   has received appellate counsel who has complied with a valid state procedure for
11   determining whether the defendant's appeal is frivolous, and the State has not at any
12   time left the defendant without counsel on appeal, there is no reason to presume that
13   the defendant has been prejudiced." *Id.* at 286. Rather, Luo must show a reasonable
14   probability of a more favorable outcome if counsel had filed a merits brief, rather
15   than a *Wende* brief. *Id.*; *see also Strickland,* 466 U.S., at 694.

16       The state court evaluating this claim in Luo's second habeas petition identified
17   the appropriate case authority and fairly summarized the legal principles at issue:

18   The duty to provide effective assistance of counsel extends to appellate
19   counsel. (See *In re Smith* (1970) 3 Cal.3d 192, 202-203 ["[T]he
     inexcusable failure of petitioner's appellate counsel to raise crucial
20   assignments of error, which arguably might have resulted in a reversal,
     deprived petitioner of the effective assistance of appellate counsel to
21   which he was entitled under the Constitution"],) "Experienced
22   advocates since time beyond memory have emphasized the importance
     of winnowing out weaker arguments on appeal and focusing on one
23   central issue if possible, or at most on a few key issues." *(Jones v.
24   Barnes* (1983) 463 U.S. 745, 751-752.) "[T]he role of the advocate
     'requires that he support his client's appeal to the best of his ability'...
25   For judges to second-guess reasonable professional judgments and
26   impose on appointed counsel a duty to raise every 'colorable' claim
     suggested by a client would disserve the [] goal of vigorous and
27   effective advocacy ..." *(Id.* at p. 754.)
28

(Lodgment 2 at 5.) The court further explained the state's *Wende* procedures and

its relationship to an appellate attorney's obligations to provide effective assistance:

> Petitioner essentially argues that counsel provided ineffective
> assistance of counsel for filing a *Wende* brief instead of presenting
> substantive arguments on appeal. Petitioner does not establish that she
> was prejudiced by appellate counsel's representation or that she would
> have obtained a different result had appellate counsel argued specific
> issues. First, "The mere fact appellate counsel has not raised every
> possible or conceivable issue does not...establish that appellate counsel
> is ineffective." *(People v. Abilez* (2007) 41 Cal.4th 472, 536.) Pursuant
> to *People v. Wende* (1979) 25 Cal.3d 436, 442, when appellate counsel
> submits a brief on appeal that either raises no specific issues or
> describes the appeal as frivolous, the Court of Appeal is required to
> conduct a review of the entire record for potential issues. "This court's
> decision in *Wende* interpreted *Anders* to require the appellate court 'to
> conduct a review of the entire record whenever appointed counsel
> submits a brief which raises no specific issues or describes the appeal
> as frivolous. This obligation is triggered by the receipt of such a brief
> from counsel and does not depend on the subsequent receipt of a brief
> from the defendant personally.' (Citation.) The court 'recognize[d] that
> under this rule counsel may ultimately be able to secure a more
> complete review for his client when he cannot find any arguable issues
> than when he raises specific issues, for a review of the entire record is
> not necessarily required in the latter situation. [Citations.]'" *(People v.
> Kelly* (2006) 40 Cal.4th 106, 107-108.)

(Lodgment 2 at 5.) Applying these principles, the court reviewed Luo's claim and

determined that she failed to demonstrate that her counsels' actions amounted to

ineffective assistance:

> Here, counsel filed a *Wende* brief on petitioner's behalf to trigger the
> reviewing court's obligation to consider the entire record for any
> potential issue. Under *Kelly, supra,* appellate counsel's brief invited a
> more complete review of petitioner's case. That appointed counsel for
> petitioner did not identify any arguable issues on appeal does not
> automatically render counsel's assistance ineffective. The reviewing
> court in petitioner's case not only independently reviewed the entire
> record as required by *Wende, supra,* and found no arguable issues, but
> allowed petitioner to request (and be appointed) new appellate counsel

1
2
3

and file supplemental briefing. Based on this record, it does not appear
that petitioner received ineffective assistance of appellate counsel, and
her conclusory statements fail to establish error in light of the entire
record.

