8:22-cv-01640-MEMF-KES

Supreme Court of California
Jorge E. Navarrete, Clerk and Executive Officer of the Court
Electronically RECEIVED on 2/1/2023 8:38:49 PM

Case 8:22-cv-01640-MEMF-KES   Document 51-5   Filed 11/15/23   Page 1 of 83   Page
ID #:2367

Supreme Court of California
Jorge E. Navarrete, Clerk and Executive Officer of the Court
Electronically FILED on 2/1/2023 by Biying Jia, Deputy Clerk

S278439

Name: Xingfei Luo

Address: PO BOX 4886,

El Monte, CA 91734

CDC or ID Number: _____

SUPREME COURT OF THE STATE OF CALIFORNIA

_____

_____

_____

*(Court)*

| |
|---|
| Xingfei Luo |
| Petitioner |
| vs. |
| The People of the State of California |
| Respondent |

**PETITION FOR WRIT OF HABEAS CORPUS**

No. _____

*(To be supplied by the Clerk of the Court)*

## INSTRUCTIONS—READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the superior court, you only need to file the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original of the petition and one set of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and 10 copies of the petition and, if separately bound, an original and 2 copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

Approved by the Judicial Council of California for use under rule 8.380 of the California Rules of Court (as amended effective January 1, 2018). Subsequent amendments to rule 8.380 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

**Page 1 of 6**

Form Approved for Optional Use
Judicial Council of California
HC-001 [Rev. January 1, 2019]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 8.380
*www.courts.ca.gov*

**HC-001**

**This petition concerns:**

| | |
|---|---|
| [x] A conviction | [ ] Parole |
| [x] A  sentence | [ ] Credits |
| [ ] Jail or prison conditions | [ ] Prison discipline |
| [ ] Other *(specify):* _____ | |

1. Your name: Xingfei Luo

2. Where are you incarcerated? Currently on probation

3. Why are you in custody?  [x] Criminal conviction    [ ] Civil commitment

   *Answer items a through i to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").
   Vandalism-less than $400 in damages, Disobeying domestic relations court order, Disorderly conduct unlawful dissemination of private photographs and recordings

   b. Penal or other code sections: 594(a)/(b)(2)(A) PC, 273.6(a) PC, 647(j)(4)(A) PC

   c. Name and location of sentencing or committing court:
   Superior Court of California for the County of Orange
   700 Civic Center Drive West, Santa Ana, CA 92701

   d. Case number: 19CM06724

   e. Date convicted or committed: Jul 29, 2021

   f. Date sentenced: Aug 13, 2021

   g. Length of sentence:  3 years probation

   h. When do you expect to be released? _____

   i. Were you represented by counsel in the trial court?  [x] Yes    [ ] No    *If yes, state the attorney's name and address:*
   Jorge Dominguez
   801 Civic Center Dr, Suite 400, Santa Ana, CA 92701

4. What was the LAST plea you entered? *(Check one):*

   [x] Not guilty   [ ] Guilty   [ ] Nolo contendere   [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   [x] Jury   [ ] Judge without a jury   [ ] Submitted on transcript   [ ] Awaiting trial

**HC-001**

6.  GROUNDS FOR RELIEF
    **Ground 1:** State briefly the ground on which you base your claim for relief. For example, "The trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page 4. For additional grounds, make copies of page 4 and number the additional grounds in order.)*
    See Appendix for details.

    _____
    _____
    _____
    _____
    _____
    _____
    _____

    a.  Supporting facts:
        Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts on which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel, you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is, *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*.
        See Appendix for details.

        _____
        _____
        _____
        _____
        _____
        _____
        _____
        _____
        _____
        _____
        _____
        _____

    b.  Supporting documents:
        Attach declarations, relevant records, transcripts, or other documents supporting your claim. (See *People v. Duvall* (1995) 9 Cal. 4th 464, 474.)
        See Appendix for details.

        _____
        _____
        _____
        _____
        _____
        _____

    c.  Supporting cases, rules, or other authority *(optional)*:
        (Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)
        See Appendix for details.

        _____
        _____
        _____
        _____
        _____
        _____

**HC-001**

7. **Ground 2 or Ground** _____ *(if applicable):*
See Appendix for details.

_____

_____

_____

_____

_____

_____

_____

a. Supporting facts:
See Appendix for details.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

b. Supporting documents:
See Appendix for details.

_____

_____

_____

_____

_____

_____

c. Supporting cases, rules, or other authority:
See Appendix for details.

_____

_____

_____

_____

_____

_____

HC-001

8. Did you appeal from the conviction, sentence, or commitment? [x] Yes [ ] No    If yes, give the following information:

    a. Name of court ("Court of Appeal" or "Appellate Division of Superior Court"):
       Appellate Panel, Superior Court of California for the County of Orange

    b. Result: Affirmed                c. Date of decision: 4/27/2022

    d. Case number or citation of opinion, if known: 30-2021-01216615-CL-MC-CJC

    e. Issues raised: (1) None

                  (2) _____

                  (3) _____

    f. Were you represented by counsel on appeal? [x] Yes [ ] No    If yes, state the attorney's name and address, if known:
       Robert L. Bullock

       5130 East La Palma Avenue, Suite 210, Anaheim, California, 92807-2078

9. Did you seek review in the California Supreme Court? [ ] Yes [x] No    If yes, give the following information:

    a. Result: _____      b. Date of decision: _____

    c. Case number or citation of opinion, if known: _____

    d. Issues raised: (1) _____

                  (2) _____

                  (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal (see *In re Dixon* (1953) 41 Cal.2d 756, 759):
    I received ineffective assistance of counsel

11. Administrative review:

    a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Dexter* (1979) 25 Cal.3d 921, 925.) Explain what administrative review you sought or explain why you did not seek such review:
       N/A

    b. Did you seek the highest level of administrative review available? [ ] Yes [ ] No
       *Attach documents that show you have exhausted your administrative remedies. (See People v. Duvall (1995) 9 Cal.4th 464, 474.)*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court, including this court? (See *In re Clark* (1993) 5 Cal.4th 750, 767–769 and *In re Miller* (1941) 17 Cal.2d 734, 735.)
    [✔] Yes   If yes, continue with number 13.     [ ] No   If no, skip to number 15.

HC-001

13 a. (1) Name of court: Orange County Superior Court

   (2) Nature of proceeding (for example, "habeas corpus petition"): Habeas corpus petition

   (3) Issues raised: (a) Violation of Defendant's Fifth, Sixth, and Fourteenth Amendments rights

        (b) Ineffective assistance of counsel

   (4) Result (attach order or explain why unavailable): Petition was denied

   (5) Date of decision: Oct 19, 2021

   b. (1) Name of court: Court of Appeal

   (2) Nature of proceeding: Habeas corpus petition

   (3) Issues raised: (a) Ineffective assistance of counsel

        (b)

   (4) Result (attach order or explain why unavailable): Petition was denied without prejudice as premature

   (5) Date of decision: Nov 10, 2021

   c. *For additional prior petitions, applications, or motions, provide the same information on a separate page.*

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:
No hearing was held.

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See *In re Robbins* (1998) 18 Cal.4th 770, 780.)
I received ineffective assistance of counsel

16. Are you presently represented by counsel?  ☐ Yes  ☒ No    If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court?  ☒ Yes  ☐ No    If yes, explain:
U.S. District Court FOR THE CENTRAL DISTRICT OF CALIFORNIA Case No. 8:22-cv-01640-MEMF-KES

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
Habeas corpus petitions were denied by a lower court on Oct 19, 2021 and Dec 28, 2022.

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: February 1, 2023

/s/ Xingfei Luo

(SIGNATURE OF PETITIONER)

For your protection and privacy, please press the Clear This Form button after you have printed the form.

Print this form     Save this form     Clear this form

| In Re Luo | CASE NUMBER: |
|---|---|

## ATTACHMENT: 1

13  c.  (1) Name of court: Court of Appeal

(2) Nature of proceeding: Habeas corpus petition

(3) Issues raised: violation of First, Fifth, Sixth, and Fourteenth

Amendments

(4) Result: Petition was summarily denied

(5) Date of decision: March 3, 2022

Court of Appeal, Fourth Appellate District, Division Three
Kevin J. Lane, Clerk/Executive Officer
Electronically FILED on 3/3/2022 by Debra Saporito, Deputy Clerk

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| In re XINGFEI LUO<br><br>on Habeas Corpus. | G061132<br><br>(Super. Ct. Nos. 19CM06724;<br> 30-2021-01216615)<br><br>O R D E R |

THE COURT:*

    The petition for a writ of habeas corpus, motion to transfer and consolidate the appeal in case 30-2021-01216615 with the petition in case number G061132, and motion for appointment of counsel are DENIED.

O'LEARY, P. J.

* Before O'Leary, P. J., Bedsworth, J., and Sanchez, J.

| In Re Luo | CASE NUMBER: |
|-----------|--------------|

## ATTACHMENT: 2

13  d.  (1) Name of court: Supreme Court of California

(2) Nature of proceeding: Habeas corpus petition

(3) Issues raised: violation of First, Fifth, Sixth, and Fourteenth

Amendments

(4) Result: Petition was summarily denied

(5) Date of decision: August 31, 2022

SUPREME COURT
FILED

AUG 3 1 2022

Jorge Navarrete **Clerk**

_____
Deputy

S274343

# IN THE SUPREME COURT OF CALIFORNIA

### En Banc

---

In re XINGFEI LUO on Habeas Corpus.

---

The petition for writ of habeas corpus is denied.

CANTIL-SAKAUYE

*Chief Justice*

| | CASE NUMBER: |
|---|---|
| In Re Luo | |

## ATTACHMENT: 3

13  e.  (1) Name of court: Superior Court for the County of Orange

(2) Nature of proceeding: Habeas corpus petition

(3) Issues raised: violation of First, Fifth, Sixth, and Fourteenth

Amendments

(4) Result: Denied

(5) Date of decision: December 28, 2022

**SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF ORANGE**

# MINUTE ORDER

**Case Number   M-20069 X A**

**People Vs Luo, Xingfei**

| Report Request Criteria | |
| --- | --- |
| 1. Docket Date Range | : Date filter |
| 2. Sequnce Number Range | : Sequence filter |
| 3. Docket Category | : Category filter |

| Docket Dt | Seq | Text |
| --- | --- | --- |
| 12/28/2022 | 1 | **Hearing held on 12/28/2022 at 09:00 AM in Department C5 for Chambers Work .** |
| | 2 | Judicial Officer: Cheri T Pham, Judge |
| | 3 | Clerk: T. Williams |
| | 4 | No appearance by parties. |
| | 5 | No Court Reporter present at proceedings. |
| | 6 | Having reviewed the above-captioned Writ of Habeas Corpus, the Court rules as follows: |
| | 7 | Order denying Writ of Habeas Corpus filed. |
| | 8 | Writ of Habeas Corpus filed on 10/10/2022 is denied for the reasons stated in the Order of 12/28/2022. |
| | 9 | Copy of Minute Order and Order Denying Habeas Corpus mailed to Xingfei Luo, P.O.Box 4886, El Monte, CA, 91734. |
| | 10 | Copy of Minute Order and Order Denying Habeas Corpus mailed to Orange County District Attorney, Appellate and Training Unit, 401 Civic Center Drive West, Santa Ana, California 92701. |
| | 11 | Minutes of 12/28/2022 entered on 12/29/2022. |

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ORANGE

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE

DEC 2 8 2022

DAVID H. YAMASAKI, Clerk of the Court

BY: T. Williams _____, DEPUTY

In re                                                    )
                                                         )        CASE NO. M-20069
XINGFEI LUO,                                             )
                                                         )        ORDER
            Petitioner/Defendant,                        )
                                                         )
            on Habeas Corpus.                            )
_____                 )

TO THE PEOPLE OF THE STATE OF CALIFORNIA AND TO PETITIONER:

I.

On August 6, 2019 petitioner was charged by misdemeanor complaint with vandalism (Pen. Code, § 594(a)/(b)(2)(A)), violation of a protective order (Pen. Code, § 273.6(a)), and disorderly conduct (unlawful dissemination of private photographs and recordings) (Pen. Code, § 647(j)(4)(A). On her arraignment on August 12, 2019, through her appointed counsel, petitioner entered a general time waiver. At the pretrial on September 6, 2019, the pretrial was continued to October 18, 2019 at the request of petitioner, and the general time waiver was maintained. On October 18, 2019, the pretrial was continued to January 10, 2020 at the request of petitioner, and the general time waiver was maintained. On January 10, 2020, the pretrial was continued at the People's request to February 14, 2020, and a jury trial was set on March 24, 2020. On February 14, 2020, the pretrial was continued to March 20, 2020 at petitioner's request, and the jury trial was to remain. On March 20, 2020, counsel made an appearance pursuant to Penal Code section 977 and entered a general time waiver. The jury trial was vacated and the pretrial was continued to June 26, 2020. On July 14, 2020, both parties jointly requested a pretrial date on December 4, 2020, due to COVID-19. Petitioner failed to appear at the pretrial. On December 12, 2020, counsel appeared for petitioner pursuant to Penal Code section 977, the warrant was recalled, and a pretrial was set on March 5, 2021 with the general time waiver remaining. On March 5, 2021, the pretrial was continued to March 7, 2021, with the general time waiver remaining. On May 7, 2021, a pretrial and mandatory settlement conference were set on June 8, 2021, with petitioner ordered to appear, and the general time waiver remaining. On June 8, 2021, the court set jury trial on July 19, 2021 as day 0 of 10.

On July 19, 2021, petitioner's counsel answered ready, but the People answered not ready, so the court trailed the trial to July 26, 2021. Petitioner orally moved for a *Marsden* hearing. The court denied the motion. Petitioner requested to be granted self-representation so that she could file a motion to dismiss, but requested that she be represented by appointed counsel at trial. Petitioner was advised of the perils, pitfalls, dangers, and disadvantages of self-representation, but she did not fill out the *Faretta* waiver. She stated that she wanted to have counsel but she wanted to file a motion to dismiss on her own. Later that day, petitioner filed a *Marsden* motion and a motion to dismiss. The court informed petitioner that the motion to dismiss was

1

not being accepted or considered because it was untimely and had not been served on the People, and because the People were not present. Petitioner then stated that she no longer wished to represent herself. On July 26, 2021, the People requested a continuance of the jury trial, but it was denied. The People amended the complaint, and the trial was trailed until the next day.

Trial commenced on July 27, 2021. On July 28, 2021, the People rested and petitioner's counsel made a motion pursuant to Penal Code section 1118.1, which was denied. On July 29, 2021, the jury found petitioner guilty of the three counts. On August 13, 2021, imposition of sentence was suspended and petitioner was placed on informal probation for three years with terms and conditions including domestic violence terms and a jail term of 30 days, 8 of which petitioner must serve but the remainder stayed pending successful completion of the Batterers' Treatment Program and community service.

Appointed appellate counsel filed a *Wende* brief on petitioner's behalf. Petitioner filed a supplemental brief raising five issues: (1) *Brady* violations by prosecutor's failure to disclose three pieces of allegedly favorable evidence, (2) prosecutorial error, (3) ineffective assistance of counsel, (4) "sloppy police work," and (5) violation of speedy trial rights. The Appellate Division rejected each claim of error and affirmed the judgment in full on April 27, 2022 (opinion filed May 4, 2022).

On June 8, 2022, the court held a contested restitution hearing. After hearing witness testimony, the court (Judge Yellin) ordered petitioner to pay $93,003.76 in victim restitution. Petitioner filed a notice of appeal; the appeal remains pending as of November 17, 2022. (OCSC case number 19CM06724.)

*Petitions for Writ of Habeas Corpus*

On October 13, 2021, petitioner filed a petition for writ of habeas corpus, claiming that: (1) her rights to a speedy trial and conflict-free counsel were violated; (2) she was provided ineffective assistance of counsel; (3) there was insufficient evidence to support the conviction; (4) the trial court erred in allowing evidence of petitioner's prior testimony from a civil proceeding; (5) the trial court erred in failing to consider petitioner's speedy trial motion; and (6) petitioner is actually innocent. On October 19, 2021, this court denied the petition in full. (OCSC case number M-19285.)

In November 2021 and February 2022, petitioner filed petitions for writ of habeas corpus in the Court of Appeal. The Court denied both petitions. (Ct. of App. G061132, G060841.)

II.

Citing First, Fifth, Sixth, and Fourteenth Amendment violations, petitioner, in pro per, raises 29 claims of error that may be summarized as follows:

- Petitioner's prosecution for dissemination of nude photographs violates her First Amendment rights because the victim has no reasonable expectation of privacy in the photos he sent to petitioner, he did not request that petitioner keep the photos private, petitioner never promised to keep the photos private, and the victim "is a nudist who believes being nude improves confidence;"

2

- Family court lacked jurisdiction to issue TRO/DVRO against petitioner because she was not engaged in a dating relationship with the victim;
- The TRO/DVRO impermissibly violated petitioner's First Amendment rights because the orders constituted a blanket prohibition of petitioner's speech;
- Prosecutor committed *Brady* error by failing to disclose the victim's prior conviction;
- False/perjured evidence;
- Fifth Amendment violation via prosecutor's use of petitioner's "compelled testimony in family court" against petitioner in the criminal trial;
- Numerous claims of ineffective assistance of trial counsel;
- Insufficient evidence;
- Police failure to investigate the victim's claims via forensic expert examination;
- Confrontation Clause violations due to introduction of inadmissible hearsay;
- Court improperly allowed the People to amend the complaint;
- Court erred in denying petitioner's motion to dismiss for denial right to speedy trial;
- Court erred in denying petitioner's *Marsden* motion;
- Prosecutorial misconduct;
- Cumulative error;
- Ineffective assistance of counsel on direct appeal; and
- Actual innocence.

Petitioner provided a personal declaration, trial transcripts, and clerk's transcripts in support of the petition.

III.

At the outset, the Court finds that most of petitioner's claims are procedurally barred. The petition is DENIED on the following grounds:

*Claims Not Cognizable on Habeas Corpus*

As ruled in petitioner's prior petition for writ of habeas corpus, any arguments that there was insufficient evidence to support the conviction are not cognizable on habeas corpus. This includes petitioner's claims challenging the nature of her relationship with the victim, their expectation of privacy with respect to the victim's nude photos, whether or not the victim suffered serious emotional distress, and the veracity of witness testimony and law enforcement investigation. Challenges to the sufficiency of the evidence supporting the conviction are not subject to review via habeas corpus. (*In re Reno* (2012) 55 Cal.4th 428, 452.)