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(Lodgment 2 at 5-6.) Luo has failed to show how this conclusion ran afoul of clearly established federal law. Counsel's decision to file a *Wende* brief was not ineffective assistance because the right to the aid of appellate counsel "does not include the right to bring a frivolous appeal and, concomitantly, does not include the right to counsel for bringing a frivolous appeal." *Smith*, 528 U.S. at 278. And even if Luo could identify a colorable potential claim, she still cannot establish deficient performance. "Effective appellate counsel should not raise every nonfrivolous argument on appeal," but instead is only required to present arguments "most likely to succeed." *Davila,* 137 S. Ct. at 2067; *see Jones v. Barnes,* 463 U.S. 745, 751–753 (1983); *Murray*, 477 U.S. at 486 ("the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it," does not constitute ineffective assistance for purposes of excusing procedural default). Finally, Luo cannot show the possibility of a more favorable outcome had counsel filed a merits brief. *See Strickland,* 466 U.S., at 694. The appellate panel conducted a comprehensive and independent review of the trial record and determined that no meritorious or even arguable issue existed. (ECF Doc. 3 at 4 ("We have examined the record in accordance with our obligations under *Wende* and *Anders* and find no arguable issues on appeal."), 9 ("Our independent review of the record has not disclosed an arguable issue.").) And even here, Luo has failed to raise a single meritorious claim, further confirming that appellate counsel's decision to file a non-issue brief was professionally reasonable and not prejudicial. Accordingly, Luo is not entitled to habeas relief on this claim.

90

1

2

**XXXV. THE STATE COURT REASONABLY CONCLUDED THAT LUO'S
CONCLUSORY ASSERTION OF ACTUAL INNOCENCE (CLAIM 33) WAS
UNSUPPORTED BY ANY EVIDENCE OR LEGAL AUTHORITY**

3      In this claim Luo asserts her actual innocence of the charges she was convicted

4   of. (ECF Doc. 33 at 102.) As an initial matter, this claim is not cognizable absent

5   proof of a specific violation of federal law. *McQuiggin v. Perkins*, 569 U.S. 383,

6   384 (2013) (the Supreme Court "has not resolved whether a prisoner may be

7   entitled to habeas relief based on a freestanding actual-innocence claim"); *Herrera*

8   *v. Collins*, 506 U.S. 390, 400 (1993) (actual innocence claims "have never been

9   held to state a ground for federal habeas relief absent an independent constitutional

10   violation occurring in the underlying state criminal proceeding… This rule is

11   grounded in the principle that federal habeas courts sit to ensure that individuals are

12   not imprisoned in violation of the Constitution--not to correct errors of fact."). In

13   any event, this claim is meritless. As previously explained, the evidence established

14   each element of the offenses beyond a reasonable doubt. In rejecting this claim in

15   Luo's first state habeas petition, the state court explained: "Petitioner also generally

16   asserts 'actual innocence,' claiming that false evidence and perjured testimony were

17   presented to the jury. This claim is wholly conclusory and unsupported by any

18   evidence or legal authority." (ECF Doc. 6 at 22.) Luo offers no explanation of how

19   this analysis contravenes or misapplies established Supreme Court precedent. For

20   the same reason, Luo cannot establish a "fundamental miscarriage of justice"

21   warranting relief from the numerous procedural bars to many of her claims. *See*

22   *Schlup v. Delo*, 513 U.S. 298, 324 (1995) ("miscarriage of justice" exception to

23   procedural default applies only where a "constitutional error has resulted in the

24   conviction of one who is actually innocent of the crime").