*Claims Already Raised on Habeas Corpus*

Several of petitioner's claims were already raised, considered, and rejected in petitioner's prior petition for writ of habeas corpus. (M-19285.) Specifically, the court will not consider petitioner's successive claims regarding ineffective assistance of trial counsel and actual innocence since petitioner does not provide new, independent evidence to warrant reconsideration of her previously denied claims. An order denying a

3

petition for writ of habeas corpus in the superior court is final immediately upon its filing." (*Jackson v. Superior Court* (2010) 189 Cal.App.4th 1051, 1065, fn. 5.) "A prisoner whose petition for writ of habeas corpus has been denied by the superior court can obtain review of his claims only by the filing of a new petition in the Court of Appeal." (*In re Clark* (1995) 5 Cal.4th 750, 767, fn. 7.)

*Claims Already Raised on Direct Appeal*

Several of petitioner's claims were also already raised and rejected on direct appeal. Issues raised and rejected on appeal cannot be renewed and considered via habeas corpus.  (*In re Reno* (2012) 55 Cal.4th 428, 477 citing *In re Waltreus* (1965) 62 Cal.2d 218, 225.)

First, petitioner already claimed *Brady* error on appeal based on the People's alleged failure to disclose the victim's criminal history. Second, although now alleged as Fifth Amendment and Confrontation Clause violations, petitioner already challenged the admission of family court testimony at the criminal trial. On appeal, the Court found that petitioner forfeited such claims because she failed to object in the trial court. They should not newly be considered here given the Court's rejection of the same issue on appeal. Third, petitioner already raised ineffective assistance of trial counsel claims. Fourth, petitioner already raised claims of poor investigation by law enforcement.

Finally, any arguments related to a violation of speedy trial rights were already raised and rejected on direct appeal and should not be considered via the instant writ. Moreover, petitioner's renewed claim of a speedy trial violation is not cognizable on petition for writ of habeas corpus since it must be made by pretrial motion followed by an application for writ of prohibition or by appeal. (*People v. Wilson* (1963) 60 Cal.2d 139.)

*Failure to Raise Issues on Appeal*

Petitioner's claims regarding the denial of her *Marsden* motion, Confrontation Clause issues, and prosecutorial misconduct should be denied on grounds that she has not explained or otherwise justified her failure to raise the issues on appeal. When an "issue could have been but was not raised on appeal, the unjustified failure to present it on appeal generally precludes its consideration on habeas corpus." (*In re Sakarias* (2005) 35 Cal.4th 140, 169.) Similarly, petitioner's claims regarding the erroneous issuance of a TRO/DVRO should have been raised on appeal. (See e.g. *K.L. v. R.H.* (2021) 70 Cal.App.5th 965; Cal. Civ. Pro Sec. 904.1 (a)(6).) Moreover, counsel for petitioner filed a *Wende* brief on petitioner's behalf, which allowed the reviewing court to consider any potential issues such as those identified in the instant petition. The Appellate Division found no arguable error on the same record provided by petitioner in the instant petition.

*Piecemeal Presentation of Claims*

"Absent justification for the failure to present all known claims in a single, timely petition for writ of habeas corpus, successive and/or untimely petitions will be summarily denied." (*In re Clark* (1993) 5 Cal.4th 750, 797.) "[I]t has long been the rule that 'piecemeal presentation of known claims' is prohibited." (*Id.* at p. 777.) "[A] litigant seeking extraordinary relief from a final judgment is not entitled to bring his legal claims to court seriatim." (*People v. Kim* (2009) 45 Cal.4th 1078, 1101.) A habeas corpus petitioner "'cannot be allowed to present his reasons against the validity of the judgment against him piecemeal by successive proceedings

for the same general purpose.'" (*In re Horowitz* (1949) 33 Cal.2d 534, 547.) Petitioner does not explain why she is filing a second, similar petition for writ of habeas corpus one year after filing her previous petition.

IV.

Notwithstanding the aforementioned procedural bars, petitioner's remaining claims fail on the merits. "A habeas corpus petitioner bears the burden of establishing that the judgment under which he or she is restrained is invalid." (*In re Cox* (2003) 30 Cal.4th 974, 997.) "For purposes of collateral attack, all presumptions favor the truth, accuracy, and fairness of the conviction and sentence; *defendant* thus must undertake the burden of overturning them. Society's interest in the finality of criminal proceedings so demands." (*In re Roberts* (2003) 29 Cal.4th 726, 740-741.)

*Ineffective Assistance of Appellate Counsel*

The duty to provide effective assistance of counsel extends to appellate counsel. (See *In re Smith* (1970) 3 Cal.3d 192, 202-203 ["[T]he inexcusable failure of petitioner's appellate counsel to raise crucial assignments of error, which arguably might have resulted in a reversal, deprived petitioner of the effective assistance of appellate counsel to which he was entitled under the Constitution"].) "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." (*Jones v. Barnes* (1983) 463 U.S. 745, 751-752.) "[T]he role of the advocate 'requires that he support his client's appeal to the best of his ability'. . . For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the [] goal of vigorous and effective advocacy . . ." (*Id.* at p. 754.)

Petitioner essentially argues that counsel provided ineffective assistance of counsel for filing a *Wende* brief instead of presenting substantive arguments on appeal. Petitioner does not establish that she was prejudiced by appellate counsel's representation or that she would have obtained a different result had appellate counsel argued specific issues. First, "The mere fact appellate counsel has not raised every possible or conceivable issue does not...establish that appellate counsel is ineffective." (*People v. Abilez* (2007) 41 Cal.4th 472, 536.) Pursuant to *People v. Wende* (1979) 25 Cal.3d 436, 442, when appellate counsel submits a brief on appeal that either raises no specific issues or describes the appeal as frivolous, the Court of Appeal is required to conduct a review of the entire record for potential issues. "This court's decision in *Wende* interpreted *Anders* to require the appellate court 'to conduct a review of the entire record whenever appointed counsel submits a brief which raises no specific issues or describes the appeal as frivolous. This obligation is triggered by the receipt of such a brief from counsel and does not depend on the subsequent receipt of a brief from the defendant personally.' (Citation.) The court 'recognize[d] that under this rule counsel may ultimately be able to secure a more complete review for his client when he cannot find any arguable issues than when he raises specific issues, for a review of the entire record is not necessarily required in the latter situation. [Citations.]'" (*People v. Kelly* (2006) 40 Cal.4th 106, 107-108.)

Here, counsel filed a *Wende* brief on petitioner's behalf to trigger the reviewing court's obligation to consider the entire record for any potential issue. Under *Kelly, supra,* appellate counsel's brief invited a more

5

complete review of petitioner's case. That appointed counsel for petitioner did not identify any arguable issues on appeal does not automatically render counsel's assistance ineffective. The reviewing court in petitioner's case not only independently reviewed the entire record as required by *Wende, supra,* and found no arguable issues, but allowed petitioner to request (and be appointed) new appellate counsel and file supplemental briefing. Based on this record, it does not appear that petitioner received ineffective assistance of appellate counsel, and her conclusory statements fail to establish error in light of the entire record.

*Challenge to People's Amendment of Complaint*

Petitioner argues the court erred by allowing the People to file an amended complaint prior to trial on July 26, 2021. Counsel for petitioner objected at the time, but the court overruled the objection. The only change between the original complaint (filed 8/6/19) and the amended complaint (filed 7/26/21) concerned Count 2 (Pen. Code, § 273.6). In the original complaint, the People alleged that petitioner violated a protective order by coming within 100 yards of the protected person. In the amended complaint, the People alleged that petitioner violated a protective order by failing "to deactivate website and created new websites." The People moved for a trial continuance upon filing the complaint, to which the defense objected. Petitioner does not explain how this amendment so prejudiced her case as to warrant relief from the judgment on habeas corpus, and yet the amendment was not so significant that it warranted a delay of her jury trial for counsel to prepare for the amended charge. "'Under the generally accepted rule in criminal law a variance [in pleadings] is not regarded as material unless it is of such a substantive character as to mislead the accused in preparing his defense....'And '[n]o accusatory pleading is insufficient, nor can the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form which does not prejudice a substantial right of the defendant upon the merits.'" (*People v. Peyton* (2009) 176 Cal.App.4th 642, 659, internal citations omitted.) Petitioner's conclusory argument regarding this claim fails to establish error.

*First Amendment Claims*

Petitioner claims that her prosecution for dissemination of nude photographs violates her First Amendment rights because the victim lacked a reasonable expectation of privacy. Per Pen. Code, § 647 (j)(4)A), "A person who intentionally distributes the image of the intimate body part or parts of another identifiable person, or an image of the person depicted engaged in an act of sexual intercourse, sodomy, oral copulation, sexual penetration, or an image of masturbation by the person depicted or in which the person depicted participates, under circumstances in which the persons agree or understand that the image shall remain private, the person distributing the image knows or should know that distribution of the image will cause serious emotional distress, and the person depicted suffers that distress." To the extent that petitioner challenges the constitutionality of the statute in general, courts have upheld the validity of Pen. Code, § 647 (j)(4)A) and found that the statute is not unconstitutionally vague or overbroad. (See e.g. *People v. Iniguez* (2016) 247 Cal.App.4th Supp.1.)

To the extent that petitioner argues that she never promised to keep the images private, that claim goes to the sufficiency of the evidence. The jury in petitioner's case was instructed that in order to find petitioner guilty under Count 3, they had to find in part that "The defendant received or acquired the image or images of the other person under circumstances in which the defendant and the other person agreed or

understood that the images shall remain private." Moreover, petitioner's trial counsel raised the same argument to the jury during closing arguments, which the jury rejected: "[The People] have not provided that information to show that there was an agreement or understanding those photos would remain private and would not be disseminated . . . There was no implicit understanding or agreement that photo remained private, right? Why would there? . . . Prosecution has not presented any credible evidence that Ms. Luo posted those pictures without an agreement." (RT p. 282-283.) Since whether or not the victim and/or petitioner believed the images would remain private was a factual determination made by the jury, petitioner's factual claims contradicting the jury's findings are not cognizable on habeas corpus.

Petitioner also claims that the enforcement of a domestic violence restraining order constituted a blanket prohibition on her speech in violation of the First Amendment. This argument fails. Per Fam. Code 6322, "The court may issue an ex parte order enjoining a party from specified behavior that the court determines is necessary to effectuate orders under Section 6320 or 6321." A prohibition against dissemination of nude photographs is not protected speech for purposes of First Amendment protections. "Although stated in broad terms, the right to free speech is not absolute. '[T]here are categories of communication and certain special utterances to which the majestic protection of the First Amendment does not extend because they 'are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'" (*In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, 1427-1428, internal citations omitted.) Furthermore, the Domestic Violence Protection Act, which governs domestic violence restraining orders, has been upheld as constitutional and withstood facial challenges. "'A statute that is otherwise valid, and is not aimed at protected expression, does not conflict with the First Amendment simply because the statute can be violated by the use of spoken words or other expressive activity." (Citation.) Statutes that purportedly " 'restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society.' [Citation.] The 'protection of innocent individuals from fear, abuse or annoyance at the hands of persons who employ the telephone, not to communicate, but for other unjustifiable motives,' is such a compelling interest. [Citation.]" (*Altafulla v. Ervin* (2015) 238 Cal.App.4th 571, 581.)

*Cumulative Error*

"Under the cumulative error doctrine, the reviewing court must 'review each allegation and assess the cumulative effect of any errors to see if it is reasonably probable the jury would have reached a result more favorable to defendant in their absence.' When the cumulative effect of errors deprives the defendant of a fair trial and due process, reversal is required. Additionally, multiple errors may create a "negative synergistic effect, rendering the degree of overall unfairness to defendant more than that flowing from the sum of the individual errors." Under this standard, which is expressed in substantially the same manner as the review for prejudice required by *People v. Watson* (1956) 46 Cal.2d 818, 299 P.2d 243, there is a reasonable probability of a more favorable result when there exists "at least such an equal balance of reasonable probabilities as to leave the court in serious doubt as to whether the error affected the result." . . . The cumulative prejudice doctrine is based on an examination of the "entire record." (*People v. Ka Yang* (2021) 67 Cal.App.5th 1, 52–53 [internal citations omitted].) Nearly all of petitioner's claims of error have already been considered and

rejected either via direct appeal or prior petition for writ of habeas corpus. The appellate court reviewed the entire record and found no error. Additional review does not disclose cumulative error, particularly in light of petitioner's repeated unsuccessful attempts to overturn the jury's verdict.

V.

The petition for writ of habeas corpus is DENIED.


DATED: _December 28, 2022_____          _____

                                            JUDGE OF THE SUPERIOR COURT

8

| In Re Luo | CASE NUMBER: |
|-----------|--------------|

**ATTACHMENT: 4**

13  f.  (1) Name of court: County of Appeal

(2) Nature of proceeding: Habeas corpus petition

(3) Issues raised: violation of First, Fifth, Sixth, and Fourteenth

Amendments

(4) Result: Denied

(5) Date of decision: January 26, 2023

Court of Appeal, Fourth Appellate District, Division Three
Kevin J. Lane, Clerk/Executive Officer
Electronically FILED on 1/26/2023 by M. Castaneda, Deputy Clerk

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re XINGFEI LUO<br><br>on Habeas Corpus. | G062169<br><br>(Super. Ct. No. 19CM06724)<br><br>O R D E R |

THE COURT:*

The petition for a writ of habeas corpus is DENIED.

SANCHEZ, ACTING P. J.

*  Before Sanchez, Acting P. J., Moore, J., and Delaney, J.

| In Re Luo | CASE NUMBER: |
|---|---|

## ATTACHMENT: 5

13  g.  (1) Name of court: U.S. District Court

(2) Nature of proceeding: Habeas corpus petition

(3) Issues raised: violation of First, Fifth, Sixth, and Fourteenth

Amendments

(4) Result: Pending

(5) Date of decision: N/A

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. 8:22-cv-01640-MEMF-KES                    Date: October 6, 2022

Title: XINGFEI LUO v. THE PEOPLE OF CALIFORNIA

PRESENT:

### THE HONORABLE KAREN E. SCOTT, U.S. MAGISTRATE JUDGE

| Jazmin Dorado | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PETITIONER: | ATTORNEYS PRESENT FOR RESPONDENT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**          **Order Screening Mixed Petition (Dkt. 1)**

## I.    BACKGROUND

On September 6, 2022, Xingfei Luo ("Petitioner"), a probationer, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. ("Petition" at Dkt. 1.) The petition challenges Petitioner's state-court misdemeanor convictions for vandalism, violating a protective order, and disorderly conduct. It raises thirty-four claims in a 95-page Appendix, per Petitioner's own numbering.[1] (Dkt. 2.)

Petitioner summarizes the prosecution's theory of the case as follows:

At trial, the state's theory was that (1) [Tomas] Czodor and Petitioner had a dating relationship; (2) After a fallout in the relationship Petitioner threatened to publish Czodor's nude photos and did so after making those threats between Sept. 5 and Sept. 7, 2018, and the following week Czodor reported the said incidents to police; (3) Petitioner scratched Czodor's front door on Sept.18, 2018, for 20 minutes, but Czodor discovered the damages on Sept. 19, 2018 because it was

---

[1] In accepting Petitioner's numbering, the Court is not accepting that each numbered claim is a cognizable claim for federal habeas relief as opposed to, for example, a claim based on state law or an argument that is not an independent claim. This screening order focuses only on exhaustion.

dark at night. Czodor took photos of the damaged door on Sept. 25, 2018 in order to make a police report the next day; (4) Petitioner did not remove websites as the family court ordered and created new websites.

(Dkt. 2 at 2.) Plaintiff disputes that she ever had a dating relationship with Czodor, although he falsely told her that he was single and sent her unsolicited nude photographs of himself. (Id. at 2-3.) She contends that without metadata, there is insufficient evidence to prove that she wrote the emails threatening to publish the nude photographs. (Id.) She contends Czodor is lying about the door to frame her, because after hearing scratching for 20 minutes, it is "impossible" that he did not see the damage until the next day. (Id. at 3.) Her noncompliance with the protective orders issued by the family court is excused because those orders were "unlawful and invalid." (Id.)

On September 14, 2022, this Court ordered Petitioner to show cause why her Petition should not be dismissed as mixed. (Dkt. 10.) The Court suspected that claims seven, eight, nine, nineteen, twenty-five, twenty-six, twenty-eight, twenty-nine, thirty-three, and thirty-four are unexhausted. Petitioner responded. ("Response" at Dkt. 11.) She argued that she exhausted all of those claims. (Id. at 2-3.) She also argued that the normal exhaustion requirements do not apply. (Id. at 3-7.) Having considered Petitioner's arguments, this Court still finds claims seven, eight, nineteen, twenty-eight, twenty-nine, and thirty-four unexhausted.

## II.  LEGAL STANDARD

Pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that

      (A) the application has exhausted the remedies available in the courts of the State; or

      (B)

            (i) there is an absence of available State corrective process; or

            (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b).

The United States Supreme Court follows a rule of "total exhaustion," requiring that all claims in a habeas petition be exhausted before a federal court may grant the petition. See Rose v. Lundy, 455 U.S. 509, 522 (1982). If all or some of the claims have not been exhausted, then the petition is subject to dismissal. Id.

To satisfy the exhaustion requirement, a habeas petitioner must fairly present his federal claims in the state courts in order to give the State the opportunity to pass upon and correct alleged violations of the petitioner's federal rights. Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam). Exhaustion requires that a petitioner's claims be fairly presented to the highest court in a state court system even if that court's review is discretionary. O'Sullivan v. Boerckel, 526 U.S. 838, 845-47 (1999); James v. Giles, 221 F.3d 1074, 1077, n.3 (9th Cir. 2000). For a

petitioner in California state custody, this generally means the petitioner must have fairly presented his claims to the California Supreme Court. See O'Sullivan, 526 U.S. at 845 (interpreting 28 U.S.C. § 2254(c)); Gatlin v. Madding, 189 F.3d 882, 888 (9th Cir. 1999) (applying O'Sullivan to California).

Under Rhines v. Weber, 544 U.S. 269 (2005), a district court has discretion to stay a petition to allow a petitioner to exhaust his claims in state court without running afoul of AEDPA's one-year statute of limitations period. Id. at 273-75. A district court may stay a petition if: (1) the petitioner has good cause for his failure to exhaust his claims; (2) the unexhausted claims are potentially meritorious; and (3) there is no indication that the petitioner intentionally engaged in dilatory tactics. Id. at 278. If a Rhines stay is granted, the AEDPA statute of limitations is stayed while the petitioner returns to state court to exhaust his claims.