25

26

27

28

91

1

**XXXVI. L**UO'S **A**RGUMENT **T**HAT THE **S**TATE **C**OURT **T**HAT **D**ENIED **H**ER **F**IRST **S**TATE **H**ABEAS **P**ETITION **U**NREASONABLY **D**ETERMINED THE **F**ACTS OF **H**ER **I**NEFFECTIVE **A**SSISTANCE **C**LAIMS (C**LAIM** 34) **D**OES **N**OT **R**AISE AN **I**NDEPENDENT **C**LAIM FOR **R**ELIEF AND **I**S **M**ERITLESS; THE **C**OURT **A**PPROPRIATELY **A**PPLIED **R**ELEVANT **F**EDERAL **L**AW AND **H**AD **N**O **O**BLIGATION TO **C**ONSIDER **E**VIDENCE **T**HAT **S**HE **F**AILED TO **P**ROVIDE

2

3

4

5
Luo contends that the state superior court's rejection of her habeas corpus

6
claims of ineffective assistance was based on an unreasonable determination of the

7
facts because the court did not review the trial transcript that she failed to provide

8
with her petition. (ECF Doc. 33 at 102-103; ECF Doc. 5 at 8.) As this Court

9
correctly noted in in its screening of Luo's petition, this is not an independent

10
claim, but rather an argument for why AEDPA deference should not apply to the

11
ineffective assistance claims raised in her first state habeas petition. (ECF Doc. 12

12
at 9.) In any event, Luo's contention is meritless.

13
In analyzing the deficiencies in Luo's presentation of her ineffective assistance

14
claims, the state court explained:

15
"A habeas corpus petitioner bears the burden of establishing that

16
the judgment under which he or she is restrained is invalid." (*In re Cox* (2003) 30 Cal.4th 974, 997.) "For purposes of collateral attack, all

17
presumptions favor the truth, accuracy, and fairness of the conviction and sentence; defendant thus must undertake the burden of overturning

18
them. Society's interest in the finality of criminal proceedings so

19
demands." (*In re Roberts* (2003) 29Cal.4th 726, 740-741.)

20
[…]

21
Petitioner asserts that trial counsel provided ineffective

22
assistance by failing to investigate or interview witnesses prior to their testifying at trial. Petitioner claims that none of the public defenders

23
who represented her made no effort to conduct a meaningful

24
investigation, including subpoenaing phone records, screenshots, videos, photos, and text messages from the victim, or securing the

25
testimony of the victim's friend who was allegedly present at the time

26
of the vandalism. Petitioner does not demonstrate that she has personal knowledge of what investigation counsel did or did not do. She also

27
fails to demonstrate that the victim was inadequately cross-examined,

28
particularly as she does not include a copy of the trial transcript. "To

satisfy the initial burden of pleading adequate grounds for relief, an
application for habeas corpus must be made by the petition, and if the
imprisonment is alleged to be illegal, the petition must also state in
what the alleged illegality consists. The petition should both (i) state
fully and with particularity the facts on which relief is sought as well
as (ii) include copies of reasonably available documentary evidence
supporting the claim, including pertinent portions of trial transcripts
and affidavits or declarations. Conclusory allegations made without
any explanation of the basis for the allegations do not warrant relief,
let alone an evidentiary hearing." (*People v. Duvall* (1995) 9 Cal.4th
464, 474-475.)

Petitioner also contends that counsel provided ineffective
assistance by failing to call any defense witnesses. Petitioner suggests
that counsel should have called the victim's friend who was present the
night of the vandalism, the 911 operator, and the police officers that
responded to the scene, but she does not adequately explain what their
testimony would have been or how it would have raised doubts about
her guilt. She also does not provide sufficient evidence or authority to
support her claims regarding trial counsel's failure to object to the
presentation of a particular video pursuant to Evidence Code section
352, failure to object to the introduction of petitioner's testimony from
a prior civil proceeding, failure to object to the trial court's denial of
hardship request by juror number four, and general poor tactical
decisions. As noted above, it is petitioner's burden to supply any
relevant documents, including a trial transcript, and to provide relevant
authority so that the court may make a meaningful analysis of her
claims.