Alternatively, the district court may grant a stay under Kelly v. Small, 315 F.3d 1143 (9th Cir. 2003), which considers the same factors as Rhines except that there is no "good cause" requirement. See King v. Ryan, 564 F.3d 1133, 1135 (9th Cir. 2009). A Kelly stay and abeyance requires compliance with the following three-step procedure: (1) petitioner files an amended petition deleting his unexhausted claims; (2) the district court "stays and holds in abeyance the amended, fully exhausted petition, allowing petitioner the opportunity to proceed to state court to exhaust the deleted claims"; and (3) petitioner must subsequently seek to amend the federal habeas petition to reattach "the newly-exhausted claims to the original petition." Id. at 1135. Under Kelly, however, the petitioner is only allowed to amend newly-exhausted claims back into his federal petition if the claims are timely under the AEDPA or "relate back" to the exhausted claims in the pending petition. Id. at 1140-41; see also Mayle v. Felix, 545 U.S. 644, 662-64 (2005); Stein v. Director of Corrections, No. 05-1592, 2009 U.S. Dist. LEXIS 114016, 2009 WL 4755727 (E.D. Cal. Dec. 8, 2009). In other words, a Kelly stay does not stop the federal AEDPA statute of limitations from running.

## III.   DISCUSSION

### A.   Claims Seven and Eight.

#### 1.   The Claims.

Petitioner argues that this Court should grant her relief because the State knowingly presented perjured testimony by Czodor in violation of the Due Process Clause. In Claim Seven, Petitioner contends that statements Czodor made to the police (as reflected in a 9/7/18 police report) "clearly refute" his trial testimony about when Petitioner threatened to publish his nude photos. (Dkt. 2 at 30.[2]) Plaintiff cites three federal cases in support. (Id.) In Claim Eight, Petitioner argues that photographs and videos Czodor took of the door (and which prosecutors had) showed Czodor was lying when he claimed the area was dark. (Id. at 30-31.)

#### 2.   Petitioner's Exhaustion Argument.

Petitioner points to her habeas petition to the California Supreme Court (Dkt. 6) as the filing that exhausted both claim. (Dkt. 11 at 2.) For Claim Seven, she points to pages 46-47 and

---

[2] The Court's page citations are to the pagination imposed by the Court's e-filing system.

75.  For Claim Eight, she points to pages 49, 71, and 75.

### 3.  Analysis.

On these pages, Petitioner does discuss the 9/10/18 police report and argue that it was relevant, exculpatory evidence because it shows Czodor was being dishonest about the darkness and other matters.  (Dkt. 6 at 46-47.)  This discussion, however, is in support of a Brady claim (id. at 43 [section heading]), and an ineffective assistance of counsel ("IAC") claim (id. at 74-75), not a Due Process claim based on the prosecution knowingly offering false testimony.  None of the federal cases cited in the Appendix under Claim 7 are cited in Petitioner's California Supreme Court petition.  Even Petitioner only argues that she previously brought Brady claims and IAC claims.  (Dkt. 11 at 2.)

### 4.  Conclusion.

Petitioner has not demonstrated that she exhausted Claims Seven and Eight.

### B.  Claim Nine.

### 1.  The Claim.

Petitioner argues that this Court should grant her relief because, at her trial, the State introduced Petitioner's compelled testimony while at the same time misrepresenting Petitioner's prior testimony.  (Dkt. 2 at 31.)  This, she argues, violated her Fifth Amendment right against self-incrimination.  (Id.)

### 2.  Petitioner's Exhaustion Argument.

Petitioner points to Dkt. 6 at 53-55 and argues this shows exhaustion.  (Dkt. 11 at 2.)

### 3.  Analysis.

These pages do indeed show Petitioner having made an argument along these lines to the California Supreme Court.

### 4.  Conclusion.

This Court will allow this claim to proceed past screening.[3]

---

[3] Even after screening, Respondent remains free to undertake a more detailed exhaustion analysis and raise lack-of-exhaustion arguments.

C. **Claim Nineteen.**

1. **The Claim.**

Petitioner argues that this Court should grant her relief under AEDPA 28 U.S.C. § 2254(d)(2) because of an unreasonable determination of the facts. (Dkt. 2 at 49.) Specifically, she argues that it was an unreasonably factual determination that Czodor had an expectation of privacy in his nude photos, despite his sending them to Petitioner and visiting a nudist ranch. (Id.)

2. **Petitioner's Exhaustion Argument.**

Petitioner admits that she never presented this claim to a state court because it is based on AEDPA. (Dkt. 11 at 2.)

3. **Analysis.**

Plaintiff did argue to the California Supreme Court that her convictions violated the First and Fourteenth Amendment, because California has no legitimate interest in prosecuting Petitioner for publishing non-private photographs, and Czodor did not have a reasonable expectation of privacy in the photographs. (Dkt. 6 at 43.) She appears to raise a similar claim in the instant Petition. (Dkt. 2 at 49 [Claim Twenty-One].)

4. **Conclusion.**

The Court doubts Claim Nineteen is properly considered an independent "claim" rather than an argument as to why Claim Twenty-One merits habeas relief under AEDPA. The Court will allow Claim Nineteen to survive exhaustion screening and treat it as an argument in support of Claim Twenty-One.

D. **Claim Twenty-Five.**

1. **The Claim.**

Petitioner seeks habeas relief because the trial court violated her Confrontation Clause rights by admitting text messages from Czodor's friend. (Dkt. 2 at 55.)

2. **Petitioner's Exhaustion Argument.**

Petitioner points to Dkt. 6 at 30 and argues this shows exhaustion. (Dkt. 11 at 2.)

3. **Analysis.**

Petitioner points to one sentence in her habeas petition to the California Supreme Court wherein she wrote "Petitioner's restraint, judgment of conviction, and sentence were unlawfully and unconstitutionally in violation of her [right] to … confrontation and compulsory process." (Dkt. 6 at 30.) This is the only mention of the Confrontation Clause in that petition. The Court sees nothing in the California Supreme Court Petition alleging Petitioner's inability to cross-

examine the author of any text messages.

The passing mention of a legal theory without providing any supporting facts is insufficient to accomplish exhaustion. It did not fairly present the legal and factual basis of the claim to the California Supreme Court. See Koerner v. Grigas, 328 F.3d 1039, 1046 (9th Cir. 2003) (exhaustion requires presentation of the "operative facts" and "legal theory").

### 4. Conclusion.

Claim Twenty-Five is not exhausted.

### E. Claim Twenty-Six.

### 1. The Claim.

Petitioner argues that this Court should grant her relief because the trial court allowed the State to amend its criminal complaint against her later in the proceedings, which violated her Sixth and Fourteenth Amendment rights. (Dkt. 2 at 55.)

### 2. Petitioner's Exhaustion Argument.

Petitioner points to Dkt. 6 at 42 and argues that this shows exhaustion. (Dkt. 11 at 2.)

### 3. Analysis.

Petitioner has pointed this Court to the following paragraph in her petition to the California Supreme Court:

> Further, not only the trial court erred in denying Petitioner's motion to dismiss, 720 days after the complaint was filed, despite no finding of good cause to justify any belated amendment, the trial court erred in permitting the people to amend the complaint from allegation of coming with in 100 yards of the protected person to failure to deactivate website and created new websites.

(Dkt. 6 at 42-43.)

While this claims that the trial court erred in allowing the prosecution to amend the complaint, it is part of a sub-section titled, "Both the TRO and DVRO fail strict scrutiny." (Dkt. 6 at 37.) This was part of a section titled "BOTH THE TRO AND DVRO ARE UNLAWFUL BECAUSE PETITIONER AND THE ACCUSER WERE NEVER ENGAGED IN DATING RELATIONSHIP AND THEY FAIL STRICT SCRUTINY BECAUSE THEY IMPOSE CONTENT-AND SPEAKER-BASED RESTRICTIONS." (Id.) Nothing in any of these pages suggests that Plaintiff was alleging the late amendment of the complaint violated her Sixth Amendment rights. Plaintiff has not identified any presentation to the California Supreme Court of Claim Twenty-Six.

**4. Conclusion.**

Claim Twenty-Six is unexhausted.

**F.      Claim Twenty-Eight.**

**1. The Claim.**

Petitioner argues that the trial court violated her Sixth and Fourteenth Amendment rights by denying her motion to dismiss based on the alleged violation of her right to a speedy trial. (Dkt. 2 at 74.)  Petitioner explains:

> [d]espite a pretrial hearing on a motion to dismiss for denial of a speedy trial may exclude prosecution, *Shleffar v. Superior Court* (1986) 178 Cal.App.3d 937, the court improperly informed Petitioner that the motion to dismiss was not being accepted or considered because it was untimely and the People were not present.

(<u>Id.</u>)  Plaintiff has a separate speedy trial claim.  (<u>Id.</u> at 55 (Claim Twenty-Seven).)

**2. Petitioner's Exhaustion Argument.**

Petitioner points to Dkt. 6 at 42 and argues this shows exhaustion.  (Dkt. 11 at 3.)

**3. Analysis.**

The only potentially relevant paragraph on that page says the following:

> Further, not only the trial court erred in denying Petitioner's motion to dismiss, 720 days after the complaint was filed, despite no finding of good cause to justify any belated amendment, the trial court erred in permitting the people to amend the complaint from allegation of coming within 100 yards of the protected person to failure to deactivate website and created new websites.

(Dkt. 6 at 42-43.)

This paragraph alleges that the denial of Petitioner's motion to dismiss was erroneous, but it does not provide the legal or factual basis for that allegation.  Thus, it does not present the California Supreme Court with a claim of constitutional error.

**4. Conclusion.**

Petitioner has not demonstrated that she exhausted this claim.

**G.      Claim Twenty-Nine.**

**1. The Claim.**

Petitioner claims that the trial court erred in denying her <u>Marsden</u> motion, which violated her Sixth and Fourteenth Amendment rights.  (Dkt. 2 at 74-75.)

### 2. Petitioner's Exhaustion Argument.

Petitioner points this Court to Dkt. 6 at 18 and 114 and argues this shows exhaustion. (Dkt. 11 at 3.)

### 3. Analysis.

Page eighteen of Dkt. 6 (using the e-filing pagination) comes from the Orange County Superior Court's order denying a habeas petition. (Dkt. 6 at 17-18.) The order discusses Plaintiff's <u>Marsden</u> motion as part of her case's procedural history. (<u>Id.</u> at 18.) It does not analyze any claim of error in connection with the denial of that motion. (<u>Id.</u>, listing claims considered.) This does not show exhaustion, because it does not show presentation of a <u>Marsden</u> claim to the California Supreme Court.

Page 114 of Dkt. 6 comes from Petitioner's habeas petition to the California Supreme Court. But, it mentions nothing about a <u>Marsden</u> motion. (<u>See id.</u> at 114.)

Petitioner's petition to the California Supreme Court does mention her <u>Marsden</u> motion, but again only in discussions of procedural history. (Dkt. 6 at 28.) This does not raise a claim of constitutional error based on the denial of Petitioner's <u>Marsden</u> motion.

### 4. Conclusion.

Petitioner has not demonstrated that she exhausted this claim.

## H. <u>Claim Thirty-Three.</u>

### 1. The Claim.

Petitioner argues actual innocence. (Dkt. 2 at 85.)

### 2. Petitioner's Exhaustion Argument.

Petitioner points this Court to Dkt. 6 at 117. (Dkt. 11 at 3.) She argues this shows exhaustion. (<u>Id.</u>)

### 3. Analysis.

Petitioner points this Court to the last half of the concluding paragraph of the "Conclusion" section of her habeas petition to the California Supreme Court. On that page, she wrote: "[Petitioner's] innocence is a matter of reality. This Court must act to find Petitioner actually innocent. This Court must grant this petition and issue a finding of factual innocence." (Dkt. 6 at 117.)

### 4. Conclusion.

Without concluding that Petitioner exhausted this claim, or whether it is even a cognizable claim ,this Court will allow it to proceed past the screening stage.

I.    **Claim Thirty-Four.**

    1.  **The Claim.**

This claims reads as follows:

In its Oct 19, 2021 ruling the state superior court denied relief on Petitioner's <u>Strickland</u> claim, concluding that Petitioner has not demonstrated that counsel's performance was substandard or that she was prejudiced by counsel's alleged failures.  Exhibit 2 at 6.  Knowing that Petitioner was not represented by counsel in habeas corpus, the state superior court faulted Petitioner for her failure to provide transcript and rushed to deny Petitioner's relief without giving her any opportunity to supplement the transcript.  The state court's finding without reading the transcript is the very definition of an unreasonable determination of fact.  The state habeas court's rejection of this claim is not entitled to deference under § 2254(d) because the state court ignored the key facts relevant to this claim.

Where a state court resolving a federal constitutional claim refuses to consider facts it should consider in deciding a constitutional claim, that decision is unreasonable and § 2254(d) will not bar relief.  *Williams v. Taylor*, 529 U.S. 362, 397-398 (2000).  Accord Id. at 416 (O'Connor, J. concurring).

(Dkt. 2 at 85.)

    2.  **Petitioner's Exhaustion Argument.**

Petitioner states "[t]his claim is under federal procedural law therefore Petitioner did not present it before state courts."  (Dkt. 11 at 3.)

    3.  **Analysis.**

The above-cited language is not an independent claim.  It is an argument as to why the state court's denial of her IAC claim is not entitled to deference under AEDPA.  This Court will consider it as such.

    4.  **Conclusion.**

This argument is not subject to exhaustion analysis.

J.    **Petitioner's Arguments on Why the Normal Exhaustion Requirements Do Not Apply.**

Petitioner's Response also makes several arguments for why the normal exhaustion rules do not apply.  Below, the Court addresses these arguments.

### 1. Argument One: Petitioner Could Not Exhaust Via a Direct Appeal to the California Supreme Court Because the California Court of Appeal Declined to Review Her Case.

Petitioner argues that California appellate procedure rules (referring to the rules for misdemeanor convictions) allowed California's intermediate appellate court to decline to hear her direct appeal, barring her from taking a direct appeal to the California Supreme Court. (Dkt. 11 at 3-4.)

AEDPA excuses the exhaustion requirement in two situations: "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). While Petitioner may not have been able to reach the California Supreme Court on direct appeal, Petitioner filed a habeas petition with the California Supreme Court. (Dkt. 6 at 4-136.) This shows an "available State corrective process" exists. Petitioner presents no evidence that tends to prove this process "ineffective." This Court declines to invoke 28 U.S.C. § 2254(b)(1)(B) and excuse Petitioner from the exhaustion requirement

### 2. Argument Two: Exhaustion was Excused Because Petitioner was Self-Represented.

Petitioner argues that she did not have counsel to assist her in pursuing post-conviction habeas relief. (Dkt. 11 at 5.) She says, "For each state court habeas petition Petitioner moved the state court to appoint counsel but each of Petitioner's requests for appointment of counsel was denied." (Id.) She suggests this excused exhaustion. (Id. at 5-6.)

There is no right to counsel to pursue habeas claims. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further.") Most federal petitioners do not have counsel assist them in filing state habeas petitions. This does not excuse compliance with AEDPA exhaustion requirements. See Rose v. Lundy, 455 U.S. 509, 520 (1982) ("strict enforcement of the exhaustion requirement will encourage habeas petitioners to exhaust all of their claims in state court and to present the federal court with a single habeas petition.")

### 3. Argument Three: 28 U.S.C. § 2254(e)(2).

Petitioner argues that 28 U.S.C. § 2254(e)(2) excuses her from the exhaustion requirement. (Dkt. 11 at ___.) Petitioner misreads 28 U.S.C. § 2254. Sub-section (e)(2) of that statute deals with when a federal court, adjudicating a habeas claim, must hold an evidentiary hearing. It does not govern exhaustion. Sub-section (b) of that statute governs exhaustion.

### 4. Argument Four: Petitioner Is Actually Innocent.

Petitioner argues that (1) lack of exhaustion is a form of procedural default; (2) there is a "fundamental miscarriage of justice" exception to the application of procedural defaults; and (3) she can establish a fundamental miscarriage of justice, because she is actually innocent. She cites Schlup v. Delo, 513 U.S. 298 (1995), and Carriger v. Stewart, 132 F.3d 463 (9th Cir. 1997), in support of this argument. (Dkt. 11 at 5-6.)

As explained in <u>Schlup</u>, a habeas petitioner's actual innocence may provide a gateway allowing a federal court to consider a petitioner's *procedurally defaulted* habeas claims.  <u>See</u> <u>Smith v. Baldwin</u>, 510 F.3d 1127, 1139 (9th Cir. 2007).  A procedurally defaulted claim is one that no longer may be raised in state court and therefore is "technically" exhausted.  <u>Id.</u> However, Petitioner has not presented any authority—and this Court is aware of none—holding that a petitioner's allegation of actual innocence excuses failure to exhaust a claim that still may be presented in state court.  <u>Schlup</u> did not deal with unexhausted claims; indeed, the <u>Schlup</u> petitioner had exhausted his state collateral remedies.  <u>Schlup</u>, 513 U.S. at 306.  As discussed above, Section 2254(b) (which post-dates the <u>Schlup</u> decision) recognizes only two circumstances in which a federal court may grant habeas relief on an unexhausted claim.

<u>Carriger</u> (dealing with a 1978, pre-AEDPA conviction) is not on point.  <u>Carriger</u> held that the petitioner could "have his otherwise-barred claims considered on the merits, however, if his claim of actual innocence is sufficient to bring him within the 'narrow class of cases … implicating a fundamental miscarriage of justice.'"  132 F.3d at 477, citing <u>Schlup</u>.  But the "bar" at issue was not lack of exhaustion.

## IV.    OVERALL CONCLUSION

IT IS HEREBY ORDERED that claims seven, eight, twenty-five, twenty-six, twenty-eight, and twenty-nine, in the Petition, are DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND.[4]  **On or before October 28, 2022**, Petitioner shall elect one, and only one, of the following options:

1.    File a Notice of Voluntary Dismissal of claims that claims seven, eight, twenty-five, twenty-six, twenty-eight, and twenty-nine, and proceed with her remaining claims.  If Petitioner does this, she likely will not be able to raise these claims in any future federal habeas actions.  <u>See</u> 28 U.S.C. § 2244(b).

2.    File a motion for a stay under <u>Rhines</u> or <u>Kelly</u> based on the factors described above.  The purpose of the stay would be to return to state court to try to exhaust the unexhausted claims.  ***Failure to ask for a stay before the deadline established in this order may be seen as dilatory and may prevent Petitioner from asking for a stay later in the case.[5]***

3.    File a Notice of Intent to Proceed with the Petition.  If Petitioner chooses to file such a notice, then the Magistrate Judge may recommend that the District Judge dismiss claims seven, eight, twenty-five, twenty-six, twenty-eight, and twenty-nine.