(ECF Doc. 5 at 5-7.) Luo has failed to show how these conclusions ran afoul of

clearly established federal law. Like its state counterparts, federal case law has held

that "[i]t is well-settled that '[c]onclusory allegations which are not supported by a

statement of specific facts do not warrant habeas relief.' " *Jones*, 66 F.3d at 204-

205; *James v. Borg,* 24 F.3d at 26. Furthermore, federal law does not require a state

court to supplement or further develop the evidentiary record at a post-conviction

proceeding, and its decision not to do so does not render its fact-finding process

unreasonable so long as the state court could have reasonably concluded that record

already before it was sufficient to resolve any requisite factual questions.  *See Hibbler v. Benedetti*, 693 F.3d 1140, 1148 (9th Cir. 2012); *Wood v. Ryan*, 693 F.3d 1104, 1122 (9th Cir. 2012); *Perez v. Rosario*, 459 F.3d 943, 950 (9th Cir. 2006). Consequently, Luo cannot show that the state court acted unreasonably in not considering materials that she failed to provide in support of her habeas petition. *See, e.g., Jones*, 66 F.3d at 204-205 (upholding denial of habeas relief where petitioner's constitutional claim, advanced "[w]ithout reference to the record or any document," did not meet the "specificity requirement."); *Hibbler v. Benedetti*, 693 F.3d at 1148 (No evidentiary hearing required where "the evidence before the state court, taken as a whole, clearly belied [petitioner's] allegations.").

In any event, any alleged deficiencies in the state court's procedure in adjudicating Luo's first state habeas petition could not have affected the outcome of her claims. As previously mentioned, a three-judge panel of the Superior Court's Appellate Division conducted a thorough, independent review of the entire trial record and concluded that no meritorious ineffective assistance claims could have been raised on appeal. (ECF Doc. 3 at 4, 8, 9.) Finally, for the reasons articulated in response to  claims 10-18, Luo has failed to establish that she received ineffective assistance of counsel under *Strickland*, even if reviewed *de novo*.

**XXXVII. LUO'S CLAIM THAT THE TRIAL COURT GAVE AN INAPPLICABLE JURY INSTRUCTION REGARDING HER RESTRAINING ORDERS (CLAIM 35) DOES NOT WARRANT FEDERAL HABEAS RELIEF BECAUSE ANY ERROR DID NOT LOWER THE PROSECUTION'S BURDEN OF PROOF AND THE ELEMENT IN QUESTION WAS SUPPORTED BY OVERWHELMING EVIDENCE**

Finally, Luo alleges that the trial court provided a jury instruction that was unrelated to the manner in which she was charged with violating her restraining orders. (ECF Doc. 33 at 103.) Specifically, she faults the court for providing an instruction that tracked the language of the prosecution's initial complaint (violating order not to contact or disturb the victim) rather than the theory the prosecutor ultimately proceeded under through the amended information (Luo's

1   violation of the court order to remove the victim's private photographs she posted

2   online). (ECF Doc. 33 at 103; ECF Doc. 3 at 159, 172-173 [CT 146, 159-160].) The

3   California Supreme Court did not err in summarily denying this claim (Lodgment

4   7) because, like her previous arguments, this one does not warrant habeas relief.

5        California law provides that "in criminal cases, even in the absence of a

6   request, the trial court must instruct on the general principles of law relevant to the

7   issues raised by the evidence." *People v. Middleton* 52 Cal. App. 4th 19, 30 (1997)

8   (*Citations omitted*).  However, instructional error occurs only where there is a

9   reasonable likelihood the jurors would have understood the instructions in a manner

10  that violated a defendant's rights. *People v. Webb* 25 Cal. App. 5th 901, 905-907

11  (2018); *cf. People v. Lopez* 198 Cal. App. 4th 698, 708 (2011)  ("Instructions

12  should be interpreted, if possible, to support the judgment rather than defeat it if

13  they are reasonably susceptible to such interpretation").

14       In this case, the prosecutor and defense counsel both informed the jury—

15  consistent with the amended information—that Luo was alleged to have violated

16  the temporary restraining order and domestic violence restraining order by violating

17  the injunction to deactivate websites containing private photographs of the victim

18  and refrain from further posting such images online. (ECF Doc. 3 at 79 [CT 66];

19  ECF Doc. 4 at 23-25, 171-173, 175, 178-179 [RT 122-124, 270-272, 274, 277-

20  278].) In addition, the parties stipulated, in relevant part, that the lawful temporary

21  and permanent restraining orders included the following terms: "Ms. Luo is to stop

22  posting online content about [the victim] and his company Gorgeous Painting;"

23  "Ms. Luo is to remove content on the Internet relating to video, pictures, blogs, or

24  websites about [the victim] created by Ms. Luo;" "Ms. Luo is to stop posting the

25  picture or likeness of [the victim], or refer to him by name on any social media

26  website or blog;" and " Ms. Luo is to remove any pictures or references of [the

27  victim] from any social media website or blog that she posted." (ECF Doc. 4 at

28

1   119-120 [RT 218-219].) As such, there is no reasonable probability that the juror's

2   misunderstood their duties or the nature of their inquiry to Luo's detriment.