***<u>Failure to do one of these three things before the deadline established by this order may result in dismissal of this Petition.</u>***

Initials of Deputy Clerk <u>JD</u>

---

[4] Nothing in this order should be read to imply that this Court finds merit in Petitioner's other claims.  This Court simply allows them to proceed past the screening stage.

[5] Nothing in this order prohibits Petitioner from immediately filing a habeas petition in the state courts, either before or after responding to this order.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. 8:22-cv-01640-MEMF-KES               Date:  December 20, 2022

Title: XINGFEI LUO v. THE PEOPLE OF CALIFORNIA

PRESENT:

### THE HONORABLE KAREN E. SCOTT, U.S. MAGISTRATE JUDGE

| Jazmin Dorado | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):    ORDER GRANTING RHINES STAY (Dkt. 13) and DENYING MOTIONS FOR COUNSEL AND DISCOVERY WITHOUT PREJUDICE (Dkt. 7, 8)**

## I.    BACKGROUND.

On September 6, 2022, probationer Xingfei Luo ("Petitioner") constructively filed a Petition for Writ of Habeas Corpus by a Person in State Custody under 28 U.S.C. § 2254.  (Dkt. 1 ["Petition"].)  Petitioner challenges her misdemeanor convictions for vandalism, violating a protective order, and disorderly conduct.  (Id. at 1.)  The Petition raises thirty-four claims for relief based on Petitioner's numbering.  (Id. at 14-85.)  Along with the Petition, Petitioner moved for appointment of counsel (Dkt. 7), for discovery, and for an evidentiary hearing (Dkt. 8).

At the screening stage, the Court determined that Plaintiff had failed to exhaust some of her claims.  (Dkt. 12.)  In response, Plaintiff moved for a stay under Rhines v. Weber, 544 U.S. 269 (2005).  (Dkt. 13.)  Respondent appeared and opposed the stay motion.  (Dkt. 16.)  Plaintiff filed a Reply.  (Dkt. 17.)

For the reasons below, this Court GRANTS Plaintiff's stay motion.  This Court DENIES Plaintiff's motions for counsel and discovery, without prejudice to Plaintiff renewing them later.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:22-cv-01640-MEMF-KES

Date: December 20, 2022
Page 2

## II.    THE STAY MOTION.

Under Rhines, district courts have discretion to stay a petition to allow the petitioner to exhaust claims in State court without exceeding the one-year statute of limitations period generally applicable to federal habeas claims.  Id., 544 U.S. at 273-75. District courts may stay a petition if: (1) the petitioner has good cause for the failure to exhaust the claims; (2) the unexhausted claims are potentially meritorious; and (3) nothing indicates that the petitioner intentionally engaged in dilatory tactics.  Id. at 278.

In her motion, Plaintiff contends she has satisfied the "good cause" requirement because she did not have post-conviction counsel.  (Dkt. 13 at 2.)  She argues her unexhausted claims have merit, citing her allegations and supporting facts in the trial record.  (Id. at 3-4.)  She also contends that nothing indicates intentional, dilatory tactics. (Id. at 4.)

In the Opposition, Respondent did not counter these arguments.  Instead, Respondent contends that "a Rhines stay … is presently unwarranted, as the time remaining within the limitations period gives Luo ample opportunity to exhaust her remaining claims."  (Dkt. 16 at 1.)  Respondent did not object to the Court granting a stay under Kelly v. Small, 315 F.3d 1063 (9th Cir. 2003).  (Dkt. 16 at 5.)

In her Reply, Petitioner argues that the likelihood she will obtain tolling for her state exhaustion petition(s) is not a factor in the Rhines analysis.  (Dkt. 17.)

The Court agrees with Petitioner.  If the State courts determine that Petitioner has filed an untimely or otherwise improper exhaustion petition, then she may not receive statutory tolling.[1]  Respondent cited no cases where the district court denied a Rhines stay because it believed that the petitioner would receive enough tolling to prevent the federal statute of limitations from expiring.  Accordingly, because Respondent essentially does not oppose Plaintiff's arguments on the substantive elements of a Rhines stay, the Court GRANTS Petitioner's stay motion.

---

[1] The federal one-year limitation period is subject to statutory tolling during the pendency of a properly filed state application for post-conviction relief.  28 U.S.C. § 2244(d)(2).  A state post-conviction petition, however, is "not 'properly filed' if it was rejected by the state court as untimely."  Allen v. Siebert, 552 U.S. 3, 6 (2007).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:22-cv-01640-MEMF-KES

Date: December 20, 2022
Page 3

## III.    The Motion for Discovery and an Evidentiary Hearing.

The law entitles Petitioner to habeas relief only if the state court's decision on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts **in light of the evidence presented in the State court proceeding.**

28 U.S.C. § 2254(d)(1)-(2) (emphasis added).  This means that for most habeas claims considered by federal courts, the law limits the evidentiary record to the evidence presented in the State court exhaustion proceedings.  Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

A "habeas petitioner 'is not entitled to discovery as a matter of ordinary course.'" Smith v. Mahoney, 611 F.3d 978, 996 (9th Cir. 2010) (quoting Bracy v. Gramley, 520 U.S. 899, 904 (1997)).  "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."  Rule 6(a), Rules Governing § 2254 Cases.  "Good cause exists 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief.'"  Smith, 611 F.3d at 996 (quoting Bracy, 520 U.S. at 904).  If the petitioner shows good cause, and "[i]f necessary for effective discovery, the judge must appoint an attorney for a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A."  Rule 6(a), Rules Governing § 2254 Cases.

Here, it remains to be seen which claims this Court will eventually consider on the merits and whether its review of those claims will be limited to the evidence presented in the relevant State court proceedings.  The Court denies as premature Petitioner's motion for discovery and an evidentiary hearing.  This denial is without prejudice to Petitioner renewing her motion later, if appropriate.

## IV.    The Motion for Appointment of Counsel.

No constitutional right to appointment of counsel in a habeas action exists. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); Ortiz v. Stewart, 149 F.3d 923, 932 (9th Cir. 1998.  Courts may appoint counsel for habeas petitioners who are or become

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:22-cv-01640-MEMF-KES                        Date: December 20, 2022
                                                                         Page 4

unable to afford counsel when "the interests of justice so require."  28 U.S.C. § 2254(h);
18 U.S.C. § 3006A(a)(2).

    Petitioner's current motion argues that the law entitles Petitioner to counsel if the
Court conducts an evidentiary hearing.  (Dkt. 7 at 1-2.)  But as noted above, the Court has
yet to determine whether it will order discovery or conduct an evidentiary hearing.
Petitioner has prematurely filed a motion to appoint counsel.  Furthermore, Petitioner
does not proceed in forma pauperis, i.e., with a fee waiver.  Any future motion to appoint
counsel would need to come with evidence showing Petitioner cannot afford to retain
counsel.

    The Court again refers Petitioner to the federal pro se clinic where volunteer
lawyers may be able to assist her.  (See Dkt. 10 at 5 for phone numbers and more
information.)

## V.    CONCLUSION.

    IT IS THEREFORE ORDERED that:

    1. Petitioner's motion for a Rhines stay (Dkt. 13) is GRANTED and this action is
STAYED.

    2. **Within 60 days of this Order and every 60 days thereafter,** Petitioner must
file a short Status Report in this Court, in which she advises the Court of the status of
her exhaustion efforts.  Petitioner should attach to those Status Reports: (a) a copy of
any new habeas petition(s) that she files in the State courts, and (b) a copy of any
order she receives from the State courts ruling on those habeas petitions.

    3. Petitioner's motion to appoint counsel (Dkt. 7) is DENIED without prejudice.

    4. Petitioner's motion for discovery and an evidentiary hearing (Dkt. 8) is
DENIED without prejudice.

MINUTES FORM 11                                         Initials of Deputy Clerk JD
CIVIL-GEN

1  XINGFEI LUO

2  PO BOX 4886,

3  El Monte, CA 91734

4

5  Petitioner in Pro Se

6

7

8  **SUPREME COURT OF THE STATE OF CALIFORNIA**

9

10

11  XINGFEI LUO,                                    No.

12                    Petitioner,

13        v.                                          **APPENDIX TO PETITION FOR WRIT**
                                                      **OF HABEAS CORPUS**
14  THE PEOPLE OF THE STATE OF
   CALIFORNIA

15                    Respondent.

16

17

18

19                          **INTRODUCTION**

20        After Hanh Le's cheating husband, a shameless nudist, Tomas Czodor (Czodor),

21  faked his damages and injuries, Xingfei Luo (Petitioner) was charged by Orange County

22  District Attorney (OCDA)'s misdemeanor complaint, on Aug 6, 2019, with vandalism

23  (Pen. Code, § 594{a)/(b)(2)(A)), violation of a protective order (Pen. Code, § 273.6(a)) (by

24  coming within 100 yards of the protected person), and disorderly conduct (unlawful

25  dissemination of private photographs and recordings) (Pen. Code, § 647(j)(4))(A). CT 1-

26  2.[1] 720 days after the original complaint was filed, despite no finding of good cause to

27  _____

28  [1] For purposes of citation, the Reporter's Transcript on Appeal is referred to as RT. The Clerk's Transcript on Appeal is referred to as CT. A true and correct copy of the RT, CT, opinion on appeal and initial habeas petition are attached as Exhibit 1-3.

1

1  justify any belated amendment, the complaint was illegally permitted to amend from

2  allegation of coming within 100 yards of the protected person to failure to deactivate

3  website and created new websites. CT 66-67.

4       After being astonished by public defender's poor performance at trial, Petitioner

5  had to conduct her own investigation which has revealed that the prosecution withheld

6  several material pieces of evidence which would destroy the veracity and credibility of the

7  prosecution's star witness who was the sole witness testified at trial. Petitioner also

8  discovered shocking information of Czodor's background which should have been

9  investigated by public defender and such failure constitutes ineffective assistance of

10  counsel that prejudiced Petitioner.

11       At trial, the state's theory was that (1) Czodor and Petitioner had a dating

12  relationship; (2) After a fallout in the relationship Petitioner threatened to publish

13  Czodor's nude photos and did so after making those threats between Sep 5 and Sep 7,

14  2018 and the following week Czodor reported the said incidents to police; (3) Petitioner

15  scratched Czodor's front door on Sep 18, 2018 for 20 minutes but Czodor discovered the

16  damages on Sep 19, 2018 because it was dark at night. Czodor took photos of the

17  damaged door on Sep 25, 2018 in order to make a police report the next day; (4) Petitioner

18  did not remove websites as the family court ordered and created new websites.

19       But in fact, (1) When Czodor connected with Petitioner, he posed himself as a

20  single man never married but actually he has been married for over ten years. Czodor was

21  seeking casual hook-ups to cheat on his wife. During the entire contact between Petitioner

22  and Czodor, Petitioner never told Czodor her full name. They never had a relationship; (2)

23  Hanh Le's cheating husband, Czodor, is a nudist who believes becoming nude increases

24  confidence. He sent his nude photos to Petitioner when he did not even know Petitioner's

25  full name. Decl. Luo, ¶6. Czodor never asked Petitioner to keep his photos private nor did

26  he receive Petitioner's promise to keep his photos private. The screenshots of the

27  threatening messages have no metadata and no one can tell whether they were falsified or

28  edited. On Sep 10, 2018, the following week after Petitioner allegedly threatened to post

2

his nude photos and did so, Czodor made a police report alleging unfounded terrorism, completely contrary to his testimony; The customer Czodor alleged she told him about his nude photos online never existed; (3) The front door area was brightly lit on Sep 18, 2018, Czodor was able to constantly take photos and shoot videos, it is impossible that he could not discover the damage on Sep 18, 2018 after hearing 20 minutes scratching. The 911 call made on Sep 18, 2018 did not indicate a word regarding scratching a door despite Czodor heard 20 minutes of scratch. The day before Czodor took a photo of his damaged door, on Sep 24, 2018, Czodor learned that the removal of a post related to his credibility would cost money. In order to frame Petitioner, Czodor damaged his own door and took photos on Sep 25, 2018 or the photos of the damaged door were falsified or manufactured using editing software; (4) both orders issued by the family court were unlawful and invalid.

Petitioner, a victim of false accusations, shoddy police work, bad lawyering, prosecutorial misconduct and extreme malfunctions in the state criminal justice systems, seeks relief to vacate her conviction due to actual innocence and violations of First, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

**FACTS THE JURY HEARD AND FACTS THE JURY DID NOT HEARD**

**I.   THE ISSUANCE OF TWO UNLAWFUL FAMILY COURT ORDERS (TRO AND DVRO)**

What the jury heard

Public defender signed off a stipulation with the prosecution stating that "on September 28, 2018 a temporary restraining order, which was lawful and valid, went into effect naming Xingfei Luo as the restrained person and Tomas Czodor as the protected person. This temporary restraining order became a permanent restraining order on October 19th 2018." RT 217-219.

What the jury did not heard

In 2018 Czodor connected with Petitioner while presenting himself as a single man never married but in fact he was a longtime married man seeking casual hook-ups and

3

cheating on his wife.[2] Czodor's concealment of marital status and the only two meetings between the parties prove that there was no dating relationship between Czodor and Petitioner. During the entire interaction between the parties Petitioner never told Czodor her full name. Decl. Luo, ¶. The nature and frequency of the interactions between the parties elaborate just another one-night stand of a married man seeking a casual extramarital sexual favor. There was never any ongoing expectations with respect to the relationship. Neither parties ever demonstrated an affirmation of their relationship before others either by statement or conduct. While Czodor was married to Hanh Le, he openly sought DVRO against Petitioner which indicates he carries no shame of cheating on his wife.

"Dating relationship" means frequent, intimate associations primarily characterized by the expectation of affection or sexual involvement independent of financial considerations. Cal. Fam. Code §6210. "Dating relationship" does not apply to 'a casual relationship or an ordinary fraternization between [two] individuals in a business or social context.' *People v. Upsher* (2007) 155 Cal.App.4th 1311, 1323, citing *People v. Rucker* (2005) 126 Cal.App.4th 1107, 1117. Had the Legislature intended to apply Domestic Violence Prevention Act (DVPA) to casual dates, it could have simply referred to the dating relationship as "a date" or any dates instead of phrasing it to emphasize the element of frequent and intimate associations. Concluding that Petitioner and a married man had a dating relationship would give far too much weight to the word "dating" and too little weight to the word "relationship."

Despite Czodor, a longtime married man seeking casual hook-ups, failed to establish facts justifying the issuance and continuance of a DVRO, despite the associations between the parties did not meet the statutory standard of a "dating relationship", the family court improperly found that Czodor and Petitioner were former partners and issued the TRO and DVROs in violation of Petitioner's due process right.

---

[2] Czodor's marital history (crucial evidence to Czodor's credibility, whether Czodor engaged in a dating relationship with Petitioner, public defender's failure to conduct basic background investigation) was unavailable to Petitioner until June 2022. Decl. Luo, ¶.

The stipulation with prosecution incorrectly states that the two restraining orders state that Petitioner is to stop online bullying and harassing Mr. Czodor, to stop contacting friends and clients of Mr. Czodor, and to stop stalking Mr. Czodor in cyberspace or in person etc. RT 218-219. Decl. Luo, ¶15, TRO & DVRO.

Not only the TRO and DVRO have no legal foundation due to the lack of dating relationship, they do not pass constitutional muster, as they are not sufficiently narrowly tailored. "'The right to free speech is . . . one of the cornerstones of our society,' and is protected under the First Amendment of the United States Constitution and under an 'even broader' provision of the California Constitution." *Evans v. Evans* (2008) 162 Cal.App.4th 1157, 1166 (Evans), quoting *Hurvitz v. Hoefflin* (2000). "Temporary restraining orders and permanent injunctions—i.e., court orders that actually forbid speech activities—are classic examples of prior restraints." *Alexander v. United States* (1993) 509 U.S. 544, 550. A prior restraint is "'the most serious and the least tolerable infringement on First Amendment rights.'" *Near v. Minnesota* (1931) 283 U.S. 697, 713. "Prior restraints are highly disfavored and presumptively violate the First Amendment. [Citations.] This is true even when the speech is expected to be of the type that is not constitutionally protected." (*Evans*, supra, 162 Cal.App.4th at p. 1167; citing *Near v. Minnesota*, supra, 283 U.S. at pp. 704-705 [rejecting restraint on publication of any periodical containing "malicious, scandalous and defamatory" matter]) "[P]rior restraints on speech ... are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart* (1976) 427 U.S. 539, 559, 96 S.Ct. 2791, 49 L.Ed.2d 683. Orders enjoining the right to speak on a particular topic are disfavored and presumptively invalid. (Id . at p. 558, 96 S.Ct. 2791.)

## II. CZODOR'S NUDIST BACKGROUND AND THE EVENTS LEADING UP TO SENDING HIS NUDE PHOTOS TO PETITIONER

What the jury heard

Czodor works as a general contractor and painting contractor that owns a company named Gorgeous Painting. RT 129. Czodor met Petitioner through dating app Plenty of

5

Fish in early August 2018. RT 130-131. Two or three weeks after their first message they went out on a date. After their first date Czodor send his nude photos to Petitioner before they met the second time. RT 134. Czodor denied that he had daily communication with Petitioner. RT 132. Czodor had only two dates in total with Petitioner. The second date Petitioner went to Czodor's house but Petitioner did not spend the night with Czodor. RT 133. Czodor does not even know if any dating relationship started with Petitioner. Czodor encouraged Petitioner to meet other people. RT 134. Czodor liked younger women. RT 197. Other than Petitioner Czodor met only one other person through dating app. RT 199. Czodor portraits himself as a single innocent young man just starting online dating.

<u>What the jury did not hear</u>

Czodor signed up on dating app Plenty of Fish as a single man but in fact he was a longtime married man who concealed his marital status to seek casual hook-ups. Decl. Luo, ¶2. Czodor and Hanh Le jointly own a property that was purchased in 2009. Between 2014 and 2019 Czodor and Hanh Le filed taxes as a married couple. Despite Czodor testified he liked younger women, his wife is ten years older than him[3]. Decl. Luo, ¶2. Czodor's words are completely contradicted to facts. It suggests that Czodor either lied on the stand about liking younger women or committed marriage fraud for immigration benefits because he was previously subject to deportation. Decl. Luo, ¶17.