3         Furthermore, even if Luo could have demonstrated that the jury instructions

4   were somehow deficient, she cannot show a violation of federal law. "[N]ot every

5   ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a

6   due process violation." *Middleton v. McNeil* 541 U.S. 433, 437 (2004). Instead, an

7   erroneous instruction in a criminal trial violates due process where it fails to give

8   effect to the requirement that the State must prove every element of a charged

9   offense. *Id.* at 437.

10        Here, the trial court's instruction to the jury included all essential elements of

11  California Penal Code section 273.6(a), and specifically advised the jurors that the

12  People must prove that Luo willfully violated the court's written protective order,

13  lawfully issued under the Domestic Violence Prevention Act.  (ECF Doc. 3 at 159,

14  172-173 [CT 146, 159-160]); *see also* Cal. Penal Code § 273.6; Judicial Council of

15  California Criminal Jury Instruction 2701. Therefore, any error in the court's

16  provided instructions did not alleviate the prosecution's burden of proof, and

17  therefore did not implicate federal due process guarantees.

18        Finally, even if the complained-of instructions failed to inform the jury

19  regarding an essential element of a criminal offense, no prejudice occurred. When

20  jury instructions have omitted an essential element of an offense, the error does not

21  require reversal (even under the more onerous direct appeal standard) where "the

22  omitted element was uncontested and supported by overwhelming evidence." *Neder*

23  v. *U.S.* 527 U.S. 1, 17 (1999). Here, the parties stipulated that the state court 1)

24  issued lawful orders requiring Luo to refrain from further posting images of the

25  victim online and to remove those she had already posted, and 2) informed Luo of

26  her obligations. (ECF Doc. 4 at 118-120 [RT 217-219].) The evidence conclusively

27  established that Luo failed to comply with these orders, as nude photos and videos

28  of the victim posted by Luo remained on multiple websites even up to the time of

1  trial. (ECF Doc. 4 at 80-92 [RT 179-191].) All told, the evidence supporting this

2  element was uncontested and overwhelming, and any instructional error was

3  harmless beyond a reasonable doubt. For the same reasons, Luo certainly cannot

4  demonstrate a substantial and injurious effect or influence in determining the jury's

5  verdict.  *Brecht*, 507 U.S. at 637. Therefore, Luo is not entitled to relief or further

6  evidentiary development. *Pinholster*, 563 U.S. at 181.

7                                    **CONCLUSION**

8          This Court should dismiss the Amended Petition with prejudice and deny a

9  certificate of appealability.

10

11

12

13  Dated:  November 15, 2023                    Respectfully submitted,

14                                                ROB BONTA
                                                  Attorney General of California
15                                                CHRISTOPHER P. BEESLEY
                                                  Supervising Deputy Attorney General
16

17                                                ***/s/ Michael D. Butera***
                                                  MICHAEL D. BUTERA
18                                                Deputy Attorney General
                                                  *Attorneys for Respondent*
19
    SD2022802632
20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

Case Name:   **Luo v. The People of the State**          No.   **8:22-cv-01640-MEMF-KES**
                   **of California**

I hereby certify that on <u>November 15, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter.  I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service.  In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users.  On <u>November 15, 2023</u>, I have caused to be mailed in the Office of the Attorney General's internal mail system, the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

Xingfei Luo
P.O. Box 4886
El Monte, CA 91734
*Petitioner in Pro Se*

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>November 15, 2023</u>, at San Diego, California.

| K. Yeoun | */s/ K. Yeoun* |
|----------|----------------|
| Declarant | Signature |

SD2022802632
84245964.docx