Hanh Le's infamous cheating husband, Czodor, was arrested for impersonation. He was previously convicted of, by OCDA, same prosecuting agency who prosecuted Petitioner, advertising as a general contractor while he was not which is no different than fraud. He was also convicted of probation violation. His convictions rested upon facts establishing dishonesty or false statement. Decl. Luo, ¶17. When he was trying to solicit business he advertised himself as a general contractor but in fact he was not. When he was seeking free sexual favor, he concealed his marital status and presented himself as a single innocent young man. When he was trying to impress a stranger, he openly talked about his upbringing as a nudist. When he did not even know Petitioner's full name he sent his nude

---

[3] Hanh Le was born in 1972 while Tomas Czodor was born in 1982.

APPENDIX TO PETITION FOR WRIT OF HABEAS CORPUS

1  photos to Petitioner. When he was trying to frame Appellant for revenge porn, he

2  suddenly became a non-nudist as if he spent all his days fully clothed like the rest of us

3  did. He cheats on his customers. He cheats on his wife. He cheats on the police. He cheats

4  on the jury in July 2021. There must have been more since he cheats whenever it serves

5  his own interest throughout his life (marriage fraud, tax fraud, and prior criminal

6  conviction etc.) A classic sociopath.

7      While many prefer to spend their days fully clothed, some prefer to live their lives

8  au naturel. In their birthday suits. Nude. Unclothed. They are naturists. Naturism is a

9  lifestyle of social nudity, and the cultural movement which advocates for and defends that

10 lifestyle. Both may also be referred to as nudism. Nudists believe that becoming nude

11 increases confidence and going naked brings them out of their shell. Without the barrier of

12 clothing, nudists become more open, comfortable, and secure. Czodor grew up in central

13 Europe and was raised as a naturist. He sent Petitioner, a woman he barely knew, his nude

14 photos when he did not even know her full name. Decl. Luo, ¶. Czodor invited Petitioner

15 to a nudist ranch in Riverside named Olive Dell Ranch. http://www.olivedellranch.com/

16 Czodor never asked Petitioner to keep his photos private nor did he receive Petitioner's

17 promise to keep his photos private. Decl. Luo, ¶. All communication between Czodor

18 and Petitioner was through texting. It is particularly odd that the State did not provide any

19 text messages showing that Czodor asked Petitioner to keep his photos private or

20 Petitioner's promise to keep Czodor's photos private despite the State was able to provide

21 Petitioner's threatening messages. Czodor may have sent his nude photos to dozen women

22 while cheating on his wife.

23      **III.    ALLEGATION OF UNLAWFUL DISSEMINATION OF PRIVATE**

24          **PHOTOGRAPHS**

25      <u>What the jury heard</u>

26      Czodor denied that he told Petitioner he didn't mind if she shared his nude photos.

27 Czodor alleged that Petitioner did not reach out to him and ask if it would be okay if she

28 showed other people those nude photos of him. RT 148-149. Czodor first testified that on

7

1    Friday (Sep 7, 2018) Petitioner started publishing his nude photos. RT 138-139. However,

2    he later testified he had notes indicating that Petitioner started publishing things on Sep 5,

3    2018. Czodor contacted the police the following week for unlawful dissemination of his

4    nude photographs. RT 150-151. Lilly, Czodor's customer on Yelp, received his nude

5    photos and informed him of the incident. RT 159-160.

6         Czodor feels embarrassed to have strangers see his nude photos. RT 288.

7         <u>What the jury did not hear</u>

8         On Sep 10, 2018, the following week as he claimed, Czodor called Santa Ana

9    Police Department and alleged unfounded terrorism. Decl. Luo, ¶20. While Czodor

10   alleged that Petitioner started publishing his nude photos on Sep 5, 2018 he waited until

11   the police could not see anything online to make an official report. Decl. Luo, ¶14. While

12   interviewing Czodor, the officer did not read any text messages from Czodor's phone and

13   took all paper "evidence" provided by Czodor as true and correct without collecting or

14   even asking for digital copy with metadata and timestamp. Decl. Luo, ¶14.

15        It turned out no one named Lilly was on Czodor's Yelp page. Decl. Luo, ¶18.

16        Czodor is a nudist and his nude photos were taken on a nude beach when he was

17   comfortable with public nudity. RT 144 – 145. https://en.wikipedia.org/wiki/Nude_beach.

18   When he was trying to frame Petitioner for revenge porn, Czodor suddenly became a non-

19   nudist as if he spent all his days fully clothed like the rest of us did. He cheats on his

20   customers. He cheats on his wife. He cheats on the police. He cheats on the jury in July

21   2021. He cheats on his taxes (Czodor's taxes were inconsistent with his assets and

22   lifestyle which suggests tax fraud.[4]). Decl. Luo, ¶2. There must have been more since he

23   cheats whenever it serves his own interest throughout his life. A classic sociopath. Czodor

24   tried to make himself a windfall out of this case by falsely claiming income loss and

25   providing false income information[5]. Decl. Luo, ¶2, 43. He also demanded $54,000 to

26

27   [4] Other than a house, Czodor owns at least two vehicles, one is Toyota SUV and the other is BMW sedan. However, between 2014 and 2019 Czodor and his wife Hanh Le filed taxes as a married couple with pitiful income. Decl. Luo, ¶2.

28   [5] While income from the operation of a business or from self-employment is the net income after deducting business expenses (ordinary and necessary expenses required to produce the income) Czodor falsely claimed he had income of

8

APPENDIX TO PETITION FOR WRIT OF HABEAS CORPUS

1    remove non-existing online statements. Decl. Luo, ¶43.

2    **IV. ALLEGATION OF VANDALISM**

3    <u>What the jury heard</u>

4    Czodor did not invite Petitioner over but she showed up at his house on Sep 18,

5    2018. RT 152-153. Petitioner scratched Czodor's door upon arrival but Czodor could not

6    discover the door damages the same night because it was dark. The prosecution stated "in

7    the dark of the night, no, he might not have seen when she was doing that." RT 292. The

8    next day, on Sep 19, 2018, Czodor discovered the damages to his door. RT 168.

9    <u>What the jury did not hear</u>

10   Hanh Le's graceless unfaithful husband, Czodor, lied about being dark. The

11   evidence refutes Czodor's false statement. Decl. Luo, ¶8-10. There was a light bulb

12   installed right above Czodor's front door. The light showered Petitioner from head to toe.

13   It is impossible Czodor could not see the door damages if there was any.

14   Czodor testified in the family court that he heard weird noises from scratching for

15   20 minutes. Decl. Luo, ¶12. The 911 call made on Sep 18, 2018 did not indicate any

16   scratching. Decl. Luo, ¶20. In fact, the 911 call made almost 10 minutes after Petitioner's

17   arrival at Czodor's house, the 911 call clearly indicated only knocking on the door instead

18   of scratching. Despite Czodor alleged Petitioner alleged Petitioner scratched his door for

19   20 minutes and despite Czodor was capable of taking photos and shooting videos that

20   night, there is no picture or video whatsoever of Petitioner actually scratching his door,

21   not even a single clip. There is no picture or video of Petition with the damaged door

22   either, e.g. standing next to the damaged door.

23   On Sep 24, 2018 Czodor learned that it would cost him money to remove an online

24   post related to his credibility. He carried out his frame job, damaged his own door, and

25   took photos of his damaged door on Sep 25, 2018.

26   The damage to the door is inconsistent with 20 minutes scratching. Decl. Luo, ¶11-

27   12. 20 minutes scratching should have done much more damages than what is shown on

28   
---
$71 k in 2017 by providing incomplete schedule C but in fact he made way less than what he claimed.

APPENDIX TO PETITION FOR WRIT OF HABEAS CORPUS

the photo. See Exhibit 15. On Sep 18, 2018 Hanh Le may have been inside the house.
Czodor may have told Hanh Le regarding the night of Sep 18, 2018. Hanh Le may have
found out her husband's cheating many times and she has direct personal knowledge
about Czodor's credibility. Public defender's failure to call Hanh Le to testify
significantly prejudiced Petitioner.

## STATEMENT OF THE CASE

The state's only evidence of guilt, not properly collected by the police, comes from
only one person. This is a textbook case of fabricated evidence, committed perjury,
shoddy police work, prosecutorial misconduct, and bad lawyering.

After Hanh Le's cheating husband, a shameless nudist, Czodor, faked his damages
and injuries, on August 6, 2019, Petitioner was charged by misdemeanor complaint with
vandalism (Pen. Code, § 594{a}/(b)(2)(A)), violation of a protective order (Pen. Code, §
273.6(a)) (by coming within 100 yards of the protected person), and disorderly conduct
(unlawful dissemination of private photographs and recordings) (Pen. Code, §
647(j)(4))(A). During the two years prior to jury selection, despite Petitioner did not
request reassignment of counsel, six public defenders cycled through her case with no
investigation was conducted. One trial date was set on Mar 24, 2020, but later vacated due
to building closure. Despite the building closure lasted for only about two months, despite
the Trial Court resumed jury trial since late May 2020, Decl. Luo, ¶32, more than ten
continuances were granted without a single objection raised by the prosecution, and the
trial court repeatedly allowed the matter to be continued without finding good cause on
the record despite Petitioner did not request any continuance due to her own inability to
appear at trial. Decl. Luo, ¶33-37.

During Petitioner's arraignment while in custody on August 12, 2019, Petitioner's
appointed counsel failed to properly and fully advise her about her right to a speedy trial,
a general time waiver was entered without Petitioner's willful and intelligent consent and
knowledge. Decl. Luo, ¶26 – 42. Had Petitioner known of the consequences flowing from
agreeing to have trial at a later date, she would never have agreed on that but would have

insisted on going to trial as soon as possible.

At the pretrial on September 6, 2019, the pretrial was continued to October 18, 2019 at the request of public defender instead of Petitioner, despite no good cause stated on the record, the general time waiver was maintained without Petitioner's willful and intelligent consent. Decl. Luo, ¶31. On October 18, 2019, the pretrial was continued to January 10, 2020 at the request of public defender instead of Petitioner, despite no good cause stated on the record, the general time waiver was again maintained without Petitioner's willful and intelligent consent. Despite "the state's need to investigate is presumably satisfied once it has filed charges" *Serna v. Superior Court*, 40 Cal.3d 239, 270 (Cal. 1985), five months after Petitioner's charges were filed, on January 10, 2020, the pretrial was continued at the People's request to February 14, 2020, and a jury trial was set on March 24, 2020. Decl. Luo, ¶31. On February 14, 2020, the pretrial was continued to March 20, 2020 at the request of public defender instead of Petitioner, and the jury trial was to remain. On March 20, 2020, counsel made an appearance pursuant to Penal Code section 977 and entered a general time waiver without Petitioner's willful and intelligent consent. The jury trial was vacated and the pretrial was continued to June 26, 2020 without Petitioner's willful and intelligent consent.

Despite in late May 2020 the Orange County Superior Court already initiated the process of reopening and a large number of prospective jurors heeded the call of duty and came to the Court to serve our community, on July 14, 2020, both prosecution and public defender jointly requested a pretrial date on December 4, 2020 without Petitioner's willful and intelligent consent. Petitioner was not informed of the July 14, 2020 hearing and was not present at the hearing. Outrageous enough, public defender failed to inform Petitioner of her court date, Petitioner did not appear at the pretrial on December 4, 2020 and a bench warrant was issued for her arrest. Decl. Luo, ¶34-35. After the warrant was recalled, on December 22, 2020, counsel appeared for Petitioner pursuant to Penal Code section 977 and a pretrial was set on March 5, 2021 with the general time waiver remaining without Petitioner's willful and intelligent consent, with no good cause stated

on the record. On March 5, 2021, the pretrial was continued to May 7, 2021, with the general time waiver remaining without Petitioner's willful and intelligent consent. On June 8, 2021, a jury trial was set on July 19, 2021, as day 0 of 10. Decl. Luo, ¶26-42.

Petitioner did not discover the general time waivers until July 13, 2021. Decl. Luo, ¶31. Waiver requires "an intentional relinquishment or abandonment of a known right or privilege". *Barker v. Wingo* (1972) 407 U.S. 514, 525 92 S.Ct. 2182, 33 L.Ed.2d 101. There is no doubt that none of the general time waivers was entered or maintained with Petitioner's intentional relinquishment or abandonment of her right to a speedy trial. Petitioner was unable to withdraw any of the general time waivers because she did not even know they existed. Had Petitioner known of the general time waiver, she would never have failed to withdraw it. Decl. Luo, ¶28-31.

On July 19, 2021, Petitioner filed a *Marsden* motion and a motion to dismiss. Despite a pretrial hearing on a motion to dismiss for denial of a speedy trial may exclude prosecution, *Shleffar v. Superior Court* (1986) 178 Cal.App.3d 937, the court informed Petitioner that the motion to dismiss was not being accepted or considered because it was untimely and the People were not present. RT 1- 32. On July 26, 2021, the People requested a continuance of the jury trial, but it was denied. 720 days after the complaint was filed, despite no finding of good cause to justify any belated amendment, the People amended the complaint from allegation of coming within 100 yards of the protected person to failure to deactivate website and created new websites.

721 days after the complaint was filed, jury trial commenced on July 27, 2021. Public defender had nothing to offer, made no effort to suppress the introduction of Petitioner's prior involuntary testimony in a family court, called no witness to the stand, presented no evidence from his own investigation, engaged in a lackadaisical and ineffective cross-examination of the prosecution's sole/star witness, stipulated with prosecution over an unlawful family court order, and allowed prosecution to introduce and misrepresent Petitioner's prior testimony in a family court in violation of her Fifth, Sixth, and Fourteenth Amendment rights etc. RT 33 – 313. On July 28, 2021, after Czodor put

12

on a one man show, the People rested and Petitioner's counsel made a motion pursuant to Penal Code section 1118.1, which was denied. On July 29, 2021, the jury found Petitioner guilty of the three counts based on false evidence and perjured testimony. Society was the loser in this trial. The greatest crime of all in a civilized society is a wrongful conviction. It is truly a scandal, which reflects unfavorably on all the participants in the criminal justice system.

Petitioner's convictions were affirmed by the Appellate division of Superior Court of California for the County of Orange in the number 30-2021-01216615-CL-MC-CJC after her appointed counsel has found no issues on appeal. After Appellate Division denied to transfer Petitioner's case to court of appeal, Petitioner filed a petition for a writ of certiorari with the U.S. Supreme Court under case No. 21-8023.

## POST-CONVICTION PROCEEDINGS

While Petitioner's appeal was pending in Orange County Superior Court Appellate Division, Petitioner filed a *pro se* Petition on Oct 13, 2021 for Writ of Habeas Corpus in that court as well. *In re Luo*, M-19285, Petition for Writ of Habeas Corpus. The superior court downplayed or ignored the contradicted evidence and denied relief on Oct 19, 2021. On Nov 8, 2021, Petitioner filed a *pro se* Petition for Writ of Habeas Corpus in the state appellate court. *In re Luo*, G060841, Petition for Writ of Habeas Corpus. On Nov 10, 2021 the appellate court denied the petition without prejudice as premature. On Feb 18, 2022, Petitioner filed a *pro se* Petition for Writ of Habeas Corpus in the state appellate court. *In re Luo*, G061132, Petition for Writ of Habeas Corpus. On Mar 3, 2022 the appellate court summarily denied the petition. On May 2, 2022 Petitioner filed a *pro se* Petition for Writ of Habeas Corpus in the California Supreme Court. *In re Luo*, S274343, Petition for Writ of Habeas Corpus. On August 31, 2022 the Supreme Court of California summarily denied the petition. On September 6, 2022 Petitioner filed a *pro se* Petition for Writ of Habeas Corpus in federal court which is stayed to allow Petitioner to exhaust her claims.[6] Petitioner returned to state court and filed a *pro se* Habeas Petition on Oct 10,

---

[6] Even after screening, the federal court allows Respondent to undertake a more detailed exhaustion analysis and

APPENDIX TO PETITION FOR WRIT OF HABEAS CORPUS

2022. *In re Luo*, M-20069. The superior court denied relief on Dec 28, 2022 primarily due to Petitioner's failure to object in the trial court, failure to file an application for writ of prohibition, and failure to raise the issues on appeal and in initial habeas petition. In essence, the superior court admitted that Petitioner received ineffective assistance of counsel both at trial and on appeal. On January 5, 2023, Petitioner filed a *pro se* Petition for Writ of Habeas Corpus in the state appellate court. *In re Luo*, G062169, Petition for Writ of Habeas Corpus. On January 26, 2023 the appellate court summarily denied the petition.

The United States Supreme Court has declared that conviction of a crime without any evidence in the record to support the accused's guilt constitutes a denial of due process. *Garner v. Louisiana* (1961) 368 U.S. 157, 173-174 [7 L.Ed.2d 207, 219-220, 82 S.Ct. 248]; *Thompson v. City of Louisville* (1960) 362 U.S. 199, 204, 206 [4 L.Ed.2d 654, 658, 659, 80 S.Ct. 624, 80 A.L.R.2d 1355]. See *In re Giannini*, 69 Cal.2d 563, 577 (Cal. 1968) (holding habeas corpus is available since the present record contains no evidence as to contemporary community standards, a crucial element in the proof of guilt, the conviction of petitioners violated due process.) See also *In re Harris* (1961) 56 Cal.2d 879, 880 [16 Cal.Rptr. 889, 366 P.2d 305]; *In re Johnson* (1965) 62 Cal.2d 325 [42 Cal.Rptr. 228, 398 P.2d 420]; *In re Waltreus* (1965) 62 Cal.2d 218, 221 [42 Cal.Rptr. 9, 397 P.2d 1001].)

Successiveness restrictions do not limit the consideration of claims that could not reasonably have been raised earlier, such as those based on newly available evidence. *In re Friend*, 11 Cal.5th 720, 724 (Cal. 2021). Further, Petitioner could not raise all possible claims in her first habeas corpus petition without assistance of competent counsel. In the rare instance in which the petitioner is able to adequately justify not having raised the claim earlier, the successiveness bar does not apply. *In re Clark* (1993) 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729.

Moreover, Petitioner's claims are not procedurally barred due to actual innocence

raise lack-of-exhaustion arguments.

APPENDIX TO PETITION FOR WRIT OF HABEAS CORPUS

and fundamental miscarriage of justice. A fundamental miscarriage of justice is established by showing: (1) that error of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner; (2) that the petitioner is actually innocent of the crime or crimes of which he was convicted; (3) that the death penalty was imposed by a sentencing authority which had such a grossly misleading profile of the petitioner before it that absent the error or omission no reasonable judge or jury would have imposed a sentence of death; or (4) that the petitioner was convicted under an invalid statute. *In re Clark*, 5 Cal.4th 750, 758 (Cal. 1993).

An accused "has a constitutional right to have the jury determine every material issue presented by the evidence. Regardless of how overwhelming the evidence of guilt may be, the denial of such a fundamental right . . . is a miscarriage of justice. . . ." *People v. Modesto* (1963) 59 Cal.2d 722, 730 [31 Cal.Rptr. 225, 382 P.2d 33]; see also *People v. Sedeno* (1974) 10 Cal.3d 703, 720 [112 Cal.Rptr. 1, 518 P.2d 913].

## PUBLIC DEFENDER'S FAILURE TO PROVIDE ANY EXPLANATION OF TACTIC REASON

In *People v. Pope*, 23 Cal.3d 412 (Cal. 1979), the court suggests that if counsel was asked for an explanation and failed to provide one, this could prove he or she had no tactical reason for the action taken. Despite Petitioner repeatedly asked public defender with respect to the approach they took (or didn't take) in the handling of Petitioner's case #19CM06724, no explanation was ever given. Decl. Luo, ¶22.

"[P]retrial investigation and preparation are the keys to effective representation of counsel." *United States v. Tucker*, 716 F.2d 576, 581 (9th Cir. 1983) (internal citations omitted). Counsel was found "ineffective where he neither conducted a reasonable investigation nor made a showing of strategic reasons for failing to do so." See *Hendricks v. Vasquez*, 974 F.2d 1099, 1109 (9th Cir. 1992) (vacating judgment of district court where it was not possible to "determine if counsel's decision was a strategic one, and if so, whether the decision was a sufficiently informed one.")

1    Petitioner's trial counsel had nothing to offer to test or attack the prosecution's

2    case. He failed to conduct any basic investigation. He failed to prepare any defense

3    whatsoever. He failed to suppress Petitioner's prior compelled/involuntary testimony, call

4    any fact witnesses, including Hanh Le and the police officer who accepted a stack of

5    paper printout as evidence and did nothing to properly collect evidence using forensic

6    technology. Was Hanh Le inside Czodor's house on Sep 18, 2018? What if any did

7    Czodor tell Hanh Le regarding the night of Sep 18, 2018? How many times did Hanh Le

8    find out her husband's cheating and her personal knowledge about Czodor's credibility?

9        A competent, committed defense lawyer is often the last, best, and only hope an

10   innocent defendant has. "Left without the aid of counsel he may be put on trial without a

11   proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the

12   issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to

13   prepare his defense, even though he have a perfect one. He requires the guiding hand of

14   counsel at every step in the proceedings against him. Without it, though he be not guilty,

15   he faces the danger of conviction because he does not know how to establish his

16   innocence." *Powell v. Alabama*, 287 U.S. 45, 69 (1932).

17       The integrity of our criminal justice system and the fairness of the adversary

18   criminal process is assured only if an accused is represented by an effective attorney. See

19   *United States v.Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 667, 66 L.Ed.2d 564 (1981).

20   Absent the effective assistance of counsel "a serious risk of injustice infects the trial

21   itself." *Cuyler v. Sullivan*, 446 U.S.335, 343, 100 S.Ct. 1708, 1715, 64 L.Ed.2d 333

22   (1980). Thus, a defendant is constitutionally entitled to have effective counsel acting in

23   the role of an advocate. See *Anders v. California*, 386U.S. 738, 743, 87 S.Ct. 1396, 1399,

24   18 L.Ed.2d 493 (1967). These are some errors that "are so likely to prejudice the accused

25   that the cost of litigating their effect in a particular case is unjustified" thus making it

26   unnecessary to establish the prejudice prong of *Strickland*. Prejudice is presumed in

27   situations where the likelihood of counsel having provided effective assistance is

28   extremely small such as where counsel failed completely to subject the prosecution's case

16

to "meaningful adversarial testing." *United States v. Cronic*, 466 U.S. 648, 658, 104 S.Ct. 2039, 2046 – 2017, 80 L.Ed.2d657 (1984).

A defendant has a Sixth Amendment right to conflict-free representation. *United States v. Moore*, 159 F.3d 1154, 1157 (9th Cir. 1998). Where a court "compel[s] one charged with [a] grievous crime to undergo a trial with the assistance of an attorney with whom he has become embroiled in [an] irreconcilable conflict[it] deprive[s] him of the effective assistance of any counsel whatsoever." *Brown v. Craven*, 424 F.2d 1166, 1170 (9th Cir. 1970). A reviewing court must assess the nature and extent of the conflict and whether that conflict deprived the defendant of representation guaranteed by the Sixth Amendment. *Schell v. Witek*, 218 F.3d 1017, 1027 (9th Cir. 2000).

### CLAIMS FOR RELIEF

### CLAIM 1: Perjured Testimony/False evidence – report to police the following week after Sep 7, 2018

The Due Process Clause of the Fourteenth Amendment prevents the state from obtaining a conviction using false evidence and obligates it to correct false evidence or testimony during trial. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) (granting relief where the false evidence related to the credibility of a key witness for the state); *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) ("[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.") Habeas relief is merited where a witness's "testimony and credibility [is] crucial to the State's case" in light of each side underscoring it in closing arguments. See *Hayes v. Brown*, 399 F.3d 972, 985–86 (9th Cir. 2005).

Here, the police field activity report on Sep 10, 2018, indicating Czodor alleged unfounded terrorism, clearly refutes Czodor's testimony that Petitioner threatened to publish Czodor's nude photos and did so after making those threats between Sep 5 and Sep 7, 2018 and the following week Czodor reported the said incidents to police. RT 150-

17

151. The prosecution knowingly offered false testimony by withholding the police field activity report on Sep 10, 2018. See *In re Luo*, No. M-19285.

**CLAIM 2: Perjured Testimony/False evidence – It was dark on Sep 18, 2018**

At the family court hearing on Oct 19, 2018 Czodor testified that he did not discover the door's damage on Sep 18, 2018 because it was dark but the photos and videos he took show otherwise. Decl. Luo, ¶2.

At trial, the prosecution tried to explain away why Czodor did not discover door's damage on Sep 18, 2018. "[I]n the dark of the night, no, he might not have seen when she was doing that. At some point, he's inside; at some point, she's outside. He admits that no, he didn't see it while it was happening." RT 292. The evidence refutes such false statement. Decl. Luo, ¶8-10. There was a light bulb installed right above Czodor's front door. The light showered Petitioner from head to toe in front of the door. The prosecution knowingly offered false testimony as the prosecution clearly possessed the evidence contradicted to Czodor's testimony. Even worse is the prosecution tried extremely hard to explain away why Czodor did not discover the door's damage on the same night.

Prior to trial, the prosecution had all the evidence contradicted to the fake victim's testimony but still offered the testimony anyway which is a strong indicator that the prosecution knowingly offered false testimony. Especially, after the presentation of the photo showing the light showered Petitioner from head to toe in front of the fake victim's door, the prosecution vouched the fake's victim's testimony of being dark and his credibility. RT 288-292. While all the evidence showing the contrary was available to the prosecution prior to trial, the only interference is the prosecution knowingly offered false testimony. No reasonable attorney would offer testimony of being dark while the photo clearly shows otherwise. No reasonable attorney would offer testimony of reporting revenge porn while the police report clearly shows something else.

Trial counsel obtained Czodor's testimony at the family court and the photo of the damaged door prior to trial. Trial counsel did not bother to compare Czodor's prior testimony and actual evidence to expose his perjured testimony. The Supreme Court has

18

recognized that where a criminal defense lawyer pursues a certain theory of defense, the lawyer's failure to present readily available evidence supporting that precise defense is unreasonable. See, e.g., *Wiggins v. Smith*, 539 U.S. at 526. It was unreasonable for counsel to fail to review records and expose the falsity of the state's evidence.

**CLAIM 3: Ineffective Assistance of Counsel (IAC) – failure to investigate and cross-examine**

Where there is no forensic evidence, where there is no independent evidence, where the only witness is Czodor, and where the credibility of the witness is a crucial issue in a criminal case, defense attorney failed to discover the facts that (1) Czodor was previously subject to deportation; (2) Czodor was arrested for impersonation; (3) Czodor had prior criminal convictions rested upon facts establishing dishonesty and/or false statements; (4) **Czodor was a longtime married man in 2018 when he connected with Petitioner as a single man never married and his wife is ten years older than him**; (5) **No customer named Lilly on Czodor's Yelp page**; (6) No company named "Gorgeous Painting" ever existed; (7) Czodor's taxes were inconsistent with his assets and lifestyle which suggests tax fraud. Decl. Luo, ¶2, 18, 19.

Criminal defense attorneys have a duty to investigate carefully all defenses of fact and of law that may be available to the defendant. *People v. Pope* (1979) 23 Cal.3d 412, 425-426.

As *Wiggins* makes clear, without a reasonable investigation, a fully-informed decision with respect to trial strategy is "impossible." *Wiggins v. Smith*, 539 U.S. 510, 527-28 (2003). Where a single juror could reasonably have reached a different result absent counsel's error prejudice has been shown. *Id*. at 537. Because the failure to conduct a reasonable investigation lacked a strategic rationale, Petitioner's representation was ineffective. See *Hendricks v. Vasquez*, 974 F.2d 1099, 1109 (9th Cir. 1992); *Williams v. Taylor*, 529 U.S. 362, 396, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (finding that counsel had an obligation to conduct a thorough investigation of the defendant's background); see also *Strickland v. Washington*, 466 U.S. 668, 691 (1984) (finding that counsel has "a duty

19

to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary").

After trial counsel failed to investigate, trial counsel naturally failed to adequately cross-examine and impeach the prosecution's ONLY witness on the following key issues: (1) from what time to what time on Sept 18, 2018 Petitioner was scratching Czodor's door; (2) why Czodor was unable to provide any videos or photos showing Petitioner's scratching motion or sound and the door's fresh damage even after he heard 20 minutes' scratching, when he was able to constantly film and take photos throughout the night on Sep 18, 2018; (3) why the damage of the door was discovered the next day even when the front door area had more than enough lighting on Sep 18, 2018; (4) why Czodor lied about being dark on Sep 18, 2018 when the photos and videos show otherwise; (5) why police was told on Sep 18, 2018 that Petitioner was knocking instead of scratching Czodor's door even after Czodor heard scratching; (6) why the photo of the damaged door was taken right after Czodor discovered that it would cost money to remove Petitioner's online post; (7) it would take only a second to create a scratch, 20 minutes have 1,200 seconds, why the damage on the photo is not consistent with 20 minutes scratching; (8) how did Czodor not know his door was damaged after hearing 20 minutes of scratching; (9) how was it believable that a reasonable person noticed the damage of his own front door the next day even after he heard 20 minutes' scratching; (10) what prevented Czodor to report the door's damage on Sep 19, 20, 21, 22, 23, 24, 2018; (11) from what date to what date Petitioner posted Czodor's nude photos; (12) why Czodor did not call police immediately after Petitioner threatened Czodor; (13) what happened after Petitioner threatened Czodor and what backed up Czodor's version of event; (14) Czodor's upbringing, lifestyle, and public nudity as a nudist; (15) what Czodor knew about Petitioner prior to sending her nude photos while he deemed Petitioner "nobody" and he was Hanh Le's cheating husband; (16) the terrorism report filed on Sep 10, 2021 suggests that Czodor had no difficulty in calling police, why did he waited to report to the police that Petitioner posted his nudes while there was no nude photo of him online; (17) why

20

1    Czodor didn't report to the police right after his nude photo was posted online; (18) why

2    Czodor waited until the police officer could not observe his nude photos online to make

3    that report; (19) why Czodor could not provide digital evidence with metadata; (20) in this

4    21st century why there was only paper evidence; (21) why Czodor was able to provide

5    Petitioner's threatening text messages but unable to provide Czodor's request to keep his

6    nude photos private or Petitioner's promise to keep Czodor's nude photos private despite

7    the nude photos were sent through text messages and all communication between the

8    parties were done via texts; (22) why no one named Lilly was on Czodor's yelp page. RT:

9    196 – 214. Further, based on Czodor's tax returns it is obvious he committed tax fraud

10   considering his assets and lifestyle.

11        Such a cross-exam could have undermined Czodor's story, and raised the issue that

12   he may have manufactured evidence to frame Petitioner. Under these circumstances, it is

13   reasonable to expect that defense counsel would question the sequence of events. These

14   questions, along with questions of inconsistency and concerning why Czodor lied about

15   having a business and being dark while the light showered Petitioner from head to toe in

16   front of his door on Sep 18, 2018, would have undermined Czodor's credibility. They

17   would also have cast doubt on the jury's mind as to Czodor's door was damaged on Sep

18   18, 2018 and the purpose he sent nudes to Petitioner while he deemed Petitioner

19   "nobody". Even if Czodor provided "satisfactory" explanations to such questions, the

20   mere asking of the questions would have led the jury to consider that Czodor was

21   involved in the planting and manufacturing of the evidence. In a case as close as this one,

22   such doubt was essential. Counsel's failure to question along these lines thus constituted a

23   failure to test the adversarial process, and undermines confidence that the trial produced a

24   just result.

25        Even if Czodor provided a "believable" answer, his credibility and the issues of the

26   photo of the damaged door taken right after Czodor discovered the cost to remove a post

27   related to his credibility and the delay in reporting until the police could not observe any

28   nude photos online would have been clearly raised. Such evidence would have raised at

1   least some doubt in the jury's mind, as to Petitioner's guilt. A failure to bring these issues

2   to the jury's attention was a performance error of constitutional significance.

3        The inconsistencies would have alerted any reasonably competent attorney and

4   would have produced effective questioning of Czodor on these issues. Such questioning

5   could have tied Czodo to his motive to frame Petitioner after learning it would cost money

6   to remove a post related to his credibility, and further connected Czodor to the fabrication

7   of evidence. Again, whether any credible answers were given or not, the issue would have

8   been placed in the jury's mind for adequate consideration. Instead, Czodor walked away

9   not having been tested by defense counsel.

10        When the newly discovered evidence contradicts the strongest evidence introduced

11   against Petitioner, it reopens the critical gap in the prosecution's chain of proof. If the

12   jurors even found a reasonable possibility that Czodor's testimony was untrue, it is

13   unlikely that they would find Petitioner's guilt proved beyond a reasonable doubt. See

14   *People v. Martinez*, 36 Cal.3d 816, 823 (Cal. 1984) [holding that to acquit defendant, the

15   jury need not find Torrez' recollection accurate and Gerhis' inaccurate. It need only decide

16   that Torrez' testimony raised a reasonable doubt as to the time when the drill press was

17   repainted, and thus a reasonable doubt as to defendant's guilt.] Any reasonable attorney

18   would have raised these issues in examining the prosecution's only witness. Counsel's

19   failure to adequately cross-examine Czodor on the issues presented above constituted

20   ineffective assistance of counsel and prejudiced Petitioner. Trial counsel's woefully

21   inadequate and grossly insufficient legal representation allowed witness perjury to occur

22   unchallenged.

23        **CLAIM 4: IAC – Failure to present Czodor's Sep 24, 2018 email**

24        On Sep 24, 2018, the day before Czodor took photos of his damaged door, Czodor

25   learned that the removal of a post related to his credibility would cost money. Counsel

26   could have used this evidence -- showing that Hanh Le's shameless cheating husband,

27   Czodor, was fabricating evidence of domestic violence -- to undercut the balance of the

28   state's domestic violence evidence solely based on self-reporting by Czodor.

1    Coupled with other exculpatory evidence, it turns out to be clearer that the entire

2    thing was fabrication, namely a hoax. Even if counsel has legitimate tactical reasons for

3    introducing no evidence, his performance is still inadequate if evidence supporting a

4    potentially meritorious defense remains unexplored. *In re Cordero* (1988) 46 Cal.3d 161,

5    181.

6    **CLAIM 5: IAC – Failure to discover and present the witness's inconsistent**

7    **statements made to the police and call any defense witnesses**

8    Defense counsel, rendered constitutionally ineffective assistance in failing to

9    discover and present exculpatory evidence, the police field activity reports dated on Sep

10   10, 2018 and Sep 18, 2018. During the two years of the case's pendency prior to jury

11   selection, six public defenders cycled through Petitioner's case but no meaningful

12   investigation was conducted, none of them ever made any effort to investigate the

13   inconsistent statements the witness made to police. See *Sanders v. Ratelle*, 21 F.3d 1446,

14   1456 (9th Cir. 1994) (holding that trial counsel was deficient during guilt phase for

15   "fail[ing] to conduct even the minimal investigation that would have enabled him to come

16   to an informed decision about what defense to offer," and that "[d]escribing [counsel]'s

17   conduct as 'strategic' strips that term of all substance").

18   The most critical point in any trial is the timeline of the crime. The core of the

19   prosecution's theory regarding Petitioner's possibility to commit the vandalism rested on

20   Czodor's testimony that he heard Petitioner scratching his door for 20 minutes on Sep 18,

21   2018 and took a photo of the damaged door 7 days after Petitioner left his residence due to

22   being unable to see Petitioner's scratching action and late discovery of the damage due to

23   the darkness on Sep 18, 2018. A reasonably competent defense attorney would have

24   recognized the importance of investigating the sequence of the events on Sep 18, 2018,

25   whether the police was called during the course of Petitioner's scratching, what was said

26   to the 911 call operator, whether the testimony of Chris Kovacs, the 911 call operator, and

27   the police officers arrived are consistent, and whether Czodor withheld evidence from the

28   police while Czodor provided two videos shot on Sep 18, 2018 but none of those videos

1    show Petitioner was scratching Czodor's door. In any event, there is no reason why

2    competent counsel would not have at least inquired. Such failure is objectively

3    unreasonable and prejudicial to Petitioner.

4        To make out Petitioner's defense at trial, trial counsel relied solely on the

5    prosecution's witness, who was Czodor and provided no help to the theory of the defense.

6    Trial counsel took this tack not for lack of better options, but simply because he failed to

7    conduct an adequate investigation into potential witnesses who might have provided

8    helpful testimony. As a consequence, trial counsel failed to introduce significant

9    testimony that would have raised doubts about Petitioner's guilt. Trial counsel failed to

10   call to testify Chris Kovacs, the 911 call operator, the police officers arrived on Sep 18,

11   2018 at Czodor's residence and the police officers who "collected" evidence. The 911 call

12   was made at 8:07 pm on Sep 18, 2018. When the 911 call was made Chris Kovacs already

13   arrived at Czodor's residence and met Czodor, and saw both Czodor and Petitioner. These

14   facts pick apart Czodor's statement that Petitioner scratched his door for 20 minutes and

15   he didn't report to the police on Sep 18, 2018 because he didn't see Petitioner's scratching.

16   Had Petitioner scratched his door, Czodor had ample opportunity to see it right away.

17   Those people's testimony, even if imperfect, would have provided a potentially

18   meritorious defense and inconsistency with Czodor's theory ruling out Petitioner's guilt.

19       Police officers were not called to testify how the evidence was collected and that

20   the evidence was not examined. Why digital evidence was not collected in 21st century?

21   What evidence protocol should the police follow? Why didn't the police collect evidence

22   following protocol to avoid any foul play? Why paper evidence was accepted in 21st

23   century? Why didn't the police collect any and all photos and videos taken on Sep 18,

24   2018 in native format with metadata? Why did the police allow Czodor to cherry pick

25   "evidence"? By not collecting digital evidence following protocol it is no different from

26   not collecting DNA evidence in a homicide case. By not collecting digital evidence

27   following protocol how did the police know the evidence was not manufactured,

28   tampered, or fabricated? We now know Amber Heard's photos were edited according to

24

1  metadata expert.

2  https://www.marca.com/en/lifestyle/celebrities/2022/05/26/628ed0f7e2704e899e8b45f5.h

3  tml  We also know Fake Texting Apps are everywhere.

4  https://www.applavia.com/blog/best-fake-texting-apps-for-iphone-ipad/

5         Trial counsel failed to call the police officers to the stand and engaged in a

6  lackadaisical and ineffective cross-examination of the prosecution's sole/star witness.

7  There was no opportunity to attack the improperly gathered, mischaracterized, or

8  fabricated evidence.

9  **CLAIM 6: Insufficient Evidence – Serious Emotional Distress**

10        Hanh Le's shameless betraying husband who is a nudist, Czodor, testified that he

11  was thinking about going to therapy a lot. RT 195. Czodor did not actually seek therapy

12  and never took medication. There is no evidence to establish that Czodor suffered serious

13  emotional distress because he believes becoming nude increases confidence and going

14  naked brings him out of his shell.

15  **CLAIM 7: Insufficient Evidence – Loss of Income**

16        There is a distinction between earnings received through self-employment in one's

17  own business and wages received from an employer because there is a difference between

18  working for another person and being self-employed. An employee ordinarily agrees to

19  work for, and receives, a set wage or salary. His wages are not directly affected by the net

20  income of the employer. In contrast, the self-employed person operating a "business" has

21  no more income available than the net income of the "business" after paying necessary

22  expenses of the "business." *Hupp v. Workers' Comp. Appeals Bd.*, 39 Cal.App.4th 84, 88

23  (Cal. Ct. App. 1995). As such, loss of net income of a self-employed person is equivalent

24  to lost wages of an employee.

25        Between 2014 and 2019 Czodor's made the following net income:

26

| 2014 | 2015 | 2016 | 2017 | 2018 | 2019 |
|------|------|------|------|------|------|
| 5,031.00 | 7,075.00 | 5,345.00 | 5,416.00 | 9,836.00 | 10,098.00 |

28        Czodor alleged Petitioner's 2018 online posting caused him loss of income. First,

25

Czodor provided only tax returns but no evidence establishing his allegation. He cannot even establish he had a steady trend of income. For instance, his income dropped in 2016 compared to 2015. Second, in fact Czodor made more money in 2018 and 2019 than 2017 which is contradicted to his allegation. Czodor's income suggests he has committed tax fraud given his assets and lifestyle.

### CLAIM 8: Violation of due process – Improper form of evidence

Law enforcement officers have the obligation to convict the guilty and to make sure they do not convict the innocent. They must be dedicated to making the criminal trial a procedure for the ascertainment of the true facts surrounding the commission of the crime. ----- Justice Byron White

Not every police department honors Justice White's words like Chicago Police Department that caught Jussie Smollett's hate crime hoax, and Santa Ana Police Department certainly did not. When accusations go undetected as false, they gain traction and viability among actors in the criminal justice system.

Law enforcement personnel are on the front lines of lie detection in the criminal justice system. When a civilian witness alleges that a crime was committed, the police bear the responsibility of determining whether that witness is telling the truth. Police was supposed to routinely and consistently to pursue all evidence, rather than those facts that confirm their initial theory. If the complainant's story is contradictory or inconsistent, the police should carefully consider all explanations, including whether the complainant had lied. When police accept the complaining witness's version of events at face value and fail the conduct even basic investigations, the entire adversarial system crumbles.

Here in this case, every word coming out from Czodor went unchecked and unchallenged. Every piece of self-made evidence provided by Czodor went unchecked and unchallenged. For instance, the police could have retrieved Czodor's phone and download all messages, screenshots, go to Czodor's residence to take photos of the damaged door and his entire front door area which will show the lighting installation, and retrieve all photos and videos taken on Sep 18, 2018. Had the police done their job

26

1    Czodor's complaint would have immediately collapsed.

2    Whatever crime is reported the person who goes out to collect evidence should be a

3    police officer instead of Czodor. This is not the case here. Not a single piece of evidence

4    presented at trial was collected and processed following protocol. Not a single screenshot

5    or photo has metadata or timestamp. The lack of metadata makes an accurate examination

6    of evidence impossible. The police didn't even bother to collect all text messages, photos

7    and videos to see whether something was intentionally left out, such as Czodor had sent

8    his nude photos to multiple people, the photos and the videos that Czodor had withheld

9    show Petitioner's innocence. It is common sense that incomplete and edited screenshots,

10   photos, or videos could be manipulated and misrepresented. Yet, other than taking an oral

11   statement and accepting a stack of paper printout the police did nothing. There was

12   absolutely no meaningful investigation. Decl. Luo, ¶2.

13   If a citizen discovers his property was maliciously damaged he would call the

14   police to investigate the crime scene. He would let the police take the crime scene photos

15   and observe the damaged property. Similar to a home burglary, a real victim would call

16   the police to his residence. Here in this case, Czodor did not call the police to his

17   residence although he alleged his front door was maliciously damaged. He did not let the

18   police investigate the crime scene or take any photos of the damaged property. Not a

19   single police officer ever observed the allegedly damaged door or any nude photos online.

20   Czodor took photos of the "crime scene" on his own, made screenshots, printed out on a

21   piece of paper as evidence and went to the police station to report the alleged crimes. He

22   did not even provide a digital copy of the screenshots and photos with metadata for

23   forensic examination to ascertain whether the screenshots and photos were tampered or

24   forged. Czodor took the "crime investigation" and "evidence collection" into his own

25   hands. Same as the screenshots Czodor provided. All screenshots were printed out on

26   paper by Czodor without providing digital copies of the screenshots with metadata. None

27   of those can be submitted for forensic examination. Trial counsel should have explained to

28   the jury how easily the print-outs may be tampered or forged without forensic

27

examination. The police report also documented that "upon checking these websites there were no photographs or video's depicting Czodor's genitalia". Decl. Luo, ¶12. The jurors did not have special knowledge regarding how to evaluate the genuineness of evidence and trial counsel failed to educate the jurors. Trial counsel failed to demonstrate to the jury that the police did not conduct any investigation. Neither did the police collect any evidence following their protocol. All paper evidence in this case is Czodor's self-made and self-manufactured evidence with no way to forensically examine and Czodor has serious credibility issue. Such shoddy police work amounts to violation of Petitioner's federal and state rights to due process.

Expert testimony is critical today to prevent the admission of manipulated images. *People v. Beckley*, 185 Cal.App.4th 509, 515 (Cal. Ct. App. 2010). Recent experience shows that digital photographs can be changed to produce false images. See, e.g., *U.S. v. Newsome* (3d Cir. 2006) 439 F.3d 181, 183 [digital photographs used to make fake identification cards]. Indeed, with the advent of computer software programs such as Adobe Photoshop "it does not always take skill, experience, or even cognizance to alter a digital photo." (Parry, Digital Manipulation and Photographic Evidence: Defrauding The Courts One Thousand Words At A Time (2009) 2009 J. Tech. L. Pol'y 175, 183.)

No evidence here supports that the photographs and screenshots could not have been digitally altered given the witness's strong motive to retaliate and credibility issues. It is particularly odd to provide law enforcement with only paper evidence in this day and age.

Hanh Le's shameless cheating husband, Czodor, provided to the police a photo, with no time stamp or metadata, depicting Petitioner holding a key and standing in front of his door which was taken from his kitchen window. Decl. Luo, ¶8. The second photo provided to the police by Czodor depicting Petitioner standing in front of his door view window. Decl. Luo, ¶9. Both photos show strong lighting. The third photo provided to the police shows Petitioner was standing in front of Czodor's garage door which was nowhere close to his front door. Decl. Luo, ¶10. Because all these photos were not provided in

digital form with metadata, no one knows at what time they were taken which is the main goal that Czodor provided paper evidence to the police. If any of these photos were taken between 7:55 pm and 8:10 pm it picks apart Czodor's statement that Petitioner scratched his door for 20 minutes, he did not report the scratching on Sep 18, 2018 because he did not see Petitioner scratching his door and did not discover the damage the same night.

### CLAIM 9: Violation of Confrontation Clause of the Sixth Amendment and Due Process - Admission of inadmissible hearsay

Over defense's objections, the trial court erred in admitting hearsay as evidence. RT 143. The text messages from Czodor's so called friend and statements made by Czodor's clients were erroneously admitted into evidence because none of Czodor's so called friends and clients ever testified or were cross-examined by defense. Petitioner's right to cross examine Czodor's friends and customers were improperly deprived by admitting hearsay evidence. See *Crawford v. Washington* (2004) 541 U.S. 36, 59 (Holding that the Sixth Amendment's confrontation clause prohibits the admission of "testimonial statements" made by a nontestifying witness unless the witness is unavailable, and the defendant had a prior opportunity for cross-examination.) Other improper admission of hearsay include: RT 191, RT 223 etc.

### CLAIM 10: Violation of 6th & 14th Amendments – Improper permitting amendment

720 days after the original complaint was filed, despite no finding of good cause to justify any belated amendment, the complaint was illegally permitted to amend from allegation of coming within 100 yards of the protected person to failure to deactivate website and created new websites. CT 66-67. Such amendment substantially prejudiced Petitioner's defense.

A motion to amend need not be granted when the proposed amendment is presented belatedly without good explanation or would be futile. See *City of Stanton v. Cox* (1989) 207 Cal.App.3d 1557, 1563-1564 (Cox); accord, *Levy v. Skywalker Sound* (2003) 108 Cal.App.4th 753, 770-771 (Levy) and *Vaillette v. Fireman's Fund Ins. Co.* (1993) 18 Cal.App.4th 680, 685.) Also, a motion to amend may be denied in those

instances in which prejudice would result to the opposing party. See *Union Bank v. Wendland* (1976) 54 Cal.App.3d 393, 400 (Union Bank). In ruling on a motion to amend, "trial courts should be guided by two general principles: (1) whether facts or legal theories are being changed and (2) whether the opposing party will be prejudiced by the proposed amendment. Frequently, each principle represents a different side of the same coin: If new facts are being alleged, prejudice may easily result because of the inability of the other party to investigate the validity of the factual allegations while engaged in trial or to call rebuttal witnesses.

First, a motion to amend complaint should be denied simply due to lack of good cause without the need of Petitioner to show prejudice. The state's need to investigate is presumably satisfied once it has filed charges. *Serna v. Superior Court*, 40 Cal.3d 239, 270 (Cal. 1985). The original complaint was filed on August 6, 2019. CT 1. Further, on June 8, 2021 the jury trial was set on July 19, 2021. CT 12. Amending the complaint after the jury trial was set, 720 days after the original complaint was filed and **2 days before the jury trial was held**, was a devious attempt to violate Petitioner's constitutional rights and to prevent Petitioner from mounting her defense. Even a minimal showing of prejudice may require dismissal if the proffered justification for delay is insubstantial. *People v. Dunn-Gonzalez* (1996) 47 Cal.App.4th 899, 915. The People failed to demonstrate that any delay was reasonably related to investigatory purposes. The People provided little to no explanation for the 720 days delay between the filing of the original complaint and the amended complaint. The People's failure to proffer any explanation supports the trial court's error.

Czodor was the only witness to the alleged events and Petitioner's inability to thoroughly cross-examine Czodor and call rebuttal witnesses on those events compromised Petitioner's defense.

**CLAIM 11: Violation of Sixth and Fourteenth Amendments – the trial court erred in denying the Petitioner's motion to dismiss**

Despite a pretrial hearing on a motion to dismiss for denial of a speedy trial may

1   exclude prosecution, *Shleffar v. Superior Court* (1986) 178 Cal.App.3d 937, the court

2   improperly informed Petitioner that the motion to dismiss was not being accepted or

3   considered because it was untimely and the People were not present.

4       **CLAIM 12: Violation of Sixth and Fourteenth Amendments – the trial court**

5   **erred in denying Petitioner's *Marsden* motion**

6       "Even if [trial] counsel is competent, a serious breakdown in communications can

7   result in an inadequate defense." *United States v. Nguyen*, 262 F.3d 998, 1003-04 (9th Cir.

8   2001) (citing *United States v. Musa*, 220 F.3d 1096, 1102 (9th Cir. 2000)); see also *United*

9   *States v. D'Amore*, 56 F.3d 1202, 1206 (9th Cir. 1995) ("[A] court may not deny a

10   substitution motion simply because [it] thinks current counsel's representation is

11   adequate."), overruled on other grounds by *United States v. Garrett*, 179 F.3d 1143(9th

12   Cir. 1999).

13       In *Brown v. Craven*, 424 F.2d 1166 (9th Cir. 1970), Brown's attorney offered only

14   a perfunctory defense, the court found that the defendant was constructively denied his

15   right to counsel where he "was forced into a trial with the assistance of a particular lawyer

16   with whom he was dissatisfied, with whom he would not cooperate, and with whom he

17   would not, in any manner whatsoever, communicate." *Id*. 1169-1170.

18       Here, Petitioner's realization led her particularly to distrust public defender who

19   had failed to inform her of her court date, infringed upon her right to a speedy trial, and

20   had not fully advised her of her right to a speedy trial. Public defender even caused an

21   arrest warrant issued against Petitioner. Decl. Luo, ¶34-35.

22       Similar to *Daniels v. Woodford*, 428 F.3d 1181, 1200 (9th Cir. 2005), the state trial

23   court simply instructed Petitioner that she should discuss the matter with these same

24   attorneys whom she complained and dissatisfied about. RT 1-32.

25       This "serious conflict" between Petitioner and public defender gives rise to a

26   presumption of prejudice. *Perry v. Leeke*, 488 U.S. 272, 278-79, 109 S.Ct. 594, 102

27   L.Ed.2d 624 (1989); *Schell*, 218 F.3d at 1027 ("In the event that the trial court determines

28   that a serious conflict did exist that resulted in the constructive denial of assistance of

1    counsel, no further showing of prejudice is required; and Schell's trial shall be presumed

2    to have been unfair.")

3         Finally, in Nov 2021 Orange County public defender declared conflict and sought

4    to be relieved as Petitioner's counsel. Unfortunately it happened after Petitioner's

5    wrongful conviction.

6                 **CLAIM 13: IAC – Failure to bring the case to a speedy trial**

7         Public defender's failure to prepare for trial in a timely manner violated

8    Petitioner's right to a speedy trial. It also violated Petitioner's right to a competent counsel

9    that would not violate her right to a speedy trial. Decl. Luo, ¶26-42.

10       A Penal Code section 1382 violation entitles the defendant to pretrial dismissal

11   regardless of prejudice. *People v. Anderson* (2001) 25 Cal.4th 543, 604-605; *People v.*

12   *Martinez* (2000) 22 Cal.4th 750, 769. "Waiver" refers to an explicit and intentional

13   relinquishment of a right. *In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2. Petitioner never

14   knowingly, voluntarily, and intelligently waived her right to a speedy trial. Decl. Luo, ¶26

15   – 34. Petitioner did not request any continuance due to her inability to appear for trial.

16   Petitioner did not benefit at all from any continuance. Nor did Petitioner request any

17   reassignment of counsel. Decl. Luo, ¶33-34. Petitioner was taken advantage of and put on

18   a spot to choose to go to trial with an unprepared counsel or go to trial at a later date. Trial

19   counsel failed to file a *Serna* motion upon Petitioner's request. Defense counsel took this

20   tack not for lack of merit, but simply because he did not want to admit his office was

21   substantially responsible for the violation of Petitioner's right to a speedy trial.

22   Eventually, trial counsel called no witness to the stand, engaged in a lackadaisical and

23   ineffective cross-examination of the prosecution's sole/star witness, and presented no

24   evidence from his investigation. RT: 196 – 214. Trial counsel's performance supports the

25   fact that the delay of the trial was substantially caused by the office of public defender and

26   no good cause was ever found for the continuance. Petitioner was unable to have both her

27   constitutional rights to a speedy trial and a prepared and competent counsel. Public

28   defender's lack of loyalty was a stunning betrayal. Decl. Luo, ¶39.

1     When address whether the circumstances were so prejudicial as to require reversal

2   the *Chapman* reversible error standard applies. *Chapman v. California* (1967) 386 U.S.

3   18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065]; *People v. Ruthford*

4   (1975) 14 Cal.3d 399, 408 [121 Cal.Rptr. 261, 534 P.2d 1341, A.L.R.4th 3132]. Under

5   this test, "[a]n accused . . . is entitled to relief in such circumstances unless we can declare

6   a belief that the denial 'was harmless beyond a reasonable doubt.' [Citation.]" (Ibid.)

7   Thus, "[t]he defendant must make a showing of substantial materiality and even after this

8   showing is made reversal is not required if the prosecution established the failure to was

9   harmless beyond a reasonable doubt." *Id.* at p. 409.

10    Trial counsel's performance clearly showed that there was no investigation or

11  preparation done. There was no excuse to the failure to bring the case to a speedy trial.

12  Public defender's failures and actions were constitutionally ineffective.

13                          **CLAIM 14: IAC – Direct Appeal**

14    If the attorney appointed by the State to pursue the direct appeal is ineffective, the

15  defendant has been denied fair process. See *Martinez v. Ryan*, 566 U.S. 1, 11, 132 S.Ct.

16  1309, 182 L.Ed.2d 272 (2012) (citing Coleman v. Thompson, 501 U.S. 722, 754, 111

17  S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 83

18  L.Ed.2d 821 (1985); *Douglas v. California*, 372 U.S. 353, 357-358, 83 S.Ct. 814, 9

19  L.Ed.2d 811 (1963).

20    After Petitioner appealed her conviction public defender declared conflict and

21  sought to be relieved as Petitioner's counsel. Robert Bullock was appointed to represent

22  Petitioner on appeal. Record on appeal was mailed to Bullock in December 2021. Despite

23  Petitioner repeated asked him for the issues he was going to argue he waited until Feb 17,

24  2022 to inform Petitioner that he had found no issue on appeal. Petitioner received zero

25  assistance of counsel on direct appeal.

26                          **CLAIM 15: Actual Innocence**

27    The prosecution has failed to prove each and every element beyond a reasonable

28  doubt. Both the TRO and DVRO issued in Sep and Oct 2018 by family court were

33

unlawful. False and inadmissible evidence was admitted into evidence. Perjured testimony was introduced to the jury. Petitioner's innocence is a matter of reality.

**CONCLUSION**

Petitioner has now thoroughly controverted and discredited the evidence originally presented to prove her guilt. Petitioner's guilt has not only been called into question, she has proven that no reasonable juror would have found her guilty beyond a reasonable doubt. Her innocence is a matter of reality. This Court must act to find Petitioner actually innocent. This Court must grant this petition and issue a finding of factual innocence. In the alternative, this Court should order an evidentiary hearing at which Petitioner will be permitted to offer further proof in support of her claims for habeas relief.

**VERIFICATION**

I, Xingfei Luo, declare that I am the petitioner of this petition for writ of habeas corpus. I have prepared the attached Petition for Writ of Habeas Corpus and Memorandum of Points and Authorities in Support Thereof and believe the matters stated therein to be true. On that basis, I allege they are true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 1, 2023, at Rosemead, California.

*/s/ Xingfei Luo*

Xingfei Luo

## DECLARATION OF PETITIONER XINGFEI LUO

I, XINGFEI LUO declare and state:

1.    I am the Petitioner in this case. I sat through the jury trial commenced on Jul 27, 2021. I requested and received the entire discovery file from public defender in Sep 2021. I have personal knowledge of the facts stated herein. If called upon as a witness I could and would competently testify thereto.

2.    In Aug 2018 Czodor connected with me through POF. **All of our communication was through texting. We never talked on the phone.** Throughout our interaction I never told Czodor my full name. He told me via texting he was single never married. But in fact, Czodor was a longtime married man. Czodor and his wife, Hanh Le, jointly own a property that was purchased in 2009. Between 2014 and 2019 Czodor and Hanh Le filed taxes as a married couple with pitiful income. Czodor's wife is ten years older than him. Czodor's marital status and taxes were unavailable to me until June 2022. Other than a house Czodor owns at least two vehicles, one is Toyota SUV and the other is BMW sedan. A true and correct copy of Czodor's property ownership and tax returns of the couple is attached hereto as Exhibit 4.

3.    Czodor told me via texting he was a nudist right after we started texting in early August 2018. I never asked for his nudes but he sent me anyway. He never asked me to keep his photos private. I never promised I would keep his photos private. When he sent me his nude photos he did not even know my full name. He invited me to a nudist ranch in Riverside named Olive Dell Ranch. He told me via texting he was going back to Europe before our second and last face to face meeting. A true and correct copy of his texts is attached hereto as Exhibit 5.

4.    For centuries, door knocker has been made with metal. Czodor had neither doorbell nor door knocker on his door in Sep 2018. There is nothing wrong to use any metal object as a door knocker.

5.    On Sep 18, 2018 Czodor took more videos and photos than he provided to the police. He withheld those videos and photos because they would show I did not scratch

his door and I denied posting his nudes.

6.    Czodor declared that I never told him my full name. He further declared that on Sep 18, 2018 he called his friend Chris Kovacs and went outside to confront me. His friend suggested to call 911 because I did not want to leave, but not because I was scratching his door. A true and correct copy of Czodor's declaration submitted to family court is attached hereto as Exhibit 6.

7.    Czodor confirmed that two videos he provided to the police were taken at 7:54 pm and 8:13 pm respectively on Sep 18, 2018. A true and correct copy of his declaration under oath is attached hereto as Exhibit 7.

8.    Czodor provided to the police a photo, printed out on paper with no trace of time stamp or metadata, depicting me standing and holding a key in front of his door which was taken from his kitchen window. A true and correct copy of the photo is attached hereto as Exhibit 8. It clearly shows the lighting came from the top of my head showering me from head to toe. The entire front door area was nice and bright enough to see anything, including damages if any. However, Czodor, a professional liar, lied about being dark and unable to see the damage on Sep 18, 2018. A true and correct copy of Czodor's testimony is attached hereto as Exhibit 12.

9.    The second photo provided to the police by Czodor, also printed out on paper with no trace of time stamp, depicting me standing in front of his door viewer. The photo clearly shows there was bright light coming from the top which backs up the first photo showing strong light coming from the ceiling. A true and correct copy of the photo is attached hereto as Exhibit 9.

10.   The third photo provided to the police, printed out on paper with no trace of time stamp, shows I was standing in front of Czodor's garage door which was nowhere close to his front door. A true and correct copy of the photo is attached hereto as Exhibit 10. Because all these photos were not provided in digital form with metadata, I cannot obtain the time stamp of each photo.

11.   On Sep 24, 2018 Czodor expressed his plan to manufacture criminal charges

36

1    and file a restraining order after he learned that it would cost money to remove a post

2    related to his credibility. A true and correct copy of Czodor's email is attached hereto as

3    Exhibit 11.

4        12.    Czodor testified in the family court that he heard weird noises from scratching

5    for 20 minutes, it was dark so he did not see the damages to his door on Sep 18, 2018, and

6    the photo of the damaged door was taken on Sep 25, 2018. A true and correct copy of the

7    family court transcript is attached hereto as Exhibit 12. It makes total sense why the photo

8    of the damaged door was taken on Sep 25, 2018 because Czodor damaged his own door

9    that day and falsely filed the police report on Sep 26, 2018 for retaliation with all other

10   manufactured "paper evidence". A true and correct copy of the photo of Czodor's so-

11   called damaged door is attached hereto as Exhibit 13.

12       13.    The prosecution falsely alleged that I admitted to post Czodor's nudes while I

13   did not need his permission in the family court but such allegation was completely false.

14   A true and correct copy of the family court transcript is attached hereto as Exhibit 12.

15       14.    Czodor's interaction with the police officer was recorded. The police officer's

16   body camera footage shows that the officer did not read any text messages from Czodor's

17   phone and took all paper "evidence" as true and correct without collecting or even asking

18   for digital copy with metadata and timestamp. A true and correct copy of the officer's

19   statement on Sep 26, 2018 indicating no nude photos or videos observed is attached hereto

20   as Exhibit 14.

21       15.    On Sep 28, 2018 I received no prior notice and was not present at the ex parte

22   hearing regarding Czodor's request for TRO. There was no court reporter at that hearing

23   and therefore there is no transcript available. A true and correct copy of the TRO and

24   DVRO issued by the family court is attached hereto as Exhibit 15. Not a word in the

25   DVRO orders me to stay away from Czodor's facebook page. Not a word in the DVRO

26   orders anything related to Czodor's company and he did not have any company ever. Not

27   a word in the DVRO orders me to stop contacting Czodor's friends and clients. Not a

28   word in the DVRO orders me to stop stalking Czodor in cyberspace.

16.   Prior to trial, I informed public defender that Czodor was a nudist but I was told he would not present this fact at trial and the less information the better.

17.   The information of Czodor's prior criminal convictions was not available to me until December 2021. A true and correct copy of Tomas Czodor's criminal conviction records is attached hereto as Exhibit 16. Tomas Czodor's rap sheet was never disclosed by prosecution, including the information that Czodor was previously subject to deportation and arrested for impersonation. The facts that Czodor was subject to deportation and arrested for impersonation by California Highway Patrol were unavailable to me until February 2022.

18.   Czodor's yelp page is https://www.yelp.com/biz/gorgeous-painting-newport-beach. None of his customers on Yelp was named Lilly.

19.   I ran a research both with county and state authorities, which shows there was never a company or business named "Gorgeous Painting". A true and correct of the research is attached hereto as Exhibit 17. It can be easily searched on https://businesssearch.sos.ca.gov/ and https://cr.ocgov.com/FBNOnlineNet/.

20.   In August 2021 I made a public record request for all complaints and requests for assistance made by Tomas Czodor and Santa Ana Police Department produced two police field activity reports dated on Sep 10, 2018 and Sep 18, 2018. A true and correct copy of the reports is attached hereto as Exhibit 18.

21.   On Sep 13, 2021 I confirmed with my trial counsel that neither he nor any of his coworkers ever called Chris Kovacs for information. Not to mention Czodor's so-called friends and customers who may never exist. Due to public defender's failure to subpoena all texts between Czodor and me Czodor was free to lie about anything, including but not limited to the fabrication that I asked for his nudes and threatened him.

22.   From the very beginning I have maintained that the restraining orders are unlawful. I did not grant consent or authority to public defender to sign off a stipulation with the prosecution. Prior to signing off the stipulation public defender never discussed with me about the stipulation. Upon my repeated inquiry, public defender failed to

38

provide any explanation for their action or omission. A true and correct copy of the correspondence with public defender is attached hereto as Exhibit 19.

23.   Initially public defender was appointed as my counsel on direct appeal. In Nov 2021 public defender declared conflict and sought to be relieved. Mr Bullock was appointed to replace public defender as my counsel on direct appeal.

24.   I repeatedly asked my appeal counsel, Mr Bullock, for the issues he was going to raise on appeal and I was not informed until Feb 17, 2022 that he was not able to identify any issues on appeal.

25.   Although Czodor alleged the cheater post caused him damage and harm, he never spent a dime on the removal of the post.

26.   I was never properly and fully advised by my counsel about my right to a speedy trial. I was not advised, for example, that my case could be dismissed if it was not brought to trial within 30 days after I entered my plea, how a general time waiver was entered, and I could withdraw the time waiver any time I wanted.

27.   On Aug 12, 2019 I did not voluntarily and intelligently waive my constitutional right to a speedy trial. No one ever explained to me what was general time waiver and what was the consequence to enter a general time waiver. I was not aware of any general time waiver in my case until Jul 13, 2021. I did not make a voluntary, knowing and intelligent waiver of my right to a speedy trial. I was forced to choose between my right to a speedy trial and my right to be represented by competent counsel as a result of being represented by public defender and not knowing that I could file a *Marsden* motion until Jul 12, 2021.

28.   Throughout my case, no one ever asked me whether I was asserting or willing to waive my due process right to a speedy trial. No one ever asked for my authority to waive my constitutional right to a speedy trial. No one ever told me that I could withdraw the time waiver. More importantly, I could not withdraw the time waiver because I was not even aware that there was a general time waiver.

29.   Before and during the pretrial hearings on 08/12/2019, 09/06/2019, 10/18/2019,

01/10/2020, 02/14/2020, 03/20/2020, 07/14/2020, 12/22/2020, 03/05/2021, 05/07/2021, 06/08/2021, no one ever explained to me what was general time waiver and what was the consequence to enter a general time waiver. Each time I was simply informed by my counsel that there would be a continuance and as far as I was concerned continuances were required to enable my attorney to be prepared for trial. To me, there is a big difference between a general time waiver and continuance. General time waiver means that I voluntarily and knowingly waive my right to a speedy trial. Continuance means that my counsel is not prepared for trial even though I do not want to waive my right to a speedy trial. Given my lack of experience in criminal proceedings and traumatic events during incarceration I was most likely not competent to comprehend issues of speedy trial through counsel, or to assist or meaningfully authorize counsel to handle legal proceedings on my behalf.

30.   I never waived my right to be present at any hearings pending trial. Each time I was simply informed by my counsel whether or not I would need to be present at the hearing.

31.   On Jan 10, 2020 jury trial was set on Mar 24, 2020. I was not aware of any general time waiver in my case until Jul 13, 2021. A true and correct copy of the correspondence with public defender and minute order is attached hereto as Exhibit 20.

32.   The jury trial was suspended due to COVID but the Court resumed jury trial since late May 2020. A true and correct copy of the jury release is attached hereto as Exhibit 21.

33.   I never requested any continuances due to my own inability to appear at trial or any hearing. All the continuances were caused by the prosecution, public defender, and the trial court.

34.   I was not informed that there was a pretrial hearing on Jul 14, 2020. I did not appear in court on Jul 14, 2020 and nobody ever asked me for my authority to enter a general time waiver or waive my appearance. I was not even informed that the next pretrial was set on Dec 4, 2020.

35.   I failed to appear at the hearing on Dec 4, 2020 because I did not know there was a hearing due to public defender's failure to notify. I was so frustrated about my failure to appear in Court because I was at no fault. I felt like I was a piece of meat on the chopping board. I cannot afford private counsel and at the time I did not know I could file a *Marsden* motion. An arrest warrant was issued for my failure to appear in court on Dec 4, 2020, although I was at no fault.

36.   Had I been represented by competent counsel, there would not have been a general time waiver. Had I been represented by competent counsel, the general time waiver would have been withdrawn by the end of August 2019. Had I been represented by competent counsel I would not have failed to appear in court on Dec 4, 2020. Had I been represented by competent counsel my charges should have been dismissed long time ago. My constitutional rights to competent counsel and a speedy trial had been substantially impaired.

37.   I did not request any continuances due to my inability to appear for trial. I did not request any reassignment of counsel prior to I filed the *Marsden* Motion.

38.   I could not do anything about the case because I was still under the impression that I either had public defender or no counsel at all. More importantly, I had no access to the records. I have no idea what really happened at each pretrial hearing and what's on the records. For example, whether the district attorney objected to each continuance. Until Jul 18, 2021, I did not learn the fact that the district attorney never made objection to each continuance and never stated on record that they were ready for trial.

39.   On Jul 12, 2021 I called public defender Supervising Attorney Ray Jones and expressed my frustration. Instead of advising me to file Marsden request he simply told me to represent myself, which manifests that public defender did not have my best interest in mind.

40.   On Jul 12, 2021 I asked Mr Jorge Dominguez to file a motion to dismiss and on Jul 13, 2021 I was informed by Mr Dominguez that he would not do so.

41.   Since I was arraigned I was left in the dark throughout the entire process. At

41

1    each hearing I was told to wait outside the courtroom in the hallway. I had no idea what

2    happened in the courtroom. When I was called inside the courtroom I was simply told

3    when my next court day was.

4        42.   Over the last two years prior to trial, I never got a chance to discuss the defense

5    with my counsel at length. My constitutional rights seem like a joke to the State of

6    California.

7        43.   While income from the operation of a business or from self-employment is the

8    net income after deducting business expenses (ordinary and necessary expenses required

9    to produce the income) Czodor falsely claimed he had income of $71 k in 2017 by

10   providing incomplete schedule C but in fact he made way less than what he claimed. A

11   true and correct copy of his request for restitution is attached hereto as Exhibit 22.

12       Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing

13   is true and correct.

14   Date: February 1, 2023                          */s/ XINGFEI LUO*
                                                     XINGFEI LUO, In Pro Per
15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPENDIX TO PETITION FOR WRIT OF HABEAS CORPUS

Supreme Court of California
Jorge E. Navarrete, Clerk and Executive Officer of the Court
Electronically RECEIVED on 2/1/2023 8:38:49 PM

S278439

**APP-009**

| | |
|---|---|
| **PROOF OF SERVICE (Court of Appeal)**<br>[x] **Mail**  [ ] **Personal Service**<br><br>**Notice: This form may be used to provide proof that a document has been served in a proceeding in the Court of Appeal. Please read *Information Sheet for Proof of Service (Court of Appeal)* (form APP-009-INFO) before completing this form. Do not use this form for proof of electronic service. See form APP-009E.**<br><br>Case Name: In Re Luo<br>Court of Appeal Case Number:<br>Superior Court Case Number: 19CM06724 | |

1. At the time of service I was at least 18 years of age and **not a party to this legal action.**

2. My [ ] residence [x] business    address is *(specify):*
   67 Live Oak Ave, Arcadia, CA 91006

3. I mailed or personally delivered a copy of the following document as indicated below *(fill in the name of the document you mailed or delivered and complete either a or b):*
   PETITION FOR WRIT OF HABEAS CORPUS WITH EXHIBITS

   a. [x] **Mail.** I mailed a copy of the document identified above as follows:

   (1) I enclosed a copy of the document identified above in an envelope or envelopes **and**

   (a) [x] **deposited** the sealed envelope(s) with the U.S. Postal Service, with the postage fully prepaid.

   (b) [ ] **placed** the envelope(s) for collection and mailing on the date and at the place shown in items below, following our ordinary business practices. I am readily familiar with this business's practice of collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal Service, in a sealed envelope(s) with postage fully prepaid.

   (2) Date mailed: 2/1/2023

   (3) The envelope was or envelopes were addressed as follows:
   (a) Person served:
       (i) Name:  Orange County District Attorney's Office
       (ii) Address:
            700 Civic Center Drive West
            Santa Ana, CA 92701

   (b) Person served:
       (i) Name:  MICHAEL D. BUTERA - Deputy Attorney General
       (ii) Address:
            600 West Broadway, Suite 1800
            San Diego, CA 92101

   (c) Person served:
       (i) Name:  Orange County Superior Court Honorable Robert A Knox
       (ii) Address:
            700 W Civic Center Dr,
            Santa Ana, CA 92701

   [ ] Additional persons served are listed on the attached page *(write "APP-009, Item 3a" at the top of the page).*

   (4) I am a resident of or employed in the county where the mailing occurred. The document was mailed from (city and state): El Monte, CA

Form Approved for Optional Use
Judicial Council of California
APP-009 [Rev. January 1, 2017]

**PROOF OF SERVICE
(Court of Appeal)**

*www.courts.ca.gov*

APP-009

| Case Name: In Re Luo | Court of Appeal Case Number: |
| --- | --- |
| | Superior Court Case Number: 19CM06724 |

3. b. ☐ **Personal delivery.** I personally delivered a copy of the document identified above as follows:

   (1)  Person served:

      (a)  Name:

      (b)  Address where delivered:

      (c)  Date delivered:

      (d)  Time delivered:

   (2)  Person served:

      (a)  Name:

      (b)  Address where delivered:

      (c)  Date delivered:

      (d)  Time delivered:

   (3)  Person served:

      (a)  Name:

      (b)  Address where delivered:

      (c)  Date delivered:

      (d)  Time delivered:

☐ Names and addresses of additional persons served and delivery dates and times are listed on the attached page *(write "APP-009, Item 3b" at the top of the page).*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  2/1/2023

Emily Taylor
_____
(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)

▶ _____
(SIGNATURE OF PERSON COMPLETING THIS FORM